# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

NAUTILUS INSURANCE COMPANY :
 :
   v. :
 :
MOTEL MANAGEMENT SERVICES, :
INC. d/b/a NESHAMINY INN, and : NO. 2:20-cv-00289-PBT
THE MARY ETZRODT REAL :
ESTATE TRUST, NI45, LLC, and E.B :

## O R D E R

AND NOW, this day of , 2020, upon consideration of the motion for judgment on the pleadings of plaintiff, Nautilus Insurance Company, pursuant to F.R.C.P. 12(c), and any responses hereto, and good cause appearing, it is hereby ORDERED and DECREED that said motion is **GRANTED**, and judgment in favor of Nautilus Insurance Company and against the defendants is hereby entered declaring that Nautilus Insurance Company owes no duty to defend or indemnify Motel Management Services, Inc. d/b/a Neshaminy Inn, The Mary Etzrodt Real Estate Trust and NI45, LLC in the underlying matter of E.B. v. Motel 6 Operating L.P et al. in the Philadelphia Court of Common Pleas at No. 1705-0487.

**BY THE COURT:**

_____
**Petrese B. Tucker, J.**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

---

NAUTILUS INSURANCE COMPANY

      v.

MOTEL MANAGEMENT SERVICES,
INC. d/b/a NESHAMINY INN, and
THE MARY ETZRODT REAL
ESTATE TRUST, NI45, LLC, and E.B

NO. 2:20-cv-00289-PBT

---

## MOTION FOR JUDGMENT ON THE PLEADINGS OF PLAINTIFF, NAUTILUS INSURANCE COMPANY

Plaintiff, Nautilus Insurance Company ("Nautilus"), by and through its attorneys, Bennett, Bricklin & Saltzburg, LLC, hereby moves for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c), and in support thereof avers as follows:

1.      This is an action seeking a declaratory judgment to resolve disputes over insurance coverage with regard to whether Nautilus is obligated to defend or indemnify Motel Management Services, Inc., The Mary Etzrodt Real Estate Trust and NI45, LLC, ("the Motel Management defendants"), in a matter currently pending in the Philadelphia County Court of Common Pleas captioned E.B. v. Motel 6 Operating L.P., et al., Civil Action No. 170500487, ("the underlying action").

2.      The underlying action concerns claims that in 2014 E.B., then a minor, was a victim of human sex trafficking, which took place when she was trafficked and prostituted at the Neshaminy Inn and the Motel 6 Philadelphia Airport. The Motel Management defendants—who are alleged to own, operate and/or manage the Neshaminy Inn—are alleged to have violated the Pennsylvania Human Trafficking Law, 18 Pa.C.S.A. § 3051, by renting rooms to the individual

sex trafficking E.B. when she was a minor, resulting in her sexual servitude and exploitation and causing her both physical and emotional harm. The Motel Management defendants are also alleged to have provided inadequate security to protect E.B. from the "criminal and violent acts" to which she was subjected on their premises. The Motel Management defendants are seeking to require Nautilus to provide them with a defense and indemnity for such claims.

**FACTUAL BACKGROUND**

A.      **Procedural History**

3.      The relatively recent declaratory judgment complaint in this matter belies the long history of this case, involving several prior decisions of both this Court and the Third Circuit Court of Appeals. *See* Ex. A, this Court's opinion and order granting Nautilus a declaratory judgment; Ex. B, order and opinion of the United States Court of Appeals for the Third Circuit affirming this court's prior determination.

4.      In *Nautilus Insurance Company v. Motel Management Services, Inc., et al.*, C.A. No. 2:17-CV-04491TJS, ("the previous matter"), this Court determined that Nautilus had no obligation to defend Motel Management Services, Inc. with respect to the allegations made by E.B. in her original complaint in the underlying action. *See* Ex. C, E.B.'s original complaint.

5.      In the previous matter, this Court determined that an assault and battery exclusion in Nautilus's policy issued to the Motel Management defendants relieved Nautilus of any obligation to defend or indemnify the defendants with respect to the underlying action. *See* Ex. A.

6.      This court also determined that as a matter of public policy, Pennsylvania law would not permit Nautilus to defend or indemnify its insureds with respect to the allegations in the

underlying action.[1] *Id.*

7.      Specifically, this Court found that Nautilus's all assault or battery exclusion "encompasse[d] the claim made against [Motel Management Services]" for failing to prevent human sex trafficking on its premises. Ex. A, 10. It determined that the exclusion broadly defines "assault and battery" and includes "negligent conduct on the part of the insured or its employees that directly harms another person, whether through negligent failure to prevent an assault, negligence related to an actual or threatened assault, or negligence resulting in battery." *Id.* As this Court explained, "[e]ssentially, negligent conduct contributing to an assault and battery falls within the exclusion." *Id.*

8.      This Court also found that there was no coverage as a matter of public policy because "financially benefitting from human sex trafficking is criminalized under the Pennsylvania Human Trafficking Law, 18 Pa. Cons. Stat. § 3001, *et seq.*" *Id.*, 11.

9.      This Court ultimately issued the following order: "IT IS DECLARED that the Plaintiff, Nautilus Insurance Company, has no duty to defend or indemnify the defendant, Motel Management Services, Inc., in the action pending in the Common Pleas Court of Philadelphia County, Pennsylvania, captioned *E.B. v. Motel 6 Operating L.P. et al*, Case No. 170500487." *Id.*, 12.

10.      In an evident attempt to avoid the result of this court's prior judgment, E.B.—who was a party defendant in the previous declaratory judgment action—filed an amended complaint in the underlying action.  Ex. D. Although E.B. advised the Court of Common Pleas in the

---

[1] The previous action was adjudicated by Judge Savage.  As the docket in that case was not closed until August 30, 2019, when the matter was remanded from the Court of Appeals, less than one year from the date this action was filed, plaintiff identified the previous action as a "related case" when the complaint in this matter was filed pursuant to Local Rule of Civil Procedure 40.1(b)(3). However, the matter was thereafter transferred to Judge Tucker for reasons unknown to plaintiff.

underlying action that the purpose of her filing of an amended complaint was (1) to name additional entities as Motel Management defendants; (2) to include more averments of negligent security failures; and (3) to remove claims of intentional infliction of emotional distress against the Motel Management defendants, in fact the amended complaint removed other allegations upon which this Court had relied in part in making its determination that Nautilus did not owe a defense or indemnification. *Compare* Ex. C, *with* Ex. D. Since this Court did find it significant that E.B. had alleged that she was "held at gunpoint and threatened to engage in sexual acts with multiple traffickers," Ex. A, 8, that allegation disappeared from the amended complaint despite the fact that E.B. had verified the truth of that allegation when she verified the original complaint. *See* Ex. C, 19.

> **B.     The Underlying Case**

11.     The amended complaint also does not include the allegations which were alleged in E.B.'s first complaint that (1) she was visibly treated in an aggressive manner by traffickers engaged in sex acts with her, *id.* ¶ 41; and (2) the Motel Management defendants harbored E.B. and profited from human sex trafficking, *see id.* ¶¶ 23, 25, 48-51.

12.     Even with the deletion of the above allegations, E.B. still alleges that she was a victim of repeated assaults and human sex trafficking. Specifically, E.B. was taken "on multiple occasions" to the Neshaminy Inn by her trafficker, who paid for a room in cash while E.B. was "in eyesight of the front desk employees." Ex. D, ¶ 38. While there, E.B. "engaged in numerous commercial sex acts and/or "dates" per day." *Id.* ¶ 40. She was "accompanied by older men while on the premises of the . . . Neshaminy Inn," and men would stand in the hallways outside and enter and leave the room where E.B. was performing commercial sex acts. *Id.* ¶¶ 41, 45-46. She "exhibited fear and anxiety" while at the Neshaminy Inn Motel. *Id.* ¶ 42.

13.     It is no wonder, since she described the human sex trade to which she was subject as a "form of modern day slavery" and "evil in the abuse and exploitation of the most innocent and vulnerable." *Id.* ¶ 1. She alleges that she "was exploited and was permitted to be exploited by a trafficker of commercial sex acts and those who financially benefitted from her exploitation," which includes the Motel Management defendants. *Id.* ¶ 5.

14.     She alleges that the Motel Management defendants were "uniquely positioned to observe the manifestations, indications and evincement of human sex trafficking within the Neshaminy Inn Motel," *id.* ¶ 24, and that those defendants "failed to take any steps to prevent human sex trafficking at the Neshaminy Inn Motel . . . and instead permitted heinous and unspeakable acts to occur." *Id.* ¶ 25.

15.     She alleges that the Motel Management defendants "failed to report to authorities that human sex trafficking was occurring at the Neshaminy Inn Motel." *Id.* ¶ 26.

16.     Although E.B. no longer specifically alleges that the Motel Management defendants financially profited from human sex trafficking, she still alleges that the Motel Management defendants "rented rooms to sex traffickers benefitting from the commercial sex acts occurring on the premises of the Neshaminy Inn Motel." *Id.* ¶ 27.

17.     More specifically, the Motel Management defendants "regularly rented or otherwise provided rooms and services at the Neshaminy Inn Motel . . . to the trafficker engaged in commercial sex acts with [E.B.] when she was a minor" and "*knew* or had constructive knowledge" that it was "providing rooms and services to the individual trafficking [her] for commercial sex acts." *Id*. ¶¶ 31-32. Indeed, she also alleges that the Motel Management defendants "knew or had constructive knowledge" that she was "being sexually exploited." *Id.* ¶ 33.

18.     Count II of the amended complaint, the first count against the Motel Management defendants, is based on 18 Pa. C.S.A. § 3051 which creates civil liability for entities that <u>knowingly</u> market or provide goods and services to sex traffickers. *See id.* ¶¶ 63-68. In connection with that count, E.B. alleges that the Motel Management defendants "did know that they were renting rooms to the individual trafficking Plaintiff as minor, which resulted in her being sex trafficked and sexually exploited," thereby causing her to "suffer *physical harm*" and other damages. *Id.* ¶ 65-66.

19.     Count IV of the amended complaint is based on the Motel Management defendants' alleged negligent failure to provide sufficient security. *Id.* ¶¶ 80-90. In connection with that count, E.B. alleges that the Motel Management defendants should have known that persons on the premises of the Neshaminy Inn, including E.B., "would suffer serious bodily harm as a result of being victimized by *violent* crimes," which necessarily includes human sex trafficking. *Id.* ¶ 85.

20.     Count VI of the amended complaint is a claim against the Motel Management defendants for negligent infliction of emotional distress. *Id.* ¶¶ 94-96. All of the counts of the amended complaint incorporate the averments of all of the preceding paragraphs. *Id.* ¶¶ 63, 80, 94.

**C.     The Insurance Policies**

21.     As noted in Nautilus's prior complaint in this Court, Nautilus issued three Commercial Lines policies to Motel Management defendants bearing the following policy numbers and effective dates, (collectively the "Nautilus policies"):

> Policy Number NN433648 effective September 1, 2014 to September 1, 2015
>
> Policy Number NN580317 effective September 1, 2015 to September 1, 2016

Policy No. NN711835 effective September 1, 2016 to September 1, 2017.

Ex. E.

22.     Coverage A of each of the Nautilus policies provides, "we will have no duty to defend the insured against any 'suit' seeking damages for 'bodily injury' . . . to which this insurance does not apply . . ." *Id.*, 11.

23.     The Nautilus policies include an assault or battery exclusion, which provides:

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

**EXCLUSION - ALL ASSAULT OR BATTERY**

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

A.     The following exclusion is **added** to **2. Exclusions of Section 1 –**
       **Coverage A** – Bodily Injury And Property Damage Liability,
       **Coverage B** – Personal And Advertising Injury Liability, and
       **Coverage C** – Medical Payments:

Regardless of culpability or intent of any person, this insurance does not apply to "bodily injury", "property damage", "personal and advertising injury" or medical payments arising out of any:

1.     Actual or alleged assault or battery;
2.     Physical altercation; or
3.     Any act or omission in connection with the prevention or suppression of such acts, including the alleged failure to provide adequate security.

This exclusion applies regardless of whether such actual or alleged damages are caused by any:

1.     Insured;
2.     "Employee";
3.     Patron; or
4.     Any other person; and

whether or not such damages occurred at any premises owned or occupied by any insured.

This exclusion applies to:

1.    All causes of action arising out of any assault or battery, or out of a physical altercation including, but not limited to, allegations of negligent hiring, placement, training, or supervision, or to any act, error, or omission relating to such an assault or battery, or physical altercation.

2.    Any claims or "suits" brought by any other person, firm or organization asserting rights derived from, contingent upon, or arising out of an assault or battery, or a physical altercation; and specifically excludes from coverage claims or "suits" for:

    a.    Emotional distress for loss of society, services, consortium or income; or

    b.    Reimbursement for expenses including, but not limited to, medical expenses, hospital expenses, or wages, paid or incurred, by such other person, firm or organization; or

3.    Any obligation to share damages with or repay someone who must pay damages because of the injury.

B.    We will have no duty to defend or indemnify any insured in any action or proceeding alleging damages arising out of any assault or battery, or physical altercation.

All other terms and conditions of this policy remain unchanged.

*Id.*, 35.

## LEGAL ARGUMENT

24.    As the pleadings are closed and there are no material factual issues to resolve, Nautilus moves for an entry of judgment on the pleadings because it is entitled to judgment in its favor as a matter of law. See F.R.C.P. 12(c).

25.    Under the Declaratory Judgments Act, a declaratory judgment may be granted to afford relief from uncertainty and insecurity regarding legal rights, status, and other relations. 28

U.C.S. § 2201 et seq.; *Homesite Ins. Co. v Neary*, 2017 WL 5172294 (E.D. Pa.).

26.    An insurer's duty to defend and indemnify an insured is determined by the insurance policy and its exclusions, attached to the declaratory judgment complaint as Exhibit E, and the allegations in the underlying complaint, attached to the declaratory judgment complaint as Exhibit D. *J.H. France Refractories v. Allstate Ins. Co.*, 626 A.2d 502, 510 (Pa. 1993).

27.    Nautilus is entitled to a determination that it does not owe the Motel Management defendants a defense or indemnity for the same two reasons it did not owe the defendants a defense or indemnity in the previous matter: the all assault or battery exclusion and Pennsylvania public policy both preclude coverage because the amended complaint still alleges that E.B. was the victim of criminal human trafficking and the victim of repeated assaults upon which the Motel Management defendants' liability is alleged to rest.

28.    As to the first issue, this Court previously has determined that coverage for the allegations of E.B.'s original complaint was excluded by the provisions of the All Assault or Battery exclusion in the Nautilus policy. That determination was affirmed by the United States Court of Appeals for the Third Circuit and it constitutes *res judicata* with respect to Nautilus's obligation to defend the underlying action.

29.    Even were the prior determination of this Court not *res judicata* with respect to whether the All Assault or Battery Exclusion of the Nautilus policy relieves Nautilus of any obligation to defend the underlying action, the deletion of certain allegations in the amended complaint does not change the result. Rather, because the amended complaint alleges that the Motel Management defendants were knowingly involved in human trafficking/the sex trade and because such activity involves sexual relations on a commercial basis to which the legislature has determined that a minor cannot consent, the allegations of the amended complaint continue to

allege that E.B. was the victim of an assault and battery and thus are excluded from coverage by the All Assault or Battery exclusion.

30.     As to the second issue, this Court in the previous matter determined that it is against public policy to require an insurer to defend or indemnify its insured with respect to allegations that the insured engaged in human trafficking or the sex trade or knowingly performed those acts proscribed by § 3051(b)(1)-(3).   That determination constitutes *res judicata* with respect to Nautilus's obligation to defending the underlying matter.

31.     Even if the prior determination of this Court did not constitute *res judicata*, the amended complaint in the underlying action continues to allege that (a) the conduct of the Motel Management defendants, caused, contributed to or supported human trafficking and/or made E.B. a victim of the sex trade; (b) that the Motel Management defendants either participated in the human trafficking or knowingly harbored E.B. and financially benefited from human sex trafficking; (c) that the Motel Management defendants failed to take any steps to prevent human trafficking and instead "permitted heinous and unspeakable acts to occur" and (d) that the Motel Management defendants engaged in criminal activity, violating the Pennsylvania Human Trafficking Law, 18 Pa. C.S.A. § 3001 *et seq.*

32.     Pursuant to the public policy of the Commonwealth of Pennsylvania, such conduct is reprehensible and should be uninsurable as a matter of law.

33.     Nautilus therefore is entitled to a declaration that there is no coverage under the Nautilus policies for the underlying action both by virtue of the All Assault or Battery exclusion contained in those policies and as a matter of public policy, and that as such Nautilus has no obligation to defend or indemnify the Motel Management defendants under the Nautilus policies in connection with the amended complaint filed in the underlying action.

WHEREFORE, Nautilus Insurance Company respectfully requests that this Honorable Court grant the motion for judgment on the pleadings of Nautilus Insurance Company and enter the attached order declaring that Nautilus Insurance Company owes no duty to defend or indemnify Motel Management Services, Inc. d/b/a Neshaminy Inn in the underlying matter of <u>E.B. v. Motel 6 Operating L.P et al.</u> in the Philadelphia Court of Common Pleas at No. 1705-0487.

**BENNETT, BRICKLIN & SALTZBURG** LLC

BY: _____

    **LOUIS E. BRICKLIN**
    Attorney I.D. No.  20281
    **SARAH E. CROSLEY**
    Attorney I.D.  No. 325916
    Centre Square, West Tower
    1500 Market Street, 32nd Floor
    Philadelphia, PA 19102
    215-665-3400
    bricklin@bbs-law.com
    crosley@bbs-law.com

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| NAUTILUS INSURANCE COMPANY | : | |
| | : | |
| v. | : | |
| | : | |
| MOTEL MANAGEMENT SERVICES, | : | NO. 2:20-cv-00289-PBT |
| INC. d/b/a NESHAMINY INN, and | : | |
| THE MARY ETZRODT REAL | : | |
| ESTATE TRUST, NI45, LLC, and E.B | : | |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR**
**JUDGMENT ON THE PLEADINGS**

**I.      MATTER BEFORE THE COURT**

The present Motion for Judgment on the Pleadings seeks a declaratory judgment that Nautilus is not obligated to defend or indemnify Motel Management Services, Inc., The Mary Etzrodt Real Estate Trust and NI45, LLC, ("the Motel Management defendants"), in a matter currently pending in the Philadelphia County Court of Common Pleas captioned E.B. v. Motel 6 Operating L.P., et al., Civil Action No. 170500487, ("the underlying action").  The underlying action concerns claims that in 2014 E.B., then a minor, was a victim of human sex trafficking, which took place when she was trafficked and prostituted at the Neshaminy Inn and the Motel 6 Philadelphia Airport. The Motel Management defendants—who are alleged to own, operate and/or manage the Neshaminy Inn—are alleged to have violated the Pennsylvania Human Trafficking Law, 18 Pa.C.S.A. § 3051, by renting rooms to the individual sex trafficking E.B. when she was a minor, resulting in her sexual servitude and exploitation and causing her both physical and emotional harm. The Motel Management defendants are also alleged to have provided inadequate security to protect E.B. from the "criminal and violent acts" to which she was subjected on their

premises. The Motel Management defendants are seeking a defense and indemnity from Nautilus for the claims that they enabled and failed to prevent human sex trafficking.

## II.   <u>STATEMENT OF QUESTION PRESENTED</u>

1.   Whether the doctrine of *res judicata* bars re-litigation of the issues in this lawsuit where Nautilus previously filed a declaratory judgment action against Motel Management Services, Inc. to determine whether it was obligated to defend or indemnify it in the exact same underlying action and this Court ultimately determined that Nautilus did *not* have a duty to defend or indemnify, which decision was affirmed by the Third Circuit Court of Appeals.

**Suggested Answer: Yes**

2.   Whether Nautilus is relieved of any duty to defend or indemnify the Motel Management defendants in an underlying lawsuit alleging that the plaintiff was subjected to sexual servitude and sexually exploited when she was a minor because it falls within Nautilus's assault or battery exclusion.

**Suggested Answer: Yes**

3.   Whether Nautilus is relieved of any duty to defend or indemnify the Motel Management defendants because the underlying state court case alleges that the Motel Management defendants committed criminal violations of the Pennsylvania Human Trafficking Law, and it is against the public policy of Pennsylvania to provide insurance coverage for criminal acts.

**Suggested Answer: Yes.**

## III.   <u>FACTS</u>

### A.   Procedural History

The relatively recent declaratory judgment complaint belies the long history of this case,

2

involving several prior decisions of both this Court and the Third Circuit Court of Appeals. *See* Ex. A, this Court's opinion and order granting Nautilus a declaratory judgment; Ex. B, order and opinion of the United States Court of Appeals for the Third Circuit affirming this court's prior determination.

In *Nautilus Insurance Company v. Motel Management Services, Inc., et al.*, C.A. No. 2:17-CV-04491TJS, ("the previous matter"), this Court determined that Nautilus had no obligation to defend Motel Management Services, Inc. with respect to the allegations made by E.B. in her original complaint in the underlying action. *See* Ex. C, E.B.'s original complaint.  In the previous matter, this Court determined that an assault and battery exclusion in Nautilus's policy issued to the Motel Management defendants relieved Nautilus of any obligation to defend or indemnify the defendants with respect to the underlying action. *See* Ex. A.  This court also determined that as a matter of public policy, Pennsylvania law would not permit Nautilus to defend or indemnify its insureds with respect to the allegations in the underlying action.[2] *Id.*

Specifically, this Court found that Nautilus's all assault or battery exclusion "encompasse[d] the claim made against [Motel Management Services]" for failing to prevent human sex trafficking on its premises. Ex. A, 10. It determined that the exclusion broadly defines "assault and battery" and includes "negligent conduct on the part of the insured or its employees that directly harms another person, whether through negligent failure to prevent an assault, negligence related to an actual or threatened assault, or negligence resulting in battery." *Id.* As this Court explained, "[e]ssentially, negligent conduct contributing to an assault and battery falls within

---

[2] The previous action was adjudicated by Judge Savage.  As the docket in that case was not closed until August 30, 2019, when the matter was remanded from the Court of Appeals, less than one year from the date this action was filed, plaintiff identified the previous action as a "related case" when the complaint was filed pursuant to Local Rule of Civil Procedure 40.1(b)(3).  However, the matter was thereafter transferred to Judge Tucker for reasons unknown to plaintiff.

the exclusion." *Id.* This Court also found that there was no coverage as a matter of public policy because "financially benefitting from human sex trafficking is criminalized under the Pennsylvania Human Trafficking Law, 18 Pa. Cons. Stat. § 3001, *et seq.*" *Id.*, 11. This Court ultimately issued the following order: "IT IS DECLARED that the Plaintiff, Nautilus Insurance Company, has no duty to defend or indemnify the defendant, Motel Management Services, Inc., in the action pending in the Common Pleas Court of Philadelphia County, Pennsylvania, captioned *E.B. v. Motel 6 Operating L.P. et al*, Case No. 170500487." *Id.*, 12.

In an evident attempt to avoid the result of this court's prior judgment, E.B.—who was a party defendant in the previous declaratory judgment action—filed an amended complaint in the underlying action. Ex. D. Although E.B. advised the Court of Common Pleas in the underlying action that the purpose of her filing of an amended complaint was (1) to name additional entities as Motel Management defendants; (2) to include more averments of negligent security failures; and (3) to remove claims of intentional infliction of emotional distress against the Motel Management defendants, in fact the amended complaint removed other allegations upon which this Court had relied in part in making its determination that Nautilus did not owe a defense or indemnification. *Compare* Ex. C, *with* Ex. D. Since this Court did find it significant that E.B. had alleged that she was "held at gunpoint and threatened to engage in sexual acts with multiple traffickers," Ex. A, 8, that allegation disappeared from the amended complaint despite the fact that E.B. had verified the truth of that allegation when she verified the original complaint. *See* Ex. C, 19.

**B.    The Underlying Case**

The amended complaint also does not include the allegations which were alleged in E.B.'s first complaint that (1) she was visibly treated in an aggressive manner by traffickers engaged in

sex acts with her, *id.* ¶ 41; and (2) the Motel Management defendants harbored E.B. and profited from human sex trafficking, *see id.* ¶¶ 23, 25, 48-51. Even with the deletion of the above allegations, E.B. still alleges that she was a victim of repeated assaults and human sex trafficking. Specifically, E.B. was taken "on multiple occasions" to the Neshaminy Inn by her trafficker, who paid for a room in cash while E.B. was "in eyesight of the front desk employees." Ex. D, ¶ 38. While there, E.B. "engaged in numerous commercial sex acts and/or "dates" per day." *Id.* ¶ 40. She was "accompanied by older men while on the premises of the . . . Neshaminy Inn," and men would stand in the hallways outside and enter and leave the room where E.B. was performing commercial sex acts. *Id.* ¶¶ 41, 45-46. She "exhibited fear and anxiety" while at the Neshaminy Inn Motel. *Id.* ¶ 42. It is no wonder, since she described the human sex trade to which she was subject as a "form of modern day slavery" and "evil in the abuse and exploitation of the most innocent and vulnerable." *Id.* ¶ 1. She alleges that she "was exploited and was permitted to be exploited by a trafficker of commercial sex acts and those who financially benefitted from her exploitation," which includes the Motel Management defendants. *Id.* ¶ 5.

She alleges that the Motel Management defendants were "uniquely positioned to observe the manifestations, indications and evincement of human sex trafficking within the Neshaminy Inn Motel," *id.* ¶ 24, and that those defendants "failed to take any steps to prevent human sex trafficking at the Neshaminy Inn Motel . . . and instead permitted heinous and unspeakable acts to occur." *Id.* ¶ 25.  She alleges that the Motel Management defendants "failed to report to authorities that human sex trafficking was occurring at the Neshaminy Inn Motel." *Id.* ¶ 26.

Although E.B. no longer specifically alleges that the Motel Management defendants financially profited from human sex trafficking, she still alleges that the Motel Management defendants "rented rooms to sex traffickers benefitting from the commercial sex acts occurring on

the premises of the Neshaminy Inn Motel." *Id.* ¶ 27. More specifically, the Motel Management defendants "regularly rented or otherwise provided rooms and services at the Neshaminy Inn Motel . . . to the trafficker engaged in commercial sex acts with [E.B.] when she was a minor" and "*knew* or had constructive knowledge" that it was "providing rooms and services to the individual trafficking [her] for commercial sex acts." *Id*. ¶¶ 31-32. Indeed, she also alleges that the Motel Management defendants "knew or had constructive knowledge" that she was "being sexually exploited." *Id.* ¶ 33.

Count II of the amended complaint, the first count against the Motel Management defendants, is based on 18 Pa. C.S.A. § 3051 which creates civil liability for entities that knowingly market or provide goods and services to sex traffickers. *See id.* ¶¶ 63-68. In connection with that count, E.B. alleges that the Motel Management defendants "did know that they were renting rooms to the individual trafficking Plaintiff as minor, which resulted in her being sex trafficked and sexually exploited," thereby causing her to "suffer *physical harm*" and other damages. *Id.* ¶ 65-66. Count IV of the amended complaint is based on the Motel Management defendants' alleged negligent failure to provide sufficient security. *Id.* ¶¶ 80-90. In connection with that count, E.B. alleges that the Motel Management defendants should have known that persons on the premises of the Neshaminy Inn, including E.B., "would suffer serious bodily harm as a result of being victimized by *violent* crimes," which necessarily includes human sex trafficking. *Id.* ¶ 85. Count VI of the amended complaint is a claim against the Motel Management defendants for negligent infliction of emotional distress. *Id.* ¶¶ 94-96. All of the counts of the amended complaint incorporate the averments of all of the preceding paragraphs. *Id.* ¶¶ 63, 80, 94.

### C.      The Insurance Policies

As noted in Nautilus's prior complaint in this Court, Nautilus issued three Commercial Lines policies to Motel Management defendants bearing the following policy numbers and effective dates, (collectively the "Nautilus policies"):

> Policy Number NN433648 effective September 1, 2014 to September 1, 2015
>
> Policy Number NN580317 effective September 1, 2015 to September 1, 2016
>
> Policy No. NN711835 effective September 1, 2016 to September 1, 2017.

Ex. E.

Coverage A of each of the Nautilus policies provides, "we will have no duty to defend the insured against any 'suit' seeking damages for 'bodily injury' . . . to which this insurance does not apply . . ." *Id.*, 11. The Nautilus policies include an assault or battery exclusion, which provides:

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

**EXCLUSION - ALL ASSAULT OR BATTERY**

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.**      The following exclusion is **added** to **2. Exclusions of Section 1 –**
**Coverage A** – Bodily Injury And Property Damage Liability,
**Coverage B** – Personal And Advertising Injury Liability, and
**Coverage C** – Medical Payments:

Regardless of culpability or intent of any person, this insurance does not apply to "bodily injury", "property damage", "personal and advertising injury" or medical payments arising out of any:

**1.**      Actual or alleged assault or battery;

7

**2.**    Physical altercation; or

**3.**    Any act or omission in connection with the prevention or suppression of such acts, including the alleged failure to provide adequate security.

This exclusion applies regardless of whether such actual or alleged damages are caused by any:

**1.**    Insured;

**2.**    "Employee";

**3.**    Patron; or

**4**.    Any other person; and

whether or not such damages occurred at any premises owned or occupied by any insured.

This exclusion applies to:

**1.**    All causes of action arising out of any assault or battery, or out of a physical altercation including, but not limited to, allegations of negligent hiring, placement, training, or supervision, or to any act, error, or omission relating to such an assault or battery, or physical altercation.

**2.**    Any claims or "suits" brought by any other person, firm or organization asserting rights derived from, contingent upon, or arising out of an assault or battery, or a physical altercation; and specifically excludes from coverage claims or "suits" for:

    **a.**    Emotional distress for loss of society, services, consortium or income; or

    **b.**    Reimbursement for expenses including, but not limited to, medical expenses, hospital expenses, or wages, paid or incurred, by such other person, firm or organization; or

**3.**    Any obligation to share damages with or repay someone who must pay damages because of the injury.

**B.**    We will have no duty to defend or indemnify any insured in any action or proceeding alleging damages arising out of any assault or battery, or physical altercation.

All other terms and conditions of this policy remain unchanged.

*Id.*, 35.

8

## IV.   **LEGAL ARGUMENT**

Federal Rule of Civil Procedure 12(c) provides, "[a]fter the pleadings are closed - but early enough not to delay trial - a party may move for judgment on the pleadings." F.R.C.P. 12(c). Under Rule 12(c), a motion for judgment on the pleadings should be granted when, "on the basis of the pleadings, the movant is entitled to judgment as a matter of law." *DiCarlo v. St. Mary Hosp.*, 530 F.3d 255, 262 (3d Cir. 2008).

There are three arguments which compel judgment in favor of Nautilus. The first is that the Motel Management defendants are barred by the doctrine of *res judicata* from seeking a defense and indemnity from Nautilus because this Court previously determined (1) that the All Assault or Battery Exclusion bars coverage for the allegations in E.B.'s lawsuit, and (2) that it is against public policy to require an insurer to defend or indemnify its insured with respect to allegations that the insured financially benefitted from human trafficking which is criminalized under the Pennsylvania Human Trafficking Law.  Those determinations were *affirmed* by the United States Court of Appeals for the Third Circuit.

The second argument is one that Nautilus made in the previous matter which was accepted by this Court. Even if *res judicata* does not bar the Motel Management defendants from seeking coverage for the underlying lawsuit, the All Assault or Battery Exclusion of the Nautilus policy continues to relieve Nautilus of any obligation to defend the underlying action.  Although the amended complaint is certainly less specific than the original, it continues to allege that the Motel Management defendants were knowingly involved in human trafficking and the sex trade and their conduct caused, contributed to or supported human trafficking, thereby subjecting E.B. to sexual servitude. Because such activity involves sexual relations on a commercial basis to which the legislature has determined that a minor cannot consent, it is clear that E.B. was the victim of a

9

multiple assaults and battery. E.B.'s lawsuit is thus excluded from coverage by the All Assault or Battery exclusion.

The third argument was also made by Nautilus and accepted by this Court in the previous matter. The public policy of the Commonwealth of Pennsylvania bars coverage for E.B.'s lawsuit. The Pennsylvania legislature, by its robust amendments to the Pennsylvania Human Trafficking Law, has declared that human sex trafficking and financially benefiting from it are both criminal and against the public policy of Pennsylvania. The amended complaint alleges that the Motel Management defendants knowingly harbored E.B. and financially benefited from human sex trafficking, failed to take any steps to prevent human trafficking and instead "permitted heinous and unspeakable acts to occur," and engaged in activity which the legislature has made criminal, violating the Pennsylvania Human Trafficking Law, 18 Pa. C.S.A. § 3001 *et seq.* Pursuant to the public policy of the Commonwealth of Pennsylvania, such conduct is reprehensible and should be uninsurable as a matter of law.

A.   **Coverage is Barred by the Doctrine of *Res Judicata* Because This Court Previously Declared that Nautilus has No Duty to Defend or Indemnify Motel Management Services, Inc. in E.B.'s Lawsuit**

The doctrine of *res judicata* bars a subsequent lawsuit when three elements are present: "(1) a final judgment on the merits in a prior suit involving (2) the same parties or their privies and (3) a subsequent suit based on the same cause of action." *Davis v. Wells Fargo*, 824 F.3d 333, 341 (3d Cir. 2016) (quoting *Lubrizol Corp. v. Exxon Corp.*, 929 F.2d 960, 963 (3d Cir. 1991)). In determining whether these elements are present, a court should "focus on the central purpose of the doctrine, to require a plaintiff to present all claims arising out [of] the same occurrence in a single suit." *Id.* (quoting *Blunt v. Lower Merion Sch. Dist.*, 767 F.3d 247, 277 (3d Cir. 2014), *cert. denied*, 575 U.S. 950 (2015)). *Res judicata* "bars not only claims that were brought in a previous action, but also claims that could have been brought." *In re Mullarkey*, 536 F.3d 215, 225 (3d Cir.

10

2008). The doctrine is intended to encourage finality and reliance on judicial decisions, protect the party relying on the previous adjudication from vexatious litigation, and avoid wasting judicial resources. *See Davis*, 824 F.3d at 341-42.

Undoubtedly, a final judgment on the merits was issued in the prior suit. *See* Ex. A and B. In addition, there should be no dispute that the previous matter and this matter share the same parties and their privies. Nautilus, Motel Management Services, Inc. and E.B. were all participants in the underlying lawsuit. *See* Ex. A. The other defendants to this action are in privity with Motel Management Services Inc. via their relationship to the Neshaminy Inn Motel which they all either own, manage or operate. The only real issue before this Court is whether the prior suit involved "the same cause of action" as this one.

A prior suit and a subsequent suit are based on the same cause of action when there is an "essential similarity of the underlying events giving rise to the various legal claims." *CoreStates Bank, N.A. v. Huls Am., Inc.*, 176 F.3d 187, 194 (3d Cir. 1999) (quoting *United States v. Athlone Indus., Inc.*, 746 F.2d 977, 984 (3d Cir. 1984)). Courts generally "take a broad view" in deciding this issue, as "[t]he mere fact that a plaintiff asserts a different theory of recovery or seeks different relief in the later action does not save a plaintiff's action from *res judicata*." *Id.* In deciding whether there is an "essential similarity" between the two suits, a court should analyze: "(1) whether the acts complained of and the demand for relief are the same . . .; (2) whether the theory of recovery is the same; (3) whether the witnesses and documents necessary at trial are the same . . .; and (4) whether the material facts alleged are the same. *Athlone*, 746 F.2d at 984. *Res judicata* cannot be defeated by "minor differences of form, parties or *allegations* where the controlling issues" were previously resolved. *Massullo v. Hamburg, Rubin, Mullin, Maxwell & Lupin, P.C.*, 1999 WL 313830, at *5 (E.D. Pa. May 17, 1999).

11

Here, there can be no question that there is an essential similarity of the underlying events giving rise to the legal claims in this lawsuit and in the previous matter. Simply put, in the previous matter and in this matter Nautilus brought a declaratory judgment action against Motel Management Services, Inc. and E.B seeking this Court's declaration that it did not have a duty to defend or indemnify Motel Management in the underlying suit, captioned *E.B. v. Motel 6 Operating L.P. et al.*, Case No. 170500487. *See* Ex. A.

The acts complained of in both lawsuits are the same. Conceptually, this Court should consider what the lawsuit would look like if Nautilus were not the plaintiff and if it had refused to defend or indemnify the Motel Management defendants in the underlying lawsuit instead of filing this action and the previous action. If it had, then the "acts complained of" by the Motel Management defendants in both matters would have been that Nautilus breached the terms of the insurance policy because Nautilus had a duty to defend and indemnify it in *E.B. v. Motel 6 Operating L.P. et al.*, Case No. 170500487.

The demand for relief in both cases in the same, as Nautilus has requested this Court to declare the rights of the parties as it relates to the same insurance policy in both lawsuits. Therefore, this suit and the previous matter both share the same "acts complained of and demand for relief," involving the question of whether the Nautilus policies provide insurance coverage for the same underlying lawsuit. This Court should be guided by Judge Savage's opinion wherein he wrote: "Consequently, Nautilus has no duty to defend and indemnify MMS in the underlying suit". That suit remains the same: *E.B. v. Motel 6 Operating L.P.*

The fact that E.B. amended her complaint in such a way that the Motel Management defendants were able to change their theory of recovery does not save them from *res judicata*. Those differences are not legally significant to the *res judicata* doctrine since the controlling

issues—whether Nautilus had a duty to defend and indemnify the Motel Management defendants in E.B.'s suit—were previously resolved. E.B. merely deleted certain allegations which would make it somewhat less obvious that her alleged damages arose from an assault or battery.

It should be troubling to this Court that E.B. was a party to the previous action and *never* made any attempt to amend the complaint in the underlying case, even as the coverage issues were litigated before this Court and all the way through the appeals process. It was not until coverage was lost that E.B. removed certain allegations which this Court found significant to its analysis from her complaint. E.B. made the allegations less specific so as to conceal the fact that she is essentially alleging that she was the victim of repeated assaults and rapes to obtain insurance coverage to pay for the injuries she sustained as a result. However, we know from E.B.'s original complaint—which she swore to be true under penalty of law—that her lawsuit involves numerous alleged assaults, batteries, and rapes at the hands of traffickers and other customers which were determined by this Court to be excluded from coverage under the Nautilus policies.[3]

Based on the pleadings in this matter, the Motel Management defendants will contend that E.B. amended her complaint to conform her pleadings to her deposition testimony, during which she contradicted her complaint by stating that she had not been held at gunpoint. It is interesting, however, that her complaint was not amended to include the allegations of force which she *did* testify to at her deposition. *See* Ex. F, E.B. Dep. 66:6-9 (". . . he kept trying to like kind of force it, and I was like no.  He kept trying to take pictures of my breast.  I said no."); E.B. Dep. 70:15-

---

[3] It should be noted that the District Court's determination that coverage here would violate public policy was not based on whether E.B. was or was not assaulted.  It was based on the allegation that Motel Management Services, Inc. was alleged to have violated the Pennsylvania Human Trafficking Law, and that allegation has not changed one iota.  The specifics of how it was violated <u>may</u> have changed, but this amended complaint certainly avers that the Motel Management defendants violated the act.  It is *res judicata* that allegations of violation of the Act cannot be insured.

20 ("Once we got there he like, he changed into another person. He was yelling at – he was yelling at me and he was saying like you need to wash up, you need shave everything do your hair, and you're going to be having sex with men."); E.B. Dep. 92:17-19 ("He made me do the same thing, stand outside while he went in and paid for the room."); E.B. Dep. 155:9-11 ("Q. You testified today that he forced you into prostitution? A. Yes."); E.B. Dep. 166:17-18 ("I had [a knife] on me because one of the dates I had had raped me."); E.B. Dep. 238:20-23 (Referencing her pimp, ". . . I had to like kind of like work my way around him a little bit because he was like very controlling and manipulating."); E.B. Dep. 239:18-24 ("Q. Did he force you to have sex with him? . . . A. He didn't physically force me, but verbally, yes."); E.B. Dep. 284:6-12 ("Q. Was that a true statement [that you were not being forced to have sex against your will]? . . . A.  No.  Q. How was it untrue? A. Because I was being forced.") That her amended complaint did not include these allegations belies her actual motive: to avoid the Nautilus policies' assault or battery exclusion to obtain insurance compensation. If she were not trying to obtain insurance compensation, then when she amended her complaint she would have included these allegations which were entirely consistent with her deposition testimony.

In short, this matter involves exactly the same cause of action as in the previous matter before this Court and the doctrine of *res judicata* bars re-litigation. All of the elements of *res judicata* have been met, and therefore, Nautilus still has no duty to defend or indemnify the Motel Management defendants in the underlying suit.

**B.    Even if *Res Judicata* Does not Operate to Preclude the Motel Management Defendants from Seeking a Defense and Indemnify from Nautilus, the All Assault or Battery Exclusion Does**

An insurer's duty to defend and indemnify an insured is determined by the terms of the insurance policy and the factual allegations in the underlying complaint.  *J.H. France Refractories v. Allstate Ins. Co.*, 626 A.2d 502, 510 (Pa. 1993).  Coverage is triggered only when allegations in

14

the underlying complaint actually or potentially fall within the scope of the insurance policy. *Id.* In deciding whether coverage has been triggered, "the particular cause of action that a complainant pleads is not determinative." *Mutual Ben. Ins. Co. v. Haver*, 725 A.2d 743, 745 (Pa. 1999). Thus, "[t]he analysis is driven not by the causes of action pled, but by the factual allegations set forth in the complaint." *State Farm Fire & Cas. Co. v. A.S.*, Civil Action No. 16-35, 2017 WL 7451631, at *5 (W.D. Pa. Dec. 18, 2016) (citing Haver, 725 A.2d at 745)). This is because allowing the cause of action to control encourages litigants to file "artful pleadings designed to avoid exclusions in liability insurance policies." Haver, 725 A.2d at 746.

In a complaint that begins with "sex trafficking is a form of modern day slavery" and "evil in the abuse and exploitation of the most innocent and vulnerable," no one can seriously contend that the complaint alleges that E.B. subjected herself to voluntary sexual contact. Ex. D ¶ 1. It is anticipated, however, that the Motel Management defendants will argue just that: that E.B.'s complaint merely alleges "prostitution and negligence," as Motel Management argued in its appeal before the Third Circuit. This argument was not credited then, and it should not be credited now, as "the characterization of the horrific injuries suffered by the children who are victims of sexual molestation as resulting from negligence 'would create a legal oxymoron as an extension of tort law.'" *Erie Ins. Exch. v. Claypoole*, 673 A.2d 348, 356 (Pa. Super. 1996) (quoting *Aetna Cas. & Sur. Co. v. Roe*, 650 A.2d 94, 102 (1994)).

Though E.B. removed the allegations that she was held at gunpoint and treated aggressively by her sex traffickers, the entirety of the E.B.'s amended complaint is based on claims of human trafficking and sexual servitude. The Pennsylvania Human Trafficking Law—which is what the insured is accused of violating by financially benefitting when E.B.'s traffickers purchased rooms at the Neshaminy Inn Motel, thereby facilitating E.B.'s "sexual servitude," *see, e.g.*, Ex. D ¶ 59—

15

defines "sexual servitude" as "any sex act or performance involving a sex act for which anything of value is directly or indirectly given, promised to or received by any individual or which is performed or provided by any individual and is induced or obtained from…. a minor." 18 Pa. C.S.A. § 3001. In the Human Trafficking statute, the legislature specifically provides that it is not a defense to such a claim that "the victim of the sex trade consented to engage in sex trade activity." 18 Pa. C.S.A. §3051(j)(8). The legislature has clearly made a judgment that minors cannot consent to sex trafficking, i.e. cannot consent to sexual servitude. Therefore, every single time E.B. had sex with a "John" at the premises of the Neshaminy Inn "numerous" times per day, *see id.* ¶ 40, it constituted an assault to which she was legally unable to consent by virtue of the provisions of the Human Trafficking Law which makes it a crime for any minor to be subjected to sexual servitude whether she consents to be prostituted or not. *See* 18 Pa. C.S.A. § 3011. The legislature has adjudged such consent to be meaningless. *See* 18 Pa. C.S.A. §3051(j)(8). The sexual acts alleged in the complaint are a touching, and a touching suffered as a part of sexual servitude *cannot be consensual*, making it a battery.

This logic is not so unusual. When a teacher has sexual relations with a student even if the student consented the conduct is nevertheless a battery because the student's consent is invalid as a matter of law. *See Kobrick v. Stevens, et al.*, Civil Action No. 3:13-CV-2865, 2017 WL 3839945 (M.D. Pa., September 1, 2017). That is so for two reasons: (1) "the nature of a student-teacher relationship creates an innate power disparity which renders true consent unattainable; and (2) the legislature criminalized" sexual relations between students and teachers "notwithstanding [the] consent" of the student. *Id.* at *7 (citing *Chancellor v. Pottsgrove School District*, 501 F. Supp. 2d 695 (E.D. Pa. 2007). As it relates to the plaintiff's assault and battery claims, the court in *Kobrick* specifically held:

16

> We have already concluded that the combination of Kobrick's status
> as a minor and the naturally coercive student-teacher relationship
> rendered Kobrick incapable of consent as a matter of law.
> Consequently, because Kobrick could not truly acquiesce to
> Stevens' sexual advances, her ostensible consent is no defense to the
> assault and battery claims. Because the contact was nonconsensual,
> Kobrick need not prove physical injury or intent to cause same.

*Id.* at *9 (internal citations removed).

Here, the conduct described in E.B.'s amended complaint is "human trafficking." The legislature has outlawed "human trafficking" which includes causing someone to be subject to "sexual servitude."  "Sexual servitude" includes a sex act "for which anything of value is directly or indirectly given … which is induced or obtained from . . . a minor." 18 Pa. C.S.A. § 3001. Such conduct is a felony as are sexual relations between a teacher and student. *See* 18 Pa. C.S.A. § 3011; *see, generally Chancellor*, 501 F. Supp. 2d 695 (discussing that the Pennsylvania legislature determined that in certain situations minors lack the capacity to consent to sexual contact).  The legislature outlaws the student-teacher relationship, despite consent because of the "innate power disparity" between student and teacher.  It outlawed human sex trafficking for virtually the same reason.  As the plaintiff in *Kobrick* was incapable of consenting as a matter of law, E.B was also incapable of consenting to the sexual contact she now alleges caused her both emotional *and physical harm*. Both E.B. and the plaintiff in *Kobrick* were therefore assaulted.

The legislature's use of the word "servitude" itself implies that E.B. was the victim of assault. "Servitude" is defined as "a condition in which one lacks liberty especially to determine one's course of action or way of life." *Servitude Definition*, MERRIAM-WEBSTER.COM, https://www.merriam-webster.com/dictionary/servitude (last visited Jan. 4, 2018). The allegations in E.B.'s amended complaint and the terms of the Pennsylvania Human Trafficking Law and their meaning all show that E.B. is alleging that she lacked the liberty to determine her own course of action or way of life when she was prostituted at the Neshaminy Inn. Each and every time E.B.

"engaged in commercial sex acts" with a "John"—numerous times per day—she was being assaulted because she necessarily lacked the ability to consent by operation of law. Ex. D ¶¶ 36, 40.

The provisions of the Pennsylvania Human Trafficking Law and the alleged violations of it in E.B.'s case are not the only proof that E.B. suffered numerous assaults. E.B.'s amended complaint, though less specific than her previous complaint, continues to allege that she was assaulted.  In support of her claims that she was subjected to sexual servitude, E.B. alleges that she was sexually exploited, accompanied by older men wherever she went in the motel, and experienced and exhibited fear and anxiety. Ex. D ¶¶ 33, 41-42, 52, 65, 84.  E.B. does, in fact, allege that she sustained "physical harm" and emotional distress because of the illegal contact. *Id.* ¶¶ 54, 66, 88. She even writes obliquely that she was the victim of a "violent" crime. *Id.* ¶¶ 85-86. All of E.B.'s claims are based on her sexual servitude and all of the facts contained in the four corners of her complaint allege assaultive behavior by those who participated in and facilitated her sexual servitude, no matter how construed.[4]

The language of the assault and battery exclusion in the Nautilus policy is plain, and it applies even though the Motel Management defendants were not accused of assault or battery in the underlying amended complaint. The exclusion provides, regardless of culpability or intent of any person, that there is no coverage for "bodily injury" or "personal and advertising injury" arising out of any: (1) actual or alleged assault or battery; (2) physical altercation; or (3) any act or

---

[4] The assault or battery exclusion has been applied on numerous occasions by Pennsylvania courts and courts in other jurisdictions where the insured is accused not of committing the assault itself but rather is accused of failing to prevent an assault or battery. *See Nautilus Ins. Co. v. Motel Mgmt. Servs.*, 320 F. Supp. 3d 636 (E.D. Pa. 2018); *Nautilus Ins. Co. v. Shawn Owens Inc.*, 316 F. Supp. 3d 873, 875 (E.D. Pa. 2018); *Nautilus Ins. Co. v. Tenort*, No. 14-cv-2055-SHL-tmp, 2015 WL 11019254 (W.D. Tenn. April 20, 2015).

omission in connection with the prevention or suppression of such acts. *Id.* It applies regardless of whether such actual or alleged damages are caused by an employee, patron or any other person. *Id.*  The exclusion applies to all causes of action arising out of any assault, battery, or physical altercation including allegations of any act, error, or omission relating to such an assault, battery, or physical altercation. *Id.* It also applies to any claim arising out of any act or omission in connection with the prevention or suppression of an assault, battery or physical altercation, including failure to provide adequate security, negligent hiring, placement, training, or supervision. *Id.* Thus, to the extent that the underlying amended complaint alleges "negligent" failure to prevent the assaults rather than committing the assaults itself, it is of no moment.  The exclusion plainly applies to the failure to prevent an assault or battery. *Id.*

Nautilus anticipates that the Motel Management defendants will argue that the reasonable expectations doctrine applies,[5] and coverage should then be found here because the Motel Management defendants reasonably expected coverage "for claims arising from illegal sexual activity and/or underage activity by third parties unaccompanied by the compulsion of force or threat of force," as stated in their answer to Nautilus's complaint. *See* Doc. No. 19 ¶ 11. First, there is no suggestion that Nautilus ever misled the Motel Management defendants as to the coverage that the policy provided. Second,  no reasonable person could think that a minor who is victim of sex trafficking was not assaulted by the men who engaged in commercial sex acts with her. The Pennsylvania legislature deemed a minor's consent to sexual servitude to be invalid as a matter of law because the legislature recognized that the power dynamics in such a situation are such as to render "consent" entirely meaningless. This Court need not credit the Motel Management

---

[5] Under this doctrine, courts are "concerned with assuring that the insurance purchasing public's reasonable expectations are fulfilled." *Tonkovic v. State Farm Mut. Auto. Ins. Co.*, 521 A.2d 920, 926 (1987).

defendants' argument as "[o]nly objectively reasonable expectations are protected." *Selected Risks Ins. Co. v. Bruno*, 718 F.2d 67, 71 (3d. Cir. 1983). Finally, "[e]xclusions from coverage of an insurance policy will be effective against an insured if they are 'clearly worded' and 'conspicuously displayed' without regard to whether the insured read the limitations or *understood their significance*." *Pacific Indemnity Co. v. Linn*, 766 F.2d 754, 761 (3d Cir. 1985) (emphasis added). All one has to do is look at page 35 of the Nautilus insurance policy to see the assault or battery exclusion is both clearly worded and conspicuously displayed. It simply does not matter that the Motel Management defendants did not understand the exclusion would preclude coverage for claims a minor was physically injured by older men engaging in commercial sex acts with her on their premises.

As established above, although E.B. has attempted to scrub from the amended complaint the allegations which made it crystal clear that she was assaulted, the amended complaint still alleges that E.B. was the victim of multiple assaults. The assault or battery exclusion clearly applies to such allegations, even though the Motel Management defendants are not alleged to have committed the assaults themselves. Therefore, this Court should declare for the second time that Nautilus has not duty to defend or indemnify the Motel Management defendants in the underlying suit.

      **C.**     **Public Policy Precludes Coverage Because the Allegations against the Motel Management Defendants Involve Criminal Acts of Human Trafficking and Sexual Servitude**

Under Pennsylvania public policy, an insurer has no duty to defend or indemnify an insured for reprehensible criminal acts. The factual allegations in the underlying E.B. complaint against MMS are based on alleged heinous criminal acts and violations of the Pennsylvania Human Trafficking Law which—as this Court ruled in the previous matter—are uninsurable as a matter of law.

20

It is "against the public policy of this Commonwealth to permit a carrier to offer insurance for damages assessed as a result of evil or illegal conduct." *Minnesota Fire & Cas. Co. v. Greenfield*, 855 A.2d 854, 868 (Pa. 2004) (quoting *Mutual Ben. Ins. Co. v. Haver*, 725 A.2d 743, 747 (Pa. 1999)). Criminal statutes enacted by the legislature offer a clear justification for invalidating an insurance contract based on public policy. *Greenfield*, 855 A.2d at 866 (citing *Burstein v. Prudential Prop. & Cas. Ins. Co.*, 809 A.2d 204, 207 (Pa. 2002)). Indeed, "[o]nly in the clearest cases . . . may a court make an alleged public policy the basis of judicial decision . . . [T]he fact [] that the legislature has criminalized the conduct that resulted in the damages . . . exemplifies the clearest of cases." *Greenfield*, 855 A.2d at 868 (internal citations omitted). Further, "when a given policy is so obviously . . . against the public health, safety, morals or welfare that there is a virtual unanimity of opinion in regard to it . . . a court may constitute itself the voice of the community in so declaring" what is not in accord with public policy. *Teti v. Huron Ins. Co.*, 914 F. Supp. 1132, 1141 (E.D. Pa. 1996) (quoting *Electric Ins. Co. v. Rubin*, 32 F.3d 814, 816 (3d Cir. 1995)).

In *Teti v. Huron Ins. Co.*, this Court constituted itself the voice of the community and declared that "insuring against damages resulting from sexual contacts between a public school teacher and his student is repugnant to Pennsylvania public policy." 914 F. Supp. at 1141. The court so held because the Pennsylvania Legislature expressly protected students from sexual advances by teachers and Pennsylvania courts frequently disapprove of sexual contact between students and teachers. Id. at 1141-42. Of importance was the fact that "a teacher's sexual molestation of a student could not possibly be deemed an acceptable practice," Id. at 1142, and "[t]he average person purchasing . . . insurance would cringe at the very suggestion that he was

paying for coverage for liability arising out of his sexual abuse of a child." Id. at 1142, n. 11 (quoting *Wiley v. State Farm Fire & Cas. Co.*, 995 F.2d 457, 464 (3d. Cir. 1993)).

The Motel Management defendants are expected to argue that the court's decision in *Bd. of Pub. Educ. of the Sch. Dist. v. Nat'l Union Fire Ins. Co.*, 709 A.2d 910, 917 (Pa. Super. Ct. 1998) nullifies Nautilus's public policy argument since the court in that case "found coverage for a school district's alleged negligence in connection with the criminal sexual molestation of a student." Doc. No. 19 ¶ 36. Except that decision .had absolutely nothing to do with "public policy" and everything to do with the terms and exclusion of the policy in that case, which the Motel Management defendants admit are different from the policy here. *Id.* The words "public policy" do not even appear in the text of that decision. Moreover, the assault or battery exclusion in this case is much broader than the policy in *Bd. of Pub. Educ. of the Sch. Dist.* That court even noted that "the policy contains no express exclusions for negligent supervision, control, or hiring. . ." whereas the Nautilus policy *does*. 709 A.2d at 915.

As it is against the public policy of this Commonwealth to permit insurance coverage for claims arising from evil or illegal conduct, coverage should be precluded in this case. E.B.'s complaint alleges that she was the victim of the sex trade and describes human sex trafficking as a "form of modern-day slavery" and a "form of evil and abuse and exploitation of the most innocent and vulnerable."  These characterizations of the human sex trade are undoubtedly true. The Pennsylvania Legislature has articulated, through robust amendments to the Pennsylvania Human Trafficking Law, 18 Pa. Cons. Stat. § 3001, *et seq.* in 2014, that human sex trafficking is against the public policy of Pennsylvania and has thus criminalized the conduct that resulted in E.B.'s damages. As E.B. herself states, the Pennsylvania legislature sought to "ensure that anyone or any entity that directly or indirectly benefits financially" from human sex trafficking "is fully

22

deterred through both criminal and civil prosecution." The section of the statute dealing with criminal acts provides:

> (a) Offense defined.--A person commits a felony of the second degree if the person:
>
>> (1) recruits, entices, solicits, harbors, transports, provides, obtains or maintains an individual if the person knows or recklessly disregards that the individual will be subject to involuntary servitude; or
>>
>> (2) knowingly benefits financially or receives anything of value from any act that facilitates any activity described in paragraph (1).
>
> (b) Trafficking in minors.--A person commits a felony of the first degree if the person engages in any activity listed in subsection (a) that results in a minor's being subjected to sexual servitude.

18 Pa.C.S. § 3011. "Sexual servitude" is defined by the Act as:

> Any sex act or performance involving a sex act for which anything of value is directly or indirectly given, promised to or received by any individual or which is performed or provided by any individual and is induced or obtained from:
>
>> 1.      A minor . . . .

18 Pa. C.S.A. § 3001.

The amended complaint in the underlying action clearly pleads that E.B. was a victim of "sexual servitude." She was a minor when she was the victim of human sex trafficking, Ex. D, ¶ 4. She alleges that she was "exploited and permitted to be exploited by a trafficker of commercial sex acts *and those who financially benefitted from her exploitation.*" *Id.* ¶ 5 (emphasis added). Even though the amended complaint no longer specifically says the words: "the Motel Management defendants 'financially profited' when E.B. was recruited, enticed, solicited, harbored and/or transported to engage in commercial sex acts at the Neshaminy Inn," the allegations make it clear that the Motel Management defendants continue to be accused of

23

knowingly receiving a financial benefit from such activities. The amended complaint alleges that the Motel Management defendants, by and through their employees, were "uniquely positioned to observe the manifestations, indications and evincement of human sex trafficking within the Neshaminy Inn Motel . . . where they worked." *Id.* ¶ 24. E.B. alleges that the Motel Management defendants "rented rooms to sex traffickers benefiting from the commercial sex acts occurring on the premises of the Neshaminy Inn Motel," knew they were doing it, and knew that she was being sexually exploited. *Id.* ¶¶ 31-33, 65. Clearly, the Motel Management defendants financially benefitted from this activity which directly facilitated E.B.'s sexual servitude.

These accusations constitute crimes under the above statute. The average person purchasing insurance would cringe at the suggestion that he was paying for coverage for liability arising out of the sexual servitude of a minor.  There are other allegations in the complaint that while not necessarily criminal, are still reprehensible. The Motel Management defendants allegedly "failed to prevent human sex trafficking at the Neshaminy Inn Motel . . . and instead permitted heinous and unspeakable acts to occur." *Id.* ¶ 25. Adding insult to injury, they also allegedly "failed to report to authorities, intervene, disrupt, or otherwise stop the human sex trafficking" of E.B. *Id.* ¶ 47. Instead, they allegedly knowingly rented rooms to E.B.'s sex traffickers even though they knew she was being sexually exploited by them which is a *crime* as described above.[6]

---

[6] For purposes of avoiding Nautilus's contention that public policy precludes Coverage, it is certainly no answer for Motel Management to contend that the Amended Complaint also pleads "constructive knowledge." Constructive knowledge is "knowledge that one using reasonable care or diligence should have, and therefore that is attributed by law to a given person." *Gleeson v. State Bd. of Medicine*, 900 A.2d 430 (Pa. Cmwlth. 2005).  If reasonable care or diligence on the part of Motel Management would have discovered what was occurring on its premises, it is not likely that public policy should reward the company with insurance for turning a blind eye if the purpose of the statute is to end human sex trafficking.

Count II of the E.B. complaint alleges that the Motel Management defendants violated 18 Pa. Cons. Stat. § 3051. *Id.* ¶¶ 57-62. The remaining counts against the Motel Management defendants incorporate all of the preceding averments by reference and arise out of the same alleged facts, actions, or inactions of the Motel Management defendants which were described above. *See id.* ¶¶ 80, 94. Therefore, all the counts against the Motel Management defendants in the underlying complaint are based on allegations which constitute criminal violations of the Pennsylvania Human Trafficking Law.

The Motel Management defendants will argue that denying coverage for violations of the Pennsylvania Human Trafficking Law "would have potentially far reaching adverse consequences to the hospitality industry of this Commonwealth, and would also result in denial of compensation to victims of sexual trafficking . . . contrary to public policy." Doc. No. 19 ¶ 36.  However, it is already evident that E.B. herself will not go uncompensated if this Court finds coverage is against public policy, since she has already moved to put a hold on the Motel Management defendants' assets in State Court. As for any broader implications, the Marriotts and Hyatts of the world have plenty of money.  More importantly, if we permit hotel operators, whether Motel Management or Marriott to turn these claims over to their insurance companies, the incentive is completely removed for hotels and motels to "clean up their acts." This is exactly why the legislature made it a crime to financially benefit from the illegal conduct. Until a real penalty exists, the sexual servitude and involuntary servitude of women and children—which as the complaint says is omnipresent—will simply continue on.

## V.  **CONCLUSION**

For all of the reasons stated above, the motion of plaintiff, Nautilus Insurance Company, for judgment on the pleadings seeking a declaration that it does not owe any duty to defend or

indemnify Motel Management Services in the underlying matter of <u>E.B. v. Motel 6 Operating L.P.</u>

<u>et al.</u>, Philadelphia County No. 1705-0487, should be granted.

                                    **Respectfully Submitted,**

                                    **BENNETT, BRICKLIN & SALTZBURG** LLC

**BY:** _____

                                    **LOUIS E. BRICKLIN**
                                    Attorney I.D. No.  20281
                                    **SARAH E. CROSLEY**
                                    Attorney I.D.  No. 325916
                                    Centre Square, West Tower
                                    1500 Market Street, 32nd Floor
                                    Philadelphia, PA 19102
                                    215-665-3400
                                    bricklin@bbs-law.com
                                    crosley@bbs-law.com

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| NAUTILUS INSURANCE COMPANY | : | |
| | : | |
| v. | : | |
| | : | |
| MOTEL MANAGEMENT SERVICES, | : | NO. 2:20-cv-00289-PBT |
| INC. d/b/a NESHAMINY INN, and | : | |
| THE MARY ETZRODT REAL | : | |
| ESTATE TRUST, and NI45, LLC, E.B | : | |

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that this document has been filed electronically and is available for viewing and downloading from the ECF System by all interested counsel.

BENNETT, BRICKLIN & SALTZBURG LLC

BY: _____
        **LOUIS E. BRICKLIN**
        Attorney I.D. No.  20281
        **SARAH E. CROSLEY**
        Attorney I.D.  No. 325916
        Centre Square, West Tower
        1500 Market Street, 32nd Floor
        Philadelphia, PA 19102
        215-665-3400
        bricklin@bbs-law.com
        crosley@bbs-law.com