# EXHIBIT "A"

### IN THE UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **NAUTILUS INSURANCE COMPANY** | : | **CIVIL ACTION** |
| | : | |
| **v.** | : | |
| | : | |
| **MOTEL MANAGEMENT SERVICES, INC.,** | : | |
| **d/b/a Neshaminy Inn and E.B.** | : | **NO. 17-4491** |

#### MEMORANDUM OPINION

**Savage, J.**                                                                        **May 24, 2018**

Nautilus Insurance Company seeks a declaration that it has no duty to defend and indemnify its insured, Motel Management Services (MMS), in a pending state court action alleging MMS was negligent in failing to prevent human sex trafficking from occurring on its property.[1]  Moving for judgment on the pleadings, Nautilus argues that coverage is excluded by the assault and battery exclusion because the claim in the underlying action is for assault.  It also argues that as a matter of public policy, it has no duty to defend or indemnify an insured for allegations of human trafficking.

After reviewing the policy and the plaintiff's complaint in the underlying action, we conclude that because the claims are for the negligent failure to prevent an assault or battery, they are not covered.  Therefore, we shall grant Nautilus's motion and declare that it has no duty to defend and indemnify MMS.

#### The Underlying Action

Beginning in 2014, E.B., a minor female, alleges that she was "recruited, enticed, solicited, harbored and/or transported to engage in commercial sex acts" at a motel

---

[1] This action is brought under the Federal Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq.* Subject matter jurisdiction is based upon the diversity of citizenship of the parties pursuant to 28 U.S.C. § 1332.

owned and operated by MMS.[2]  Traffickers advertised online that E.B.'s services were available at the motel.[3]  She alleges the traffickers took her to the motel and checked into a room where she was forced to engage in commercial sex acts.[4]  The motel employees consistently directed E.B. and the traffickers to the same room towards the back of the property each time.[5]  The room was always paid for in cash from the money E.B. earned from engaging in commercial sex activity.[6]

E.B. alleges she was "visibly treated in an aggressive manner" by her traffickers.[7]  Indeed, she claims she was held at gunpoint and threatened to engage in sex acts not only with her paying customers, but also with her traffickers.[8]  And while she was engaged in forced sexual activity, men and other minors entered and exited the room.[9]

E.B. claims that MMS facilitated her exploitation by knowingly permitting the traffickers' activity on its property.[10]  E.B. also contends that MMS failed to intervene or stop human sex trafficking, and to report the traffickers' illegal conduct to the

---

[2] Compl., Ex. A, Compl., *E.B. v. Motel 6 Operating L.P. et al.*, Case No. 170500487 (Phila. Ct. C.P. May 2017) (Doc. No. 1) ("E.B. Compl.") at ECF 19–36, ¶ 27.  Conduct alleged in the underlying complaint occurred at two motels, the Motel 6 Philadelphia Airport and the Neshaminy Inn Motel.  For purposes of this action, we consider only the conduct alleged at the Neshaminy Inn Motel, which MMS "owned, operated, and/or managed." *Id.* ¶¶ 15–16.

[3] E.B. Compl. ¶¶ 32–33.

[4] *Id.* ¶¶ 37–39.

[5] *Id.*

[6] *Id.* ¶ 43.

[7] *Id.* ¶ 41.

[8] *Id.* ¶ 37.

[9] *Id.* ¶ 45.

[10] *Id.* ¶ 47.

authorities.[11]  She also claims that MMS financially profited from her being exploited for sex trafficking by renting motel rooms to her traffickers.[12]

E.B. brings claims for negligence, negligence *per se*, negligent infliction of emotional distress, and intentional infliction of emotional distress.  As to the negligence *per se* claim, she avers that MMS's conduct violated Pennsylvania's Human Trafficking Law, 18 Pa. Cons. Stat. § 3001 *et seq.*, which criminalizes the recruitment, enticement, harboring or transporting of a minor for the purpose of the minor engaging in any commercial sex act.

At the time of the alleged sex trafficking incidents, MMS was covered by an insurance policy issued by Nautilus.  We must decide whether Nautilus has a duty to defend and indemnify MMS in the state court action.  In other words, we must determine whether any of the claims in the underlying complaint are potentially covered by the policy.

## Standard of Review

The interpretation of an insurance contract is a question of law.  *Am. Auto. Ins. Co. v. Murray*, 658 F.3d 311, 320 (3d Cir. 2011).  Whether a claim is within a policy's coverage or is barred by an exclusion may be determined on a motion for judgment on the pleadings.  *Allstate Fire & Cas. Ins. Co. v. Hymes*, 29 A.3d 1169, 1171 (Pa. Super. 2011).  All the well-pleaded factual assertions in the underlying complaint against the insured are accepted as true.  5C Charles Alan Wright & Arthur R. Miller, Fed. Prac. & Proc. Civ. § 1368 (3d ed., Apr. 2016) (citing *Allah v. Al-Hafeez*, 226 F.3d 247, 249–50

---

[11] *Id.* ¶¶ 47, 50.

[12] *Id.* ¶¶ 48, 50.

(3d Cir. 2000)).   Applying these principles, we examine the insurance policy and the allegations in the underlying state court complaint.

### Interpretation of Insurance Contracts

Where the insurer relies on a policy exclusion as the basis for denying coverage, it has the burden of proving that the exclusion applies.  *State Farm Fire & Cas. Co. v. Estate of Mehlman*, 589 F.3d 105, 111 (3d Cir. 2009); *Wolfe v. Ross*, 115 A.3d 880, 884 (Pa. Super. 2015).  Policy exclusions are strictly construed against the insurer and in favor of the insured.  *QBE Ins. Corp. v. Walters*, 148 A.3d 785, 788 (Pa. Super. 2016); *see also Mut. Benefit Ins. Co. v. Politsopoulos*, 115 A.3d 844, 852 n.6 (Pa. 2015) (citing *Madison Constr. Co. v. Harleysville Mut. Ins. Co.*, 735 A.2d 100, 106 (Pa. 1999)); *Peters v. Nat'l Interstate Ins. Co.*, 108 A.3d 38, 43 (Pa. Super. 2014).

### Duty to Defend

An insurance carrier's duty to defend is distinct from its duty to indemnify.  It is interpreted more broadly than the duty to indemnify.  *QBE Ins. Corp.*, 148 A.3d at 788 (quoting *Kvaerner Metals Div. of Kvaerner U.S., Inc. v. Commercial Union Ins. Co.*, 908 A.2d 888, 896 n.7 (Pa. 2006)).  An insurer may have a duty to defend even though it may have no duty to indemnify.  *Id.* (quoting *Selective Way Ins. Co. v. Hosp. Grp. Servs., Inc.*, 119 A.3d 1035, 1046 (Pa. Super. 2015) (en banc)).  A duty to indemnify does not arise until the insured is found liable for a covered claim.  *Id.*

Because the duty to defend is broader than the duty to indemnify, the complaint in the underlying action must be construed liberally.  The factual allegations must be accepted as true, and all doubts as to coverage resolved in favor of the insured.  *Id.* (citing *Donegal Mut. Ins. Co. v. Bauhammers*, 938 A.2d 286, 290 (Pa. 2007)).  To

prevent artful pleading designed to avoid policy exclusions, it is necessary to look at the factual allegations in the complaint, not how the plaintiff in the underlying action frames the request for relief. *Id.* (citing *Donegal*, 938 A.2d at 291). In other words, the focus of the coverage inquiry is on the substance, not the form, of the allegations.

Whenever the complaint sets forth facts raising claims that could possibly come within the policy's coverage, the insurer's duty to defend is triggered. *Id.*; *Erie Ins. Exch. v. Muff*, 851 A.2d 919, 931 (Pa. Super. 2004). Consequently, an insurer is obligated to defend the insured against any suit arising under the policy even if the suit is "groundless, false, or fraudulent" so long as there is a possibility of coverage. *Selective Way Ins. Co.*, 119 A.3d at 1046 (citation omitted). If a single claim in a multiple-claim complaint is potentially covered, the duty to defend attaches until the underlying plaintiff can no longer recover on a covered claim. *Frog, Switch & Mfg. Co. Inc. v. Travelers Ins. Co.*, 193 F.3d 742, 746 (3d Cir. 1999) (citing *Erie Exch. v. Transam. Ins. Co.*, 533 A.2d 1363, 1368 (Pa. 1987)).

## Analysis

The policy provides that Nautilus "will pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies."[13] However, Nautilus "will have no duty to defend the insured against any 'suit' seeking damages for 'bodily injury' or 'property damage' to which this insurance does not apply."[14] The policy explains that it applies "to 'bodily injury' and 'property damage' only if . . . [t]he 'bodily injury' or 'property damage' is

---

[13] Mem. in Opp'n to Pl. Mot. for J. on the Pleadings & Def.'s Am. Counter-Mot. for J. on the Pleadings ("MMS Resp.") (Doc. No. 22), Ex. B, Comm. General Liability Coverage Form (Doc. No. 18-1), Section I – Coverages – Coverage A, Bodily Injury and Property Damage Liability, § 1(a), at 52.

[14] *Id.*

caused by an 'occurrence.' "[15]   "Occurrence" is defined as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions."[16]

Nautilus argues that because the allegations of sex trafficking state a cause of action arising out of an assault, it has no duty to defend or indemnify MMS because assault and battery are explicitly excluded from coverage.[17]   Under the All Assault or Battery Exclusion, the policy excludes coverage for bodily injury that is "[a]ctual or alleged assault or battery," "[r]egardless of culpability or intent of any person."[18]   The exclusion states in full:

> **EXCLUSION – ALL ASSAULT OR BATTERY**
>
> This endorsement modifies insurance provided under the following:
>
> COMMERCIAL GENERAL LIABILITY COVERAGE PART
>
> **A.** The following exclusion is added to 2. Exclusions of Section 1 – Coverage A – Bodily Injury And Property Damage Liability, Coverage B – Personal And Advertising Injury Liability, and Coverage C – Medical Payments:
>
> **Regardless of culpability or intent of any person, this insurance does not apply to "bodily injury",** "property damage", "personal and advertising injury" or medical payments **arising out of any**:
>
> 1. Actual or alleged assault or battery;
> 2. Physical altercation; or
> 3. **Any act or omission in connection with the prevention or suppression of such acts, including the alleged failure to provide adequate security**.

---

[15] *Id.* § 1(b)(1).

[16] *Id.* Section V – Definitions ¶ 13 at 65.

[17] Mot. for J. on the Pleadings (Doc. No. 18) at 14.

[18] Ex. B, Comm. General Liability Coverage Form, Exclusion – All Assault or Battery at 76.

This exclusion applies regardless of whether such actual or alleged damages are caused by any:

1. Insured;
2. "Employee";
3. Patron; or
4. Any other person; and

whether or not such damages occurred at any premises owned or occupied by any insured.

**This exclusion applies to**:

1. All causes of action arising out of any assault or battery, or out of a physical altercation including, but not limited to, **allegations of negligent hiring, placement, training, or supervision, or to any act, error, or omission relating to such an assault or battery**, or physical altercation.
2. Any claims or "suits" brought by any other person, firm or organization asserting rights derived from, contingent upon, or arising out of an assault or battery, or a physical altercation; and specifically excludes from coverage claims or "suits" for:
   a. **Emotional distress** for loss of society, services, consortium or income; or
   b. Reimbursement for expenses including, but not limited to, medical expenses, hospital expenses, or wages, paid or incurred, by such other person, firm or organization; or
3. Any obligation to share damages with or repay someone who must pay damages because of the injury.

**B**. We will have no duty to defend or indemnify any insured in any action or proceeding alleging damages arising out of any assault or battery, or physical altercation.[19]

MMS contends that because the underlying complaint avers that it was negligent in failing to intervene, prevent, or report the trafficking was a direct cause of E.B.'s injuries, the assault or battery exclusion does not apply.  It argues that the complaint in the underlying action "does not sound in assault or battery, does not allege an assault

---

[19] *Id.* (emphasis added).

or battery."[20]   It concedes that if the complaint does allege assault or battery, the exclusion precludes coverage.  MMS is wrong.

E.B. alleges she was assaulted.  She asserts she was forcibly compelled to engage in sexual acts against her will.  This included her being "held at gunpoint and threatened to engage in sexual acts with multiple traffickers."[21]  Among other crimes, she was trafficked, raped, sexually assaulted, and indecently assaulted.

Trafficking of a minor occurs when a person "recruits, entices, solicits, harbors, transports, provides, obtains or maintains an individual if the person knows or recklessly disregards that the individual will be subject to" involuntary sexual servitude or "knowingly benefits financially" from such activity.  18 Pa. Cons. Stat. § 3011.  Sexual servitude is defined as a "sex act or performance involving a sex act for which anything of value is . . . given, promised to or received by any individual or which is performed or provided by any individual and is induced or obtained from [a] minor."  18 Pa. Cons. Stat. § 3001.  An individual is subjected to involuntary servitude, including sexual servitude, through the following means: "[c]ausing or threatening to cause serious harm to any individual," "[p]hysically restraining or threatening to physically restrain another individual," "[k]idnapping or attempting to kidnap any individual," "extortion," "[d]uress, through the use or threat to use unlawful force against the person," or "[u]sing any scheme, plan or pattern intended to cause the individual to believe that, if the individual does not perform the labor, services, acts or performances, that individual or another individual will suffer serious harm or physical restraint."  *Id.* § 3012.  Involuntary

---

[20] MMS Resp. at 7, ECF 8.  E.B. joins MMS's counter-motion for judgment on the pleadings. Resp. Joining MMS's Counter-Mot. for J. on the Pleadings (Doc. No. 21).

[21] E.B. Compl. ¶ 37.

servitude necessarily includes assault, which is "an intentional attempt by force to do an injury to the person of another."  *See Renk v. City of Pittsburgh*, 641 A.2d 289, 293 (Pa. 1994) (citation omitted) (defining assault and battery at common law).  It is apparent that E.B. alleges the elements of human trafficking, which include various forms of assault.

Rape is committed when a person engages in sexual intercourse with a victim by forcible compulsion, which includes "not only physical force or violence, but also moral, psychological or intellectual force used to compel a person to engage in sexual intercourse against that person's will."  *Comm. v. Eckrote*, 12 A.3d 383, 387 (Pa. Super. 2010) (quoting *Comm. v. Rhodes*, 510 A.2d 1217, 1226 (Pa. 1986) and citing 18 Pa. Cons. Stat. § 3121).  E.B.'s allegations clearly aver that she was raped when coerced to engage in sexual activity against her will.  Rape, a sexual offense, involves assault, an offensive touching.

Her allegations further support that she was sexually assaulted because she did not consent to engage in sexual intercourse.  *See* 18 Pa. Cons. Stat. § 3124.1; *Comm. v. Buffington*, 828 A.2d 1024, 1032 (Pa. 2003) (sexual assault constitutes a lesser-included offense of rape by forcible compulsion); *see also* 18 Pa. Con. Stat. §§ 3125(a), 3126(a) (crimes of aggravated indecent assault and indecent assault include threat of forcible compulsion).

A person is guilty of simple assault if he attempts to cause or intentionally, knowingly, or recklessly causes bodily injury to another; or attempts "by physical menace to put another in fear of imminent serious bodily injury."  18 Pa. Cons. Stat. § 2701(a).  Being held at gunpoint is a simple assault.  *Comm. v. Gruff*, 822 A.2d 773, 789 (Pa. Super. 2003) (noting that under 18 Pa. Con. Stat. § 2701(a)(3), pointing a gun

at someone constitutes a simple assault as an "attempt[] by physical menace to put another in fear of imminent serious bodily injury") (citing *Comm. v. Savage*, 418 A.2d 629 (Pa. Super. 1980)).

The comprehensive definition of "assault and battery" in the policy encompasses the claims made against MMS.  It defines an insured's failure to prevent or suppress an assault or battery as an assault or battery.  The exclusion explicitly applies to "any act, error, or omission relating to such an assault or battery."  It also states that the policy does not cover bodily injury arising out of "[a]ny act or omission in connection with the prevention or suppression of such acts, including the alleged failure to provide adequate security."  The exclusion also applies to claims brought for "emotional distress" arising out of an assault or battery.  Thus, as defined by the terms of the policy, "assault and battery" includes negligent conduct on the part of the insured or its employees that directly harms another person, whether through negligent failure to prevent an assault, negligence related to an actual or threatened assault, or negligence resulting in battery.

Essentially, negligent conduct contributing to an assault and battery falls within the exclusion.  *QBE Ins. Corp.*, 148 A.3d at 791.  The unambiguous language of the All Assault or Battery Exclusion excludes coverage, even assuming MMS breached its duty to E.B. in negligently failing to report the sex trafficking occurring on its premises.  *Id.* Therefore, claims arising from such conduct are excluded from coverage.[22]

---

[22] In its complaint, Nautilus raises several other exclusions that it contends bar coverage. Because the assault and battery exclusion comprehensively covers all conduct alleged, we do not address the applicability of these other exclusions.

**Public Policy**

Under Pennsylvania law, it is against public policy to insure against claims for intentional torts or criminal acts.  *See, e.g.*, *Gene's Restaurant, Inc. v. Nationwide Ins. Co.,* 548 A.2d 246, 247 (Pa. 1988) (no duty owed where underlying complaint alleged assault and battery); *Germantown Ins. Co. v. Martin*, 595 A.2d 1172, 1175 (Pa. Super. 1991) (citing *Wilson v. Maryland Cas. Co*., 105 A.2d 304 (Pa. 1954); and *Esmond v. Liscio*, 224 A.2d 793 (Pa. Super. 1966) (no duty based on language of the insurance contract and public policy)); *see also, e.g.*, *Travelers Prop. Cas. Co. of Am. v. Mericle*, 486 F. App'x 233, 238 (3d Cir. 2012) (noting Pennsylvania's public policy against shifting responsibility to insurers for intentional acts).  As Nautilus points out, financially benefitting from human sex trafficking is criminalized under the Pennsylvania Human Trafficking Law, 18 Pa. Cons. Stat. § 3001, *et seq.*  Thus, public policy precludes coverage.  *Cf. Minnesota Fire & Cas. Co. v. Greenfield*, 855 A.2d 854, 865–68 (Pa. 2004).

**Conclusion**

Because the claims against MMS arise from negligent conduct contributing to an assault and battery, they are excluded from coverage under the Nautilus policy. Consequently, Nautilus has no duty to defend and indemnify MMS in the underlying suit.  Thus, we shall grant Nautilus's motion for judgment on the pleadings and declare that it need not defend and indemnify MMS.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **NAUTILUS INSURANCE COMPANY** | : | **CIVIL ACTION** |
| | : | |
| **v.** | : | |
| | : | |
| **MOTEL MANAGEMENT SERVICES, INC.,** | : | |
| **d/b/a Neshaminy Inn and E.B.** | : | **NO. 17-4491** |

## ORDER

**NOW,** this 24th day of May, 2018, consistent with the Memorandum Opinion issued this date, **IT IS ORDERED** that **JUDGMENT** is entered in favor of the plaintiff, Nautilus Insurance Company, and against the defendant, Motel Management Services, Inc.

**IT IS DECLARED** that the plaintiff, Nautilus Insurance Company, has no duty to defend or indemnify the defendant, Motel Management Services, Inc., in the action pending in the Common Pleas Court of Philadelphia County, Pennsylvania, captioned *E.B. v. Motel 6 Operating L.P. et al.*, Case No. 170500487.

/s/ Timothy J. Savage
TIMOTHY J. SAVAGE, J.

# EXHIBIT "B"

Case: 2:20-cv-00289-PBT Document: 27-1 Filed 06/05/20 Page 15 of 133
Case: 2:20-cv-00289-PBT Document: 27-1 Filed 06/05/20 Page 15 of 133

Case: 18-2290    Document: 003113297350    Page: 1    Date Filed: 07/22/2019

**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

Nos. 18-2290 & 18-3436

_____

NAUTILUS INSURANCE COMPANY

v.

MOTEL MANAGEMENT SERVICES, INC.,
d/b/a Neshaminy Inn; E. B.


MOTEL MANAGEMENT SERVICES, INC.,
Appellant

_____

Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 2-17-cv-04491)
District Judge: Hon. Timothy J. Savage

_____

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
May 24, 2019

_____

Before: McKEE, SHWARTZ, and FUENTES, Circuit Judges.

(Filed: July 22, 2019)

_____

OPINION*

_____

SHWARTZ, Circuit Judge.

_____

      * This disposition is not an opinion of the full Court and, pursuant to I.O.P. 5.7, does not constitute binding precedent.

At issue in this appeal is whether Nautilus Insurance Company has a duty to defend and indemnify Motel Management Services ("MMS") in a lawsuit minor E.B. brought in state court against MMS alleging that MMS failed to intervene or report that traffickers enticed E.B. to engage in commercial sex acts at MMS's motel.  Because the Court properly determined that the assault and battery exclusion in MMS's insurance policy applies, and therefore Nautilus does not have a duty to defend MMS in E.B.'s suit, we will affirm the orders granting Nautilus's motion for judgment on the pleadings and denying MMS's motion for relief from that judgment.

I

E.B., a minor female, sued MMS and other motel operators in Pennsylvania state court ("the underlying action"), alleging that (1) she "was recruited, enticed, solicited, harbored and/or transported to engage in commercial sex acts" in violation of Pennsylvania's Human Trafficking Law, 18 Pa. Cons. Stat. § 3011, including at a motel owned and operated by MMS, App. 31 ¶ 27;[1] (2) she was "held at gun point and threatened to engage in sexual acts with multiple traffickers," App. 33 ¶ 37, "visibly treated in an aggressive manner" by those engaging in commercial sex acts with her, App. 33 ¶ 41, and suffered physical harm; (3) MMS facilitated her exploitation by knowingly renting rooms at its motel to the traffickers; (4) MMS failed to intervene or to report the traffickers' illegal conduct; and (5) MMS financially profited from E.B.'s

---

[1] Appendix citations are to the appendix filed in docket number 18-2290.

2

exploitation. E.B. sought compensatory and punitive damages for negligence per se,[2] negligence, negligent infliction of emotional distress, and intentional infliction of emotional distress.

Nautilus brought this declaratory judgment action asserting that an exclusion in MMS's insurance policy with Nautilus for claims arising out of an assault or battery, including a failure to prevent or suppress an assault or battery, exempted it from the duties to defend and indemnify MMS in E.B.'s suit.

The District Court granted Nautilus's motion for judgment on the pleadings, declaring that Nautilus had no duty to defend and indemnify MMS because E.B.'s claims in the underlying action arose from facts alleging negligent failure to prevent an assault or battery and therefore were not covered by the insurance policy. Nautilus Ins. Co. v. Motel Mgmt. Servs., Inc., 320 F. Supp. 3d 636 (E.D. Pa. 2018). MMS thereafter filed a Rule 60(b) motion contending that E.B.'s deposition testimony in the underlying action conflicted with the allegations in the Complaint. The Court denied the motion. MMS appeals both orders.

---

[2] This claim alleges that MMS's conduct violated Pennsylvania's Human Trafficking Law.

II[3]

When interpreting an insurance contract under Pennsylvania law, which all parties

agree governs this dispute, we must ascertain and give effect to the parties' intent as

manifested in the terms of the policy.  Donegal Mut. Ins. Co. v. Baumhammers, 938 A.2d

286, 290 (Pa. 2007).  Where the language is clear and unambiguous, we must follow it.

Minn. Fire & Cas. Co. v. Greenfield, 855 A.2d 854, 861 (Pa. 2004).  However, where the

contract language is ambiguous, we construe that provision in favor of the insured.  Id.

An insurer has a duty to defend the insured in any suit in which the complaint

alleges potentially covered injuries.  Baumhammers, 938 A.2d at 290-91.  If an insurer

relies on a policy exclusion as an affirmative defense to deny coverage, it bears the

burden of proving that the exclusion applies.  Madison Constr. Co. v. Harleysville Mut.

Ins. Co., 735 A.2d 100, 106 (Pa. 1999).  In determining whether Nautilus has a duty to

defend MMS, "we may not look . . . beyond the four corners of [E.B.'s] complaint and

---

[3] The District Court had jurisdiction under 28 U.S.C. § 1332.  We have jurisdiction under 28 U.S.C. § 1291.  "We review a denial of a motion for judgment on the pleadings de novo."  Zimmerman v. Corbett, 873 F.3d 414, 417 (3d Cir. 2017).  In considering a motion for judgment on the pleadings, we must accept as true all facts presented in the complaint and answer, and draw all reasonable inferences in favor of the non-moving party—here, MMS.  See Bedoya v. Am. Eagle Express Inc., 914 F.3d 812, 816 n.2 (3d Cir. 2019).  "Judgment will not be granted unless the movant clearly establishes there are no material issues of fact, and he is entitled to judgment as a matter of law."  Id. (internal quotation marks and citations omitted).  While MMS implores us to look beyond the pleadings, we may not.
   "We review the denial of Rule 60(b) relief for an abuse of discretion."  Coltec Indus., Inc. v. Hobgood, 280 F.3d 262, 269 (3d Cir. 2002).  Under Rule 60(b), "the court may relieve a party or its legal representative from a final judgment, order, or proceeding" in light of "newly discovered evidence that, with reasonable diligence, could not have been discovered" before the judgment was entered.  Fed. R. Civ. P. 60(b)(2).

how it matches up with the actual terms of the . . . Policy." Lupu v. Loan City, LLC, 903
F.3d 382, 392 (3d Cir. 2018) (citing Kvaerner Metals Div. of Kvaerner U.S., Inc. v.
Commercial Union Ins. Co., 908 A.2d 888, 896 (Pa. 2006)).  Pennsylvania law does not
recognize any exceptions to this "four corners" rule, even if the insurer knows or should
know that the allegations in the complaint are untrue.  Id. at 390-92.

   Here, Nautilus asserts that its policy excludes from coverage claims "arising out
of" an assault or battery.  The exclusion provides that Nautilus "will have no duty to
defend or indemnify any insured in any action or proceeding alleging damages arising out
of any assault or battery," regardless of culpability, intent, or relationship of the
perpetrator of the assault or battery to the insured, or whether the damages occurred at
premises owned or operated by the insured. App. 111.  The assault and battery exclusion
specifically omits from the policy's coverage "[a]ll causes of action arising out of any
assault or battery" or "any act, error, or omission relating to such an assault or battery."
App. 111.

   The term "arising out of" is interpreted in terms of "but for" causation.  See
Madison Constr., 735 A.2d at 109-10 (citing McCabe v. Old Republic Ins. Co., 228 A.2d
901, 903 (Pa. 1967)).  Therefore, if an assault or battery was a "but for" cause of the
plaintiff's injuries, the assault and battery exclusion will apply to allegations that the
insured's negligence contributed to the injuries.  See Acceptance Ins. Co. v. Seybert, 757
A.2d 380, 383 (Pa. Super. Ct. 2000) (finding no duty to defend where insured bar's
negligence in serving alcohol to visibly intoxicated men who subsequently attacked
plaintiff in underlying action was merely a contributing factor and not a direct cause of

plaintiff's injuries).  The insurer only owes a duty to defend if the complaint alleges the insured's negligence directly led to the injuries.  See QBE Ins. Corp. v. M & S Landis Corp., 915 A.2d 1222, 1229 (Pa. Super. Ct. 2007) (finding duty to defend nightclub that negligently trained staff who restrained a patron because the negligence of the nightclub and its staff directly caused plaintiff's injuries).

All alleged injuries in this complaint are the result of exploitation and assault by traffickers and customers with whom E.B. engaged in commercial sex acts.[4] Accordingly, the assault and battery were the "but for" causes of the injuries E.B. claims. E.B. nowhere alleges that MMS's negligence directly caused her injuries or caused an independent harm.  Rather, she alleges that MMS failed to intervene or report the traffickers' activities and MMS they financially benefitted from her abuse.  The assault and battery exclusion, however, encompasses claims arising both from an assault or

---

[4] MMS argues that the assault and battery exclusion should not apply because involuntary servitude under Pennsylvania's Human Trafficking Law does not "necessarily include[] assault."  Appellant's Br. at 15.  However, our focus is on the four corners of E.B.'s complaint, in which she alleges that she suffered injury including physical harm and mental anguish as a victim of human trafficking, including by being "visibly treated in an aggressive manner" and "held at gun point" and forced to engage in commercial sex acts.  App. 33.  These allegations reflect assaults and batteries, and it is irrelevant for the purposes of deciding insurance coverage whether they also satisfy the elements of Pennsylvania's Human Trafficking Law.  See Mut. Ben. Ins. Co. v. Haver, 725 A.2d 743, 745 (Pa. 1999) ("[T]he particular cause of action that a complainant pleads is not determinative of whether coverage has been triggered. Instead it is necessary to look at the factual allegations contained in the complaint.").

battery and from a failure to prevent or suppress an assault or battery. This language unambiguously bars coverage for E.B.'s claims.[5]

Accordingly, the District Court did not err by holding that Nautilus has no duty to defend or indemnify MMS.[6]

## III

For the foregoing reasons, we will affirm the District Court's orders.

---

[5] Because the insurance policy excludes coverage, we need not address whether public policy would also preclude insurance coverage for the criminal conduct and intentional torts alleged in E.B.'s complaint.

[6] Because Pennsylvania adheres to a strict "four corners" rule, Lupu, 903 F.3d at 390-92 (citing Kvaerner, 908 A.2d at 896), the District Court did not abuse its discretion by denying MMS's Rule 60(b)(2) motion and declining to consider E.B.'s deposition in the underlying action to determine whether Nautilus is obligated to defend MMS.

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

Nos. 18-2290 & 18-3436

_____

NAUTILUS INSURANCE COMPANY

v.

MOTEL MANAGEMENT SERVICES, INC.,
d/b/a Neshaminy Inn; E. B.


MOTEL MANAGEMENT SERVICES, INC.,
Appellant

_____

Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 2-17-cv-04491)
District Judge: Hon. Timothy J. Savage

_____

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
May 24, 2019

_____

Before: McKEE, SHWARTZ, and FUENTES, Circuit Judges.


_____

JUDGMENT

_____

This cause came to be considered on the record from the United States District

Court for the Eastern District of Pennsylvania and was submitted pursuant to Third

Circuit L.A.R. 34.1(a) on May 24, 2019.

On consideration whereof, it is now hereby ORDERED and ADJUDGED by this

Case 2:20-cv-00289-PBT Document 27-1 Filed 06/05/20 Page 23 of 133
Case: 2:20-cv-00289-PBT Document 27-1 Filed 06/05/20 Page 23 of 133

Case: 18-2290    Document: 003113334906    Page: 2    Date Filed: 08/30/2019

Court that the orders of the District Court entered on May 24, 2018 and October 24,

2018, are hereby AFFIRMED.  Costs taxed against Appellants.  All of the above in

accordance with the Opinion of this Court.


ATTEST:


s/ Patricia S. Dodszuweit
Clerk

Dated: July 22, 2019


Certified as a true copy and issued in lieu
of a formal mandate on    08/30/2019

Teste: *Patricia A. Dodszuweit*
**Clerk, U.S. Court of Appeals for the Third Circuit**

# EXHIBIT "C"

Court of Common Pleas of Philadelphia County
Trial Division

# Civil Cover Sheet

| | For Prothonotary Use Only (Docket Number) |
|---|---|
| | **MAY 2017** |
| | E-Filing Number: 1705005335 |
| | **000487** |

| PLAINTIFF'S NAME E. B. | DEFENDANT'S NAME MOTEL 6, INC. |
|---|---|
| PLAINTIFF'S ADDRESS C/O KLINE AND SPECTER, P.C. 1525 LOCUST STREET PHILADELPHIA PA 19102 | DEFENDANT'S ADDRESS 43 INDUSTRIAL HIGHWAY ESSINGTON PA 19029 |
| PLAINTIFF'S NAME | DEFENDANT'S NAME MOTEL 6 L.P. |
| PLAINTIFF'S ADDRESS | DEFENDANT'S ADDRESS 43 INDUSTRIAL HIGHWAY ESSINGTON PA 19029 |
| PLAINTIFF'S NAME | DEFENDANT'S NAME G6 HOSPITALITY LLC |
| PLAINTIFF'S ADDRESS | DEFENDANT'S ADDRESS 2711 CENTERVILLE ROAD SUITE 400 WILMINGTON DE 19808 |

| TOTAL NUMBER OF PLAINTIFFS 1 | TOTAL NUMBER OF DEFENDANTS 8 | COMMENCEMENT OF ACTION |
|---|---|---|
| | | [X] Complaint  [ ] Petition Action  [ ] Notice of Appeal |
| | | [ ] Writ of Summons  [ ] Transfer From Other Jurisdictions |

| AMOUNT IN CONTROVERSY | COURT PROGRAMS | | | |
|---|---|---|---|---|
| [ ] $50,000.00 or less | [ ] Arbitration | [ ] Mass Tort | [ ] Commerce | [ ] Settlement |
| [X] More than $50,000.00 | [X] Jury | [ ] Savings Action | [ ] Minor Court Appeal | [ ] Minors |
| | [ ] Non-Jury | [ ] Petition | [ ] Statutory Appeals | [ ] W/D/Survival |
| | [ ] Other: | | | |

CASE TYPE AND CODE
2O - PERSONAL INJURY - OTHER

STATUTORY BASIS FOR CAUSE OF ACTION

| RELATED PENDING CASES (LIST BY CASE CAPTION AND DOCKET NUMBER) | **FILED PRO PROTHY** MAY **02** 2017 **M. BRYANT** | IS CASE SUBJECT TO COORDINATION ORDER? YES    NO |
|---|---|---|

## TO THE PROTHONOTARY:

Kindly enter my appearance on behalf of Plaintiff/Petitioner/Appellant: E. B.

Papers may be served at the address set forth below.

| NAME OF PLAINTIFF'S/PETITIONER'S/APPELLANT'S ATTORNEY NADEEM A. BEZAR | ADDRESS KLINE & SPECTER, P.C. 1525 LOCUST STREET PHILADELPHIA PA 19102 |
|---|---|
| PHONE NUMBER (215)772-0522 | FAX NUMBER (215)772-1005 | |
| SUPREME COURT IDENTIFICATION NO. 63577 | E-MAIL ADDRESS Nadeem.Bezar@KlineSpecter.com |
| SIGNATURE OF FILING ATTORNEY OR PARTY NADEEM BEZAR | DATE SUBMITTED Tuesday, May 02, 2017, 12:56 pm |

FINAL COPY (Approved by the Prothonotary Clerk)

## COMPLETE LIST OF DEFENDANTS:

1. MOTEL 6, INC.
   43 INDUSTRIAL HIGHWAY
   ESSINGTON PA 19029
2. MOTEL 6 L.P.
   43 INDUSTRIAL HIGHWAY
   ESSINGTON PA 19029
3. G6 HOSPITALITY LLC
   2711 CENTERVILLE ROAD SUITE 400
   WILMINGTON DE 19808
4. G6 HOSPITALITY PROPERTY LLC
   2711 CENTERVILLE ROAD SUITE 400
   WILMINGTON DE 19808
5. NESHAMINY INN
   ALIAS: NESHAMINY MOTOR INN
   2345 OLD LINCOLN HIGHWAY
   TREVOSE PA 19053
6. MOTEL MANAGEMENT SERVICES INC.
   2345 OLD LINCOLN HIGHWAY
   TREVOSE PA 19053
7. MOTEL MANAGEMENT SERVICES
   1401 BYBERRY ROAD
   CORNWELL HEIGHTS PA 19020
8. MOTEL 6 OPERATING L.P.
   43 INDUSTRIAL HIGHWAY
   ESSINGTON PA 19029

KLINE & SPECTER, P.C.
BY:   THOMAS R. KLINE, ESQUIRE/28895
      NADEEM A. BEZAR, ESQUIRE/63577
      EMILY B. MARKS, ESQUIRE/204405
1525 Locust Street
Philadelphia, Pennsylvania 19102
(215) 772-1000

Attorneys for Plaintiff

Filed and Attested by the
Office of Judicial Records
02 MAY 2017 12:56 pm
M. BRYANT

| | | |
|---|---|---|
| E.B. | : | PHILADELPHIA COUNTY |
| c/o Kline & Specter, P.C. | : | COURT OF COMMON PLEAS |
| 1525 Locust Street | : | |
| Philadelphia, PA  19102 | : | CIVIL TRIAL DIVISION |
| | : | MAY TERM, 2017 |
| Plaintiff, | : | NO.: |
| V. | : | |
| | : | JURY TRIAL DEMANDED |
| MOTEL 6 OPERATING L.P. | : | |
| 43 Industrial Highway | : | |
| Essington, PA  19029 | : | |
| and | : | |
| | : | |
| MOTEL 6, INC. | : | |
| 43 Industrial Highway | : | |
| Essington, PA 19029 | : | |
| | : | |
| and | : | |
| | : | |
| MOTEL 6 L.P. | : | |
| 43 Industrial Highway | : | |
| Essington, PA 19029 | : | |
| | : | |
| and | : | |
| | : | |
| G6 HOSPITALITY LLC | : | |
| 2711 Centerville Road | : | |
| Suite 400 | : | |
| Wilmington, DE 19808 | : | |
| | : | |
| and | : | |
| | : | |
| G6 HOSPITALITY PROPERTY LLC | : | |
| 2711 Centerville Road | : | |
| Suite 400 | : | |
| Wilmington, DE 19808 | : | |
| | : | |
| and | : | |

Case ID: 1705004

| | |
|---|---|
| NESHAMINY INN | : |
| *a/k/a NESHAMINY MOTOR INN* | : |
| 2345 Old Lincoln Highway | : |
| Trevose, PA  19053 | : |
| | : |
| and | : |
| | : |
| MOTEL MANAGEMENT SERVICES INC. | : |
| 2345 Old Lincoln Highway | : |
| Trevose, PA  19053 | : |
| | : |
| and | : |
| | : |
| MOTEL MANAGEMENT SERVICES | : |
| 1401 Byberry Road | : |
| Cornwell Heights, PA | : |
| | : |
| Defendants | : |

---

## NOTICE TO DEFEND

<table>
<tr><td align="center">NOTICE</td><td align="center">ADVISO</td></tr>
<tr><td>

You have been sued in court.  If you wish to defend against the claims set forth in the following pages, you must take action within twenty (20) days after this complaint and notice are served, by entering a written appearance personally or by attorney and filing in writing with the court your defenses or objections to the claims set forth against you.  You are warned that if you fail to do so the case may proceed without you and a judgment may be entered against you by the court without further notice for any money claimed in the complaint or for any other claim or relief requested by the plaintiff.  You may lose money or property or other rights important to you.

YOU SHOULD TAKE THIS PAPER TO YOUR LAWYER AT ONCE.  IF YOU DO NOT HAVE A LAWYER (OR CANNOT AFFORD ONE), GO TO OR TELEPHONE THE OFFICE SET FORTH BELOW TO FIND OUT WHERE YOU CAN GET LEGAL HELP.

THIS OFFICE CAN PROVIDE YOU WITH INFORMATION ABOUT HIRING A LAWYER.

IF YOU CANNOT AFFORD TO HIRE A LAWYER, THIS OFFICE MAY BE ABLE TO PROVIDE YOU WITH INFORMATION ABOUT AGENCIES THAT MAY OFFER LEGAL SERVICES TO ELIGIBLE PERSONS AT A REDUCED FEE OR NO FEE.

LAWYERS REFERENCE SERVICE
One Reading Center
Philadelphia, PA  19107
(215) 238-6333, TTY(215) 451-6197

</td><td>

Le han demandado en corte.  Si usted quiere defenderse contra las demandas nombradas en las paginas siguientes, tiene viente (20) dias a partir de recibir esta demanda y notificacion para entablar personalmente o por un abogado una comparecencia escrita y tambien para entablar con la corte en forma escrita sus defensas y objeciones a las demandas contra usted.  Sea advisado que si usted no se defiende, el caso puede continuar sin usted y la corte puede incorporar un juicio contra usted sin previo aviso para conseguir el dinero demandado en el pleito o para conseguir cualquier otra demanda o alivio solicitados por el demandante.  Usted puede perder dinero o propiedad u otros derechos importantes para usted.

USTED DEBE LLEVAR ESTE DOCUMENTO A SU ABOGADO INMEDIATAMENTE. SI USTED NO TIENE ABOGADO (O NO TIENE DINERO SUFICIENTE PARA PAGAR A UN ABOGADO), VAYA EN PERSONA O LLAME POR TELEFONO LA OFICINA NOMBRADA ABAJO PARA AVERIGUAR DONDE SE PUEDE CONSEGUIR ASSISTENCIA LEGAL.  ESTA OFICINA PUEDE PROPORCIONARLE LA INFORMACION SOBRE CONTRATAR A UN ABOGADO.

SI USTED NO TIENE DINERO SUFICIENTE PARA PAGAR A UN ABOGADO, ESTA OFICINA PUEDE PROPORCIONARLE INFORMACION SOBRE AGENCIAS QUE OFRECEN SERVICIOS LEGALES A PERSONAS QUE CUMPLEN LOS REQUISITOS PARA UN HONORARIO REDUCIDO O NINGUN HONORARIO.

SERVICIO de REFERENCIA LEGAL
Uno Reading Centro
Filadelfia, PA  19107
Telefono:  (215) 238-6333, TTY(215) 451-6197

</td></tr>
</table>

Case ID: 1705004

**KLINE & SPECTER, P.C.**                    Attorneys for Plaintiff
BY:   THOMAS R. KLINE, ESQUIRE/28895
        NADEEM A. BEZAR, ESQUIRE/63577
        EMILY B. MARKS, ESQUIRE/204405
1525 Locust Street
Philadelphia, Pennsylvania 19102
(215) 772-1000

| | | |
|---|---|---|
| E.B. | : | PHILADELPHIA COUNTY |
| c/o Kline & Specter, P.C. | : | COURT OF COMMON PLEAS |
| 1525 Locust Street | : | |
| Philadelphia, PA 19102 | : | CIVIL TRIAL DIVISION |
| | : | MAY TERM, 2017 |
| Plaintiff, | : | NO.: |
| | : | |
| V. | : | |
| | : | JURY TRIAL DEMANDED |
| MOTEL 6 OPERATING L.P. | : | |
| 43 Industrial Highway | : | |
| Essington, PA 19029 | : | |
| | : | |
| and | : | |
| | : | |
| MOTEL 6, INC. | : | |
| 43 Industrial Highway | : | |
| Essington, PA 19029 | : | |
| | : | |
| and | : | |
| | : | |
| MOTEL 6 L.P. | : | |
| 43 Industrial Highway | : | |
| Essington, PA 19029 | : | |
| | : | |
| and | : | |
| | : | |
| G6 HOSPITALITY LLC | : | |
| 2711 Centerville Road | : | |
| Suite 400 | : | |
| Wilmington, DE 19808 | : | |
| | : | |
| and | : | |
| | : | |
| G6 HOSPITALITY PROPERTY LLC | : | |
| 2711 Centerville Road | : | |
| Suite 400 | : | |
| Wilmington, DE 19808 | : | |
| | : | |

Case ID: 1705004

and                                              :
                                                 :
NESHAMINY INN                                    :
*a/k/a NESHAMINY MOTOR INN*                      :
2345 Old Lincoln Highway                         :
Trevose, PA  19053                               :
                                                 :
       and                                       :
                                                 :
MOTEL MANAGEMENT SERVICES INC.                   :
2345 Old Lincoln Highway                         :
Trevose, PA  19053                               :
                                                 :
       and                                       :
                                                 :
MOTEL MANAGEMENT SERVICES                        :
1401 Byberry Road                                :
Cornwell Heights, PA                             :
                                                 :
                        Defendants               :

---

## COMPLAINT

### PRELIMINARY STATEMENT

1.      Human sex trafficking is a form of modern day slavery that exists throughout the United States and globally.  It is a form of evil in the abuse and exploitation of the most innocent and vulnerable.

2.      Since 2007, over 17,000 incidents of sex trafficking in the United States have been reported to the National Human Trafficking Resources Center.  Over 1200 cases of sex trafficking has been reported for the first six months of 2016 with the vast majority of victims being women and a disproportionate number being minors.

3.      In 2014 the Commonwealth of Pennsylvania extensively revised its human trafficking law to compensate the victims and ensure that anyone or any entity that directly or indirectly benefits financially from such acts is fully deterred through both criminal and civil prosecution.

Case ID: 1705004

**THE PARTIES**

4.  Plaintiff, E.B. was born on ████████ and is one of the thousands of victims of human trafficking in the United States.

5.  During 2014, Plaintiff was exploited and was permitted to be exploited by traffickers of commercial sex acts and those who financially benefitted from her exploitation.

6.  Plaintiff resides in Philadelphia County, Pennsylvania.

7.  Plaintiff can be contacted through her counsel, Thomas R. Kline, Esquire, Nadeem A. Bezar, Esquire and Emily B. Marks, Esquire of Kline & Specter, P.C., 1525 Locust Street, Philadelphia, Pennsylvania 19102.

8   Plaintiff's name and address are not contained in this Complaint so as to protect the privacy and identity of Plaintiff E.B. who incurred injuries and damages starting when she was seventeen (17) years old.

9   Defendant Motel 6 Operating L.P. is a corporation duly organized and existing under the laws of Texas.  At all material times hereto, Defendant Motel 6 Operating L.P. owned, operated or managed a motel located at 43 Industrial Highway, Essington, PA 19029 (hereinafter referred to as the "Motel 6 Philadelphia Airport").

10.  Defendant Motel 6, Inc. is a corporation duly organized and existing under the laws of Texas.  At all material times hereto, Defendant Motel 6, Inc. owned, operated or managed the Motel 6 Philadelphia Airport.

11.  Defendant Motel 6 L.P. is a corporation duly organized and existing under the laws of Texas.  At all material times hereto, Defendant Motel 6 L.P. owned, operated or managed the Motel 6 Philadelphia Airport.

Case ID: 17050048

12.     Defendant G6 Hospitality LLC is a corporation duly organized and existing under the laws of the State of Delaware.  Upon information and belief, Defendant G6 Hospitality LLC is a hotel management company created in 2012.  At all material times hereto, Defendant G6 Hospitality LLC owned, operated and/or managed the Motel 6 Philadelphia Airport.

13.     Defendant G6 Hospitality Property LLC is a corporation duly organized and existing under the laws of the State of Delaware.  At all material times hereto, Defendant G6 Hospitality Property LLC owned, operated and/or managed the Motel 6 Philadelphia Airport.

14.     Defendant Neshaminy Inn, aka Neshaminy Motor Inn (hereinafter referred to as "Neshaminy Inn") is a corporation duly organized and existing under the laws of the Commonwealth of Pennsylvania.  At all material times hereto, Defendant Neshaminy Inn, owned, operated or managed a motel located at 2345 Old Lincoln Highway, Trevose, Pennsylvania  19053 (hereinafter referred to as the "Neshaminy Inn Motel").

15.     Defendant Motel Management Services Inc. (hereinafter referred to as "Motel Management Services") is a corporation duly organized and existing under the laws of the Commonwealth of Pennsylvania.  At all material times hereto, Defendant Motel Management Services owned, operated and/or managed the Neshaminy Inn Motel.

16.     Defendant Motel Management Services is a corporation duly organized and existing under the laws of the Commonwealth of Pennsylvania.  At all material times hereto, Defendant Motel Management Services owned, operated and/or managed Neshaminy Inn.

17.     Venue is proper in this case because Pennsylvania's human trafficking law, 18 Pa. C.S.A. § 3051, permits victims of human trafficking and the sex trade to bring suit in the county in which the victim resides.  Plaintiff E.B. resides in Philadelphia County.  Therefore venue is proper in the Philadelphia County Court of Common Pleas.

Case ID: 1705004

18.    Venue is also proper because all of the Defendants operate/manage and regularly conduct business in Philadelphia County.

19.    Defendants Motel 6 Operating L.P., Motel 6, Inc., Motel 6 L.P., G6 Hospitality LLC, and G6 Hospitality Property LLC, operate/manage and regularly conduct business in Philadelphia County through the operation of motels with locations at 43 Industrial Highway, Essington, PA 19029 and 11580 Roosevelt Boulevard, Philadelphia, PA 19116.

20.    Defendants Neshaminy Inn, Motel Management Services and Motel Management Services, Inc., operate/manage and regularly conduct business in Philadelphia County through the Neshaminy Inn Motel location. The Neshaminy Inn Motel affirmatively lists one of its service areas as Philadelphia County on its website.

21.    At all times material hereto, Defendants Motel 6 Operating L.P., Motel 6, Inc., Motel 6 L.P., G6 Hospitality LLC, G6 Hospitality Property LLC, Neshaminy Inn, Motel Management Services, and Motel Management Services, Inc., acted individually and/or by and through their actual or apparent agents, servants and employees, including but not limited to front desk staff, back room staff, housekeepers, custodians, maintenance workers, food preparation workers, doorman, concierges and security guards and are therefore liable for the acts and/or omissions of their agents, servants and/or employees under theories of agency, master-servant, respondent superior and/or right of control.

22.    At all material times hereto, Defendants Motel 6 Operating L.P., Motel 6, Inc., Motel 6 L.P., G6 Hospitality LLC, G6 Hospitality Property LLC, Neshaminy Inn, Motel Management Services, and Motel Management Services, Inc., individually and/or by their actual or apparent agents, servants and employees were uniquely positioned to observe the manifestations, indications and evincement of human sex trafficking within the Neshaminy Inn

Case ID: 1705004

and Motel 6 Philadelphia Airport where they worked.

23.    At all material times hereto, Defendants Motel 6 Operating L.P., Motel 6, Inc.,

Motel 6 L.P., G6 Hospitality LLC, G6 Hospitality Property LLC, Neshaminy Inn, Motel

Management Services, and Motel Management Services, Inc., individually and/or by their actual

or apparent agents, servants and employees failed to take any steps to prevent human sex

trafficking at the Neshaminy Inn and Motel 6 Philadelphia Airport, and instead permitted

heinous and unspeakable acts to occur and profited from them.

24.    At all material times hereto, Defendants Motel 6 Operating L.P., Motel 6, Inc.,

Motel 6 L.P., G6 Hospitality LLC, G6 Hospitality Property LLC, Neshaminy Inn, Motel

Management Services, and Motel Management Services, Inc., individually and/or by their actual

or apparent agents, servants and employees failed to report to authorities that human sex

trafficking was occurring at the Neshaminy Inn Motel and Motel 6 Philadelphia Airport.

25.    At all material times hereto, Defendants Motel 6 Operating L.P., Motel 6, Inc.,

Motel 6 L.P., G6 Hospitality LLC, G6 Hospitality Property LLC, Neshaminy Inn, Motel

Management Services, and Motel Management Services, Inc., received money and financially

profited from the commercial sex acts occurring on the premises of the Neshaminy Inn and

Motel 6 Philadelphia Airport.

**OPERATIVE FACTS**

26.    Under Pennsylvania's Human Trafficking Law, 18 Pa. C.S. § 3001, et. seq., it is a

felony to recruit, entice, solicit, harbor or transport a minor which results in the minor being

subjected to sexual servitude.

27.    Commencing in 2014, Plaintiff was recruited, enticed, solicited, harbored and/or

transported to engage in commercial sex acts at the Neshaminy Inn Motel and Motel 6

Case ID: 1705004

Philadelphia Airport on a regular, consistent and/or repeated basis.

28.     Defendants Motel 6 Operating L.P., Motel 6, Inc., Motel 6 L.P., G6 Hospitality

LLC, G6 Hospitality Property LLC, Neshaminy Inn, Motel Management Services, and Motel

Management Services, Inc., individually and/or by and through their actual or apparent agents,

servants and employees, regularly rented or otherwise provided, for their own financial benefit,

rooms and services at the Neshaminy Inn and Motel 6 Philadelphia Airport to traffickers engaged

in commercial sex acts with Plaintiff.

29.     Defendants Motel 6 Operating L.P., Motel 6, Inc., Motel 6 L.P., G6 Hospitality

LLC, G6 Hospitality Property LLC, Neshaminy Inn, Motel Management Services, and Motel

Management Services, Inc., individually and/or by and through their actual or apparent agents,

servants and employees, knew or had constructive knowledge that they were renting or otherwise

providing rooms and services to individuals trafficking Plaintiff for commercial sex acts.

30.     Defendants, Motel 6 Operating L.P., Motel 6, Inc., Motel 6 L.P., G6 Hospitality

LLC, G6 Hospitality Property LLC, Neshaminy Inn, Motel Management Services, and Motel

Management Services, Inc., individually and/or by and through their actual or apparent agents,

servants and employees knew or had constructive knowledge that Plaintiff was being sexually

exploited.

## INVESTIGATIVE FACTS

31.     Plaintiff's traffickers put up internet advertisements for the purpose of prostituting

Plaintiff.

32.     The advertisements would include a fake name for Plaintiff and a phone number

to call.

Case ID: 17050048

33.     During the phone call, sex for cash was negotiated and the caller "John" would be informed that Plaintiff was at the Neshaminy Inn or Motel 6.

34.     On multiple different occasions, Plaintiff was taken to the Motel 6 Philadelphia Airport by traffickers.  The trafficker(s) presented identification to the front desk.  Plaintiff-although visible, was not asked to produce identification.  The room was paid for in cash with money earned by Plaintiff for performing sexual acts.

35.     The female front desk employees at Motel 6 Philadelphia Airport consistently directed Plaintiff to the same room at the back of the motel.

36.     Plaintiff was approached consistently by an employee of Defendant Motel 6, who recognized that she was in danger and failed to intervene.

37.     On multiple occasions, Plaintiff was taken to Neshaminy Inn, by traffickers.  The room was paid for in cash and front desk employee(s) at Neshaminy Inn Motel directed Plaintiff to the same room at the back of the motel on multiple occasions.  Plaintiff was held at gun point and threatened to engage in sexual acts with multiple traffickers.

38.     The motel rooms where Plaintiff engaged in commercial sex acts or contained used condoms and condom wrappers and the room frequently smelled of marijuana.

39.     Plaintiff engaged in numerous commercial sex acts  or "dates" per day.

40.     Plaintiff was accompanied by older men while on the premises of Motel 6 Philadelphia Airport and Neshaminy Inn.

41.     Plaintiff was visibly treated in an aggressive manner by traffickers engaged in commercial sex acts with Plaintiff.

42.     Plaintiff exhibited fear and anxiety while on the premises of Motel 6 and Neshaminy Inn.

Case ID: 1705004

43.     Plaintiff's traffickers paid cash for the motel rooms where Plaintiff engaged in commercial sex acts.

44.     Plaintiff's traffickers consistently displayed "Do Not Disturb" signs on the door to the motel where Plaintiff engaged in commercial sex acts and consistently refused housekeeping services.

45.     Men and other minors frequently entered and left the rooms where Plaintiff engaged in commercial sex acts.

46.     Men stood in the hallways outside of rooms where Plaintiff was engaged in commercial sex acts.

47.     Despite knowledge, constructive knowledge and general awareness of the signs of human trafficking, Defendants, Motel 6 Operating L.P., Motel 6, Inc., Motel 6 L.P., G6 Hospitality LLC, G6 Hospitality Property LLC, Neshaminy Inn, Motel Management Services, and Motel Management Services, Inc., individually and/or by and through their actual or apparent agents, servants and employees failed to report to authorities, intervene, disrupt or otherwise stop the human sex trafficking of the Plaintiff.

48.     Defendants, Motel 6 Operating L.P., Motel 6, Inc., Motel 6 L.P., G6 Hospitality LLC, G6 Hospitality Property LLC, Neshaminy Inn, Motel Management Services, and Motel Management Services, Inc., financially profited from the continuation of the commercial sex acts committed on the premises of the motels through both the renting of rooms and the providing of services.

49.     By harboring Plaintiff for commercial sex acts, Defendants, Motel 6 Operating L.P., Motel 6, Inc., Motel 6 L.P., G6 Hospitality LLC, G6 Hospitality Property LLC, Neshaminy Inn, Motel Management Services, and Motel Management Services, Inc., individually and/or by

Case ID: 1705004

and through their actual or apparent agents, servants and employees caused Plaintiff to suffer physical harm, mental anguish, humiliation, exploitation, degradation, mental distress, loss of the enjoyments of life, and loss of life's pleasures both in the past and in the future.

50.     By harboring Plaintiff for commercial sex acts, Defendants, Motel 6 Operating L.P., Motel 6, Inc., Motel 6 L.P., G6 Hospitality LLC, G6 Hospitality Property LLC, Neshaminy Inn, Motel Management Services, and Motel Management Services, Inc., individually and/or by and through their actual or apparent agents, servants and employees financially profited from the human sex trafficking and continued to profit by not reporting, intervening, disrupting or otherwise stopping the practice.

51.     By harboring Plaintiff for commercial sex acts, Defendants, Motel 6 Operating L.P., Motel 6, Inc., Motel 6 L.P., G6 Hospitality LLC, G6 Hospitality Property LLC, Neshaminy Inn, Motel Management Services, and Motel Management Services, Inc., individually and/or by and through their actual or apparent agents, servants and employees, acted outrageously and in reckless disregard for the health and welfare of the Plaintiff, warranting the imposition of punitive damages.

### COUNT I - NEGLIGENCE: VIOLATION OF PENNSYLVANIA HUMAN TRAFFICKING LAW, 18 Pa. C.S.A. § 3001, et. seq.

### E.B. v. DEFENDANTS, MOTEL 6 OPERATING L.P., MOTEL 6, INC., MOTEL 6 L.P., G6 HOSPITALITY LLC, G6 HOSPITALITY PROPERTY LLC, NESHAMINY INN, MOTEL MANAGEMENT SERVICES, AND MOTEL MANAGEMENT SERVICES, INC.

52.     The averments of Paragraphs 1 through 51 are incorporated herein by reference.

53.     Pennsylvania's Human Trafficking Law 18 PA C.S.A. §3001 et seq. makes it illegal to recruit, entice, harbor, or transport any minor for the purpose of causing or permitting the minor to be engaged in any commercial sex act.

Case ID: 1705004

54.     Defendants, Motel 6 Operating L.P., Motel 6, Inc., Motel 6 L.P., G6 Hospitality

LLC, G6 Hospitality Property LLC, Neshaminy Inn, Motel Management Services, and Motel

Management Services, Inc., individually and/or by and through their actual or apparent agents,

servants and employees, did recruit and/or entice and/or harbor and/or transport the Plaintiff,

permitting her to be exploited and engage in the commercial sex acts.

55.     By harboring the Plaintiff for commercial sex acts, Defendants, Motel 6

Operating L.P., Motel 6, Inc., Motel 6 L.P., G6 Hospitality LLC, G6 Hospitality Property LLC,

Neshaminy Inn, Motel Management Services, and Motel Management Services, Inc.,

individually and/or by and through their actual or apparent agents, servants and employees,

caused Plaintiff to suffer physical harm, a sexually transmitted disease, mental anguish,

humiliation, exploitation, degradation, mental distress, loss of the enjoyments of life and loss of

life's pleasures both in the past and in the future.

56.     By harboring the Plaintiff for commercial sex acts, Defendants, Motel 6

Operating L.P., Motel 6, Inc., Motel 6 L.P., G6 Hospitality LLC, G6 Hospitality Property LLC,

Neshaminy Inn, Motel Management Services, and Motel Management Services, Inc.,

individually and/or by and through their actual or apparent agents, servants and employees,

financially profited from the human trafficking and continued profit by not reporting,

intervening, disrupting or otherwise stopping the practice.

57.     By harboring the Plaintiff for commercial sex acts, Defendants, Motel 6

Operating L.P., Motel 6, Inc., Motel 6 L.P., G6 Hospitality LLC, G6 Hospitality Property LLC,

Neshaminy Inn, Motel Management Services, and Motel Management Services, Inc.,

Case ID: 1705004

individually and/or by and through their actual or apparent agents, servants and employees acted

outrageously and in reckless disregard for the health and welfare of the Plaintiff, warranting the

imposition of punitive damages.

     **WHEREFORE,** Plaintiff E.B. demands judgment in her favor and against all Defendants

and demands compensatory and punitive damages in excess of Fifty Thousand ($50,000.00)

Dollars exclusive of prejudgment interest, attorney fees, costs and damages for pre-judgment

delay.

<u>**COUNT II – NEGLIGENCE**</u>

<u>**E.B. v. DEFENDANTS, MOTEL 6 OPERATING L.P., MOTEL 6, INC., MOTEL 6 L.P.,
G6 HOSPITALITY LLC, G6 HOSPITALITY PROPERTY LLC, NESHAMINY INN,
MOTEL MANAGEMENT SERVICES, AND MOTEL MANAGEMENT SERVICES,
INC.**</u>

    58.    The averments of paragraphs 1 through 57 are incorporated herein by reference.

    59.    By harboring Plaintiff, individually and/or by and through their actual or apparent

agents, servants and employees, the Defendants breached the standard of good and prudent care

by not reporting, intervening, disrupting or otherwise stopping the practice of traffickers

committing commercial sex acts with a minor.

    60.    As a result of Defendants' negligence, Plaintiff was caused to suffer physical

harm, a sexually transmitted disease, mental anguish, humiliation, exploitation, degradations,

mental distress, loss of enjoyment of life and loss of life's pleasures both in the past and in the

future.

    61.    As a result of Defendants' negligence, Defendants financially profited from the

human sex trafficking and continued to profit by not reporting, intervening, disrupting or

otherwise stopping the practice.

62.     Defendants acted outrageously and in reckless disregard for the health and welfare of the Plaintiff, warranting the imposition of punitive damages.

**WHEREFORE,** Minor-Plaintiff E.B. demands judgment in her favor and against all Defendants and demands compensatory and punitive damages in excess of Fifty Thousand ($50,000.00) Dollars exclusive of prejudgment interest, attorney fees, costs and damages for pre-judgment delay.

## COUNT III – NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

### E.B. v. DEFENDANTS, MOTEL 6 OPERATING L.P., MOTEL 6, INC., MOTEL 6 L.P., G6 HOSPITALITY LLC, G6 HOSPITALITY PROPERTY LLC, NESHAMINY INN, MOTEL MANAGEMENT SERVICES, AND MOTEL MANAGEMENT SERVICES, INC.

63.     The averments of paragraphs 1 through 62 are incorporated herein by reference.

64.     Defendants negligently committed the acts averred in this Complaint against the Plaintiff and thereby caused Plaintiff to suffer fear, depression, humiliation, mental anguish and severe physical and emotional distress, directly and proximately causing harm and damages to the Plaintiff.

65.     Defendants acted outrageously and in reckless disregard for the health and welfare of the Plaintiff warranting the imposition of punitive damages.

**WHEREFORE,** Minor-Plaintiff E.B. demands judgment in her favor and against all Defendants and demands compensatory and punitive damages in excess of Fifty Thousand ($50,000.00) Dollars exclusive of prejudgment interest, attorney fees, costs and damages for pre-judgment delay.

Case ID: 1705004

## COUNT IV – INTENTIONAL INFLCITION OF EMOTIONAL DISTRESS

### E.B. v. DEFENDANTS, MOTEL 6 OPERATING L.P., MOTEL 6, INC., MOTEL 6 L.P., G6 HOSPITALITY LLC, G6 HOSPITALITY PROPERTY LLC, NESHAMINY INN, MOTEL MANAGEMENT SERVICES, AND MOTEL MANAGEMENT SERVICES, INC.

66.     The averments of paragraphs 1 through 65 are incorporated herein by reference.

67.     By harboring Plaintiff to perform commercial sex acts, Defendants intentionally caused Plaintiff to suffer fear, depression, humiliation, mental anguish and sever physical and emotional distress and proximately causing harm and damage to the Plaintiff.

68.     Defendants acted outrageously and in reckless disregard for the health and welfare of the Plaintiff warranting the imposition of punitive damages.

**WHEREFORE,** Plaintiff E.B. demands judgment in her favor and against all Defendants and demands compensatory and punitive damages in excess of Fifty Thousand ($50,000.00) Dollars exclusive of prejudgment interest, attorney fees, costs and damages for pre-judgment delay.

**KLINE & SPECTER, P.C.**
*Attorneys for Plaintiff*

BY: _____
THOMAS R. KLINE, ESQUIRE

BY: _____
NADEEM A. BEZAR, ESQUIRE
EMILY B. MARKS, ESQUIRE

DATED: 5/2/17

Case ID: 1705004

## VERIFICATION

I, E.B., hereby state that I am the Plaintiff in the within matter, and as such verify that the statements made in the foregoing Complaint are true and correct to the best of my knowledge, information and belief.

The undersigned understands that the statements herein are made subject to the penalties of 18 Pa. C.S. 4904 relating to unsworn falsification to authorities.

E.B.

Case ID: 1705004

**EXHIBIT "D"**

**KLINE & SPECTER, P.C.**
BY: THOMAS R. KLINE, ESQUIRE/28895
NADEEM A. BEZAR, ESQUIRE/63577
EMILY B. MARKS, ESQUIRE/204405
KYLE B. NOCHO, ESQUIRE/319270
1525 Locust Street
Philadelphia, Pennsylvania 19102
(215) 772-1000

Attorneys for Plaintiff 
Attested by the Office of Judicial Records
01 OCT 2019 05:?? pm
M. RUSSO

| | | |
|---|---|---|
| E.B. | : | PHILADELPHIA COUNTY |
| c/o Kline & Specter, P.C. | : | COURT OF COMMON PLEAS |
| 1525 Locust Street | : | |
| Philadelphia, PA 19102 | : | CIVIL TRIAL DIVISION |
| Plaintiff, | : | MAY TERM, 2017 |
| | : | NO.: 00487 |
| v. | : | |
| | : | |
| MOTEL 6 OPERATING L.P. | : | JURY TRIAL DEMANDED |
| 43 Industrial Highway | : | |
| Essington, PA 19029 | : | |
| | : | |
| and | : | |
| | : | |
| MOTEL 6, INC. | : | |
| 43 Industrial Highway | : | |
| Essington, PA 19029 | : | |
| | : | |
| and | : | |
| | : | |
| MOTEL 6, L.P. | : | |
| 43 Industrial Highway | : | |
| Essington, PA 19029 | : | |
| | : | |
| and | : | |
| | : | |
| G6 HOSPITALITY LLC | : | |
| 2711 Centerville Road | : | |
| Suite 400 | : | |
| Wilmington, DE 19808 | : | |
| | : | |
| and | : | |
| | : | |
| G6 HOSPITALITY PROPERTY LLC | : | |
| 2711 Centerville Road | : | |
| Suite 400 | : | |
| Wilmington, DE 19808 | : | |

Case ID: 17050048

```
                                              :
         and                                  :
                                              :
NESHAMINY INN                                 :
a/k/a NESHAMINY MOTOR INN                     :
2345 Old Lincoln Highway                      :
Trevose, PA 19053                             :
                                              :
         and                                  :
                                              :
MOTEL MANAGEMENT SERVICES, INC.               :
2345 Old Lincoln Highway                      :
Trevose, PA 19053                             :
                                              :
         and                                  :
                                              :
MOTEL MANAGEMENT SERVICES                     :
1401 Byberry Road                             :
Cornwell Heights, PA                          :
                                              :
         and                                  :
                                              :
THE MARY ETZRODT REAL ESTATE TRUST            :
2345 Old Lincoln Highway                      :
Trevose, PA 19053                             :
                                              :
         and                                  :
                                              :
NI45, LLC                                     :
2345 Old Lincoln Highway                      :
Trevose, PA 19053                             :
                        Defendants            :
                                              :
         v.                                   :
                                              :
DAIQUAN DAVIS                                 :
Register No. 72304-066                        :
USP Terre Haute                               :
U.S. Penitentiary                             :
P.O. Box 33                                   :
Terre Haute, IN 47808                         :
                    Additional Defendant      :
                                              :
```

**NOTICE TO DEFEND**

Case ID: 17050048

| NOTICE | ADVISO |
|---|---|
| You have been sued in court. If you wish to defend against the claims set forth in the following pages, you must take action within twenty (20) days after this complaint and notice are served, by entering a written appearance personally or by attorney and filing in writing with the court your defenses or objections to the claims set forth against you. You are warned that if you fail to do so the case may proceed without you and a judgment may be entered against you by the court without further notice for any money claimed in the complaint or for any other claim or relief requested by the plaintiff. You may lose money or property or other rights important to you. | Le han demandado en corte. Si usted quiere defenderse contra las demandas nombradas en las paginas siguientes, tiene viente (20) dias a partir de recibir esta demanda y notificacion para entablar personalmente o por un abogado una comparecencia escrita y tambien para entablar con la corte en forma escrita sus defensas y objeciones a las demandas contra usted. Sea advisado que si usted no se defiende, el caso puede continuar sin usted y la corte puede incorporar un juicio contra usted sin previo aviso para conseguir el dinero demandado en el pleito o para conseguir cualquier otra demanda o alivio solicitados por el demandante. Usted puede perder dinero o propiedad u otros derechos importantes para usted. |

YOU SHOULD TAKE THIS PAPER TO YOUR LAWYER AT ONCE. IF YOU DO NOT HAVE A LAWYER (OR CANNOT AFFORD ONE), GO TO OR TELEPHONE THE OFFICE SET FORTH BELOW TO FIND OUT WHERE YOU CAN GET LEGAL HELP.

USTED DEBE LLEVAR ESTE DOCUMENTO A SU ABOGADO INMEDIATAMENTE. SI USTED NO TIENE ABOGADO (O NO TIENE DINERO SUFICIENTE PARA PAGAR A UN ABOGADO), VAYA EN PERSONA O LLAME POR TELEFONO LA OFICINA NOMBRADA ABAJO PARA AVERIGUAR DONDE SE PUEDE CONSEGUIR ASSISTENCIA LEGAL. ESTA OFICINA PUEDE PROPORCIONARLE LA INFORMACION SOBRE CONTRATAR A UN ABOGADO.SI USTED NO TIENE DINERO SUFICIENTE PARA PAGAR A UN ABOGADO, ESTA OFICINA PUEDE PROPORCIONARLE INFORMACION SOBRE AGENCIAS QUE OFRECEN SERVICIOS LEGALES A PERSONAS QUE CUMPLEN LOS REQUISITOS PARA UN HONORARIO REDUCIDO O NINGUN HONORARIO.

THIS OFFICE CAN PROVIDE YOU WITH INFORMATION ABOUT HIRING A LAWYER.IF YOU CANNOT AFFORD TO HIRE A LAWYER, THIS OFFICE MAY BE ABLE TO PROVIDE YOU WITH INFORMATION ABOUT AGENCIES THAT MAY OFFER LEGAL SERVICES TO ELIGIBLE PERSONS AT A REDUCED FEE OR NO FEE.
LAWYERS REFERENCE SERVICE
One Reading Center
Philadelphia, PA 19107
(215) 238-6333, TTY(215) 451-6197

SERVICIO de REFERENCIA LEGAL
Uno Reading Centro
Filadelfia, PA 19107
Telefo: (215) 238-6333, TTY(215) 451-6197

Case ID: 17050048

**KLINE & SPECTER, P.C.**
BY:    THOMAS R. KLINE, ESQUIRE/28895
       NADEEM A. BEZAR, ESQUIRE/63577
       EMILY B. MARKS, ESQUIRE/204405
       KYLE B. NOCHO, ESQUIRE/319270
1525 Locust Street
Philadelphia, Pennsylvania 19102
(215) 772-1000

*Attorneys for Plaintiff E.B.*

| | | |
|---|---|---|
| E.B.<br>c/o Kline & Specter, P.C.<br>1525 Locust Street<br>Philadelphia, PA  19102 | : | PHILADELPHIA COUNTY<br>COURT OF COMMON PLEAS |
| Plaintiff, | :<br>: | CIVIL TRIAL DIVISION<br>MAY TERM, 2017 |
| v. | :<br>: | NO.: 00487 |
| MOTEL 6 OPERATING L.P.<br>43 Industrial Highway<br>Essington, PA 19029 | :<br>:<br>: | JURY TRIAL DEMANDED |
| and | :<br>: | |
| MOTEL 6, INC.<br>43 Industrial Highway<br>Essington, PA 19029 | :<br>:<br>: | |
| and | :<br>: | |
| MOTEL 6, L.P.<br>43 Industrial Highway<br>Essington, PA 19029 | :<br>:<br>: | |
| and | :<br>: | |
| G6 HOSPITALITY LLC<br>2711 Centerville Road<br>Suite 400<br>Wilmington, DE 19808 | :<br>:<br>: | |
| and | :<br>: | |
| G6 HOSPITALITY PROPERTY LLC<br>2711 Centerville Road<br>Suite 400<br>Wilmington, DE 19808 | :<br>:<br>: | |

Case ID: 17050048

and                                       :

                                            :

NESHAMINY INN                          :

a/k/a NESHAMINY MOTOR INN     :

2345 Old Lincoln Highway            :

Trevose, PA 19053                    :

                                            :

    and                                   :

                                            :

MOTEL MANAGEMENT SERVICES, INC.   :

2345 Old Lincoln Highway            :

Trevose, PA 19053                    :

                                            :

    and                                   :

                                            :

MOTEL MANAGEMENT SERVICES      :

1401 Byberry Road                    :

Cornwell Heights, PA                :

                                            :

    and                                   :

                                            :

THE MARY ETZRODT REAL ESTATE TRUST :

2345 Old Lincoln Highway            :

Trevose, PA 19053                    :

                                            :

    and                                   :

                                            :

NI45, LLC                                 :

2345 Old Lincoln Highway            :

Trevose, PA 19053                    :

                    Defendants     :

                                            :

    v.                                      :

                                            :

DAIQUAN DAVIS                         :

Register No. 72304-066              :

USP Terre Haute                     :

U.S. Penitentiary                     :

P.O. Box 33                              :

Terre Haute, IN 47808               :

                 Additional Defendant :

                                            :

---

## PLAINTIFF'S FIRST AMENDED COMPLAINT

## PRELIMINARY STATEMENT

1.      Human sex trafficking is a form of modern day slavery that exists throughout the United States and globally.  It is a form of evil in the abuse and exploitation of the most innocent and vulnerable.

2.      Since 2007 over 17,000 incidents of sex trafficking in the United States have been reported to the National Human Trafficking Resources Center.  Over 1,200 cases of sex trafficking has been reported in the first six months of 2016, with the vast majority of victims being women and a disproportionate number being minors.

3.      In 2014, the Commonwealth of Pennsylvania extensively revised its human trafficking law to compensate the victims and ensure that anyone or any entity that directly or indirectly benefits financially from such acts is fully deterred through both criminal and civil prosecution.

## THE PARTIES

4.      Plaintiff, E.B., was born on ▮▮▮▮▮▮▮▮, and is one of the thousands of victims of human trafficking in the United States.

5.      During 2014, Plaintiff was exploited and was permitted to be exploited by a trafficker of commercial sex acts and those who financially benefitted from her exploitation.

6.      Plaintiff resides in Philadelphia County, Pennsylvania.

7.      Plaintiff can be contacted through her counsel, Thomas R. Kline, Esquire, Nadeem A. Bezar, Esquire, Emily B. Marks, Esquire, and Kyle B. Nocho of Kline & Specter, P.C., 1525 Locust Street, Philadelphia, Pennsylvania 19102.

8.      Plaintiff's name and address are not contained in this Complaint so as to protect the privacy and identity of Plaintiff E.B. who incurred injuries and damages starting when she

Case ID: 17050048

was seventeen (17) years old. See also Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts § 7.0.

9.      Defendant Motel 6 Operating L.P. is a corporation duly organized and existing under the laws of Texas. At all material times hereto, Defendant Motel 6 Operating L.P. owned, operated and/or managed a motel located at 43 Industrial Highway, Essington, PA 19020 (hereinafter referred to as "Motel 6 Philadelphia Airport").

10.      Defendant Motel 6, Inc. is a corporation duly organized and existing under the laws of Texas. At all material times hereto, Defendant Motel 6, Inc. owned, operated and/or managed the Motel 6 Philadelphia Airport.

11.      Defendant Motel 6 L.P. is a corporation duly organized and existing under the laws of Texas. At all material times hereto, Defendant Motel 6 L.P. owned, operated and/or managed the Motel 6 Philadelphia Airport.

12.      Defendant G6 Hospitality LLC is a corporation duly organized and existing under the laws of Delaware. Upon information and belief, Defendant G6 Hospitality LLC is a hotel management company created in 2012. At all material times hereto, Defendant G6 Hospitality LLC owned, operated and/or managed the Motel 6 Philadelphia Airport.

13.      Defendant G6 Hospitality Property LLC is a corporation duly organized and existing under the laws of Delaware. At all material times hereto, Defendant G6 Hospitality Property LLC owned, operated and/or managed the Motel 6 Philadelphia Airport.

14.      Defendant Neshaminy Inn a/k/a Neshaminy Motor Inn (hereinafter referred to as "Neshaminy Inn") is a corporation duly organized and existing under the laws of the Commonwealth of Pennsylvania. At all material times hereto, Defendant Neshaminy Inn operated and/or managed a motel located at 2345 Old Lincoln Highway, Trevose, Pennsylvania

19053 (hereinafter referred to as the "Neshaminy Inn Motel").

15. Defendant Motel Management Services Inc. (hereinafter referred to as "Motel Management Services") is a corporation duly organized and existing under the laws of the Commonwealth of Pennsylvania. At all material times hereto, Defendant Motel Management Services operated and/or managed the Neshaminy Inn Motel.

16. Defendant Motel Management Services is a corporation duly organized and existing under the laws of the Commonwealth of Pennsylvania. At all material times hereto, Defendant Motel Management Services owned, operated and/or managed the Neshaminy Inn Motel.

17. Defendant The Mary Etzrodt Real Estate Trust is a trust duly organized and existing under the laws of the Commonwealth of Pennsylvania. At all material times hereto, The Mary Etzrodt Real Estate Trust owned the Neshaminy Inn Motel.

18. Defendant NI45 LLC is a limited liability company duly organized and existing under the laws of the Commonwealth of Pennsylvania. At all material times hereto, NI45 LLC owned the Neshaminy Inn Motel.

19. Venue is proper in this case because Pennsylvania's human trafficking law, 18 Pa. C.S.A. § 3051, permits victims of human trafficking and the sex trade to bring suit in the county in which the victim resides. Plaintiff E.B. resides in Philadelphia County. Therefore, venue is proper in the Philadelphia County Court of Common Pleas.

20. Venue is also proper because all of the Defendants own, operate, and/or manage motels that regularly conduct business in Philadelphia County.

21. Defendants Motel 6 Operating L.P., Motel 6, Inc., Motel 6 L.P., G6 Hospitality LLC, G6 Hospitality Property LLC, operate/manage and regularly conduct business in

Philadelphia County through the operation of motels with locations at 43 Industrial Highway, Essington, PA 19020 and 11580 Roosevelt Boulevard, Philadelphia, PA 19116.

22.     Defendants Neshaminy Inn, Motel Management Services, Motel Management Services, Inc., The Mary Etzrodt Real Estate Trust, and NI45, LLC own, operate, manage and/or regularly conduct business in Philadelphia County through the Neshaminy Inn Motel location. The Neshaminy Inn Motel affirmatively listed one if its service areas as Philadelphia County on its website.

23.     At all times material hereto, Defendants Motel 6 Operating L.P., Motel 6, Inc., Motel 6 L.P., G6 Hospitality LLC, G6 Hospitality Property LLC, Neshaminy Inn, Motel Management Services, Motel Management Services, Inc., The Mary Etzrodt Real Estate Trust, and NI45, LLC acted individually and/or by and through their actual or apparent agents, servants and employees, including but not limited to front desk staff, back room staff, housekeepers, custodians, maintenance workers, food preparation workers, doorman, concierges and security guards and are therefore liable for the acts and/or omissions of their agents, servants and/or employees under theories of agency, master-servant, respondent superior and/or right of control.

24.     At all material times hereto, Defendants Motel 6 Operating L.P., Motel 6, Inc., Motel 6 L.P., G6 Hospitality LLC, G6 Hospitality Property LLC, Neshaminy Inn, Motel Management Services, Motel Management Services, Inc., The Mary Etzrodt Real Estate Trust, and NI45, LLC individually and/or by their actual or apparent agents, servants and employees were uniquely positioned to observe the manifestations, indications and evincement of human sex trafficking within the Neshaminy Inn Motel and Motel 6 Philadelphia Airport where they worked.

25.     At all material times hereto, Defendants Motel 6 Operating L.P., Motel 6, Inc.,

Motel 6 L.P., G6 Hospitality LLC, G6 Hospitality Property LLC, Neshaminy Inn, Motel Management Services, Motel Management Services, Inc., The Mary Etzrodt Real Estate Trust, and NI45, LLC, individually and/or by their actual or apparent agents, servants and employees, failed to take any steps to prevent human sex trafficking at the Neshaminy Inn Motel and Motel 6 Philadelphia Airport, and instead permitted heinous and unspeakable acts to occur.

26.    At all material times hereto, Defendants Motel 6 Operating L.P., Motel 6, Inc., Motel 6 L.P., G6 Hospitality LLC, G6 Hospitality Property LLC, Neshaminy Inn, Motel Management Services, Motel Management Services, Inc., The Mary Etzrodt Real Estate Trust, and NI45, LLC, individually and/or by their actual or apparent agents, servants and employees, failed to report to authorities that human sex trafficking was occurring at the Neshaminy Inn Motel and the Motel 6 Philadelphia Airport.

27.    At all material times hereto, Defendants Motel 6 Operating L.P., Motel 6, Inc., Motel 6 L.P., G6 Hospitality LLC, G6 Hospitality Property LLC, Neshaminy Inn, Motel Management Services, Motel Management Services, Inc., The Mary Etzrodt Real Estate Trust, and NI45, LLC rented rooms to sex traffickers benefiting from the commercial sex acts occurring on the premises of the Neshaminy Inn Motel and the Motel 6 Philadelphia Airport.

**OPERATIVE FACTS**

28.    Under Pennsylvania's Human Trafficking Law, 18 Pa. C.S. § 3011, et. seq. it is a felony to recruit, entice, solicit, harbor, or transport a minor which results in the minor being subjected to sexual servitude.

29.    Hotels and motels are common venues for sex trafficking, due to ease of access for buyers and traffickers, ability to pay in cash and maintain financial anonymity, and the avoidance of building and maintenance fees.  Hotels and motels are a convenient place for

customers to purchase sex to avoid detection.

30.     Under Pennsylvania's Human Trafficking Law, 18 Pa. C.S. § 3051, a person or entity can be civilly liable for knowingly marketing or providing its goods or services to a sex trafficker.

31.     Commencing in 2014, Defendants Motel 6 Operating L.P., Motel 6, Inc., Motel 6 L.P., G6 Hospitality LLC, G6 Hospitality Property LLC, Neshaminy Inn, Motel Management Services, Motel Management Services, Inc., The Mary Etzrodt Real Estate Trust, and NI45, LLC, individually and/or by and through their actual or apparent agents, servants and employees, regularly rented or otherwise provided rooms and services at the Neshaminy Inn Motel and the Motel 6 Philadelphia Airport to the trafficker engaged in commercial sex acts with Plaintiff when she was a minor.

32.     Defendants Motel 6 Operating L.P., Motel 6, Inc., Motel 6 L.P., G6 Hospitality LLC, G6 Hospitality Property LLC, Neshaminy Inn, Motel Management Services, Motel Management Services, Inc., The Mary Etzrodt Real Estate Trust, and NI45, LLC, individually and/or by and through their actual or apparent agents, servants, and employees, knew or had constructive knowledge that they were renting or otherwise providing rooms and services to the individual trafficking Plaintiff for commercial sex acts.

33.     Defendants Motel 6 Operating L.P., Motel 6, Inc., Motel 6 L.P., G6 Hospitality LLC, G6 Hospitality Property LLC, Neshaminy Inn, Motel Management Services, Motel Management Services, Inc., The Mary Etzrodt Real Estate Trust, and NI45, LLC, individually and/or by and through their actual or apparent agents, servants and employees, knew or had constructive knowledge that Plaintiff was being sexually exploited.

**INVESTIGATIVE FACTS**

34. Plaintiff's trafficker put up internet advertisements for the purpose of sex trafficking Plaintiff as a minor.

35. The advertisements included a fake name for Plaintiff and a phone number to call.

36. During the phone call, sex for cash was negotiated and the caller "John" would be informed that Plaintiff was at the Neshaminy Inn Motel or the Motel 6 Philadelphia Airport.

37. On multiple different occasions, Plaintiff was taken to the Motel 6 Philadelphia Airport by the trafficker. The trafficker presented identification to the front desk. Plaintiff, although visible, was not asked to produce identification. The room was paid for in cash with money earned by Plaintiff for performing sexual acts.

38. On multiple occasions, Plaintiff was taken to the Neshaminy Inn Motel by the trafficker. The room was paid for in cash, while Plaintiff was in eyesight of the front desk employee(s) at the Neshaminy Inn.

39. The motel rooms where Plaintiff engaged in commercial sex acts contained used condoms and condom wrappers and the room frequently smelled of marijuana.

40. Plaintiff engaged in numerous commercial sex acts and/or "dates" per day.

41. Plaintiff was accompanied by older men while on the premises of the Motel 6 Philadelphia Airport and Neshaminy Inn Motel.

42. Plaintiff exhibited fear and anxiety while on the premises of the Motel 6 Philadelphia Airport and Neshaminy Inn Motel.

43. Plaintiff's trafficker paid cash for the motel rooms where Plaintiff engaged in commercial sex acts.

44. Plaintiff's trafficker consistently displayed "Do Not Disturb" signs on the door to

the motel where Plaintiff engaged in commercial sex acts and consistently refused housekeeping services.

45.     Men and other minors frequently entered and left the rooms where Plaintiff engaged in commercial sex acts.

46.     Men stood in the hallways outside of rooms where Plaintiff was engaged in commercial sex acts.

47.     Despite knowledge, constructive knowledge and general awareness of the signs of human sex trafficking, Defendants Motel 6 Operating L.P., Motel 6, Inc., Motel 6 L.P., G6 Hospitality LLC, G6 Hospitality Property LLC, Neshaminy Inn, Motel Management Services, Motel Management Services, Inc., The Mary Etzrodt Real Estate Trust, and NI45, LLC, individually and/or by and through their actual or apparent agents, servants and employees failed to report to authorities, intervene, disrupt, or otherwise stop the human sex trafficking of the Plaintiff.

48.     Defendants Motel 6 Operating L.P., Motel 6, Inc., Motel 6 L.P., G6 Hospitality LLC, G6 Hospitality Property LLC, Neshaminy Inn, Motel Management Services, Motel Management Services, Inc., The Mary Etzrodt Real Estate Trust, and NI45, LLC rented rooms to the sex trafficker exploiting Plaintiff at the Neshaminy Inn Motel and Motel 6 Philadelphia Airport.

49.     Plaintiff, as a guest at the Neshaminy Inn Motel and Motel 6 Philadelphia Airport, was a business invitee of Defendants Motel 6 Operating L.P., Motel 6, Inc., Motel 6 L.P., G6 Hospitality LLC, G6 Hospitality Property LLC, Neshaminy Inn, Motel Management Services, Motel Management Services, Inc., The Mary Etzrodt Real Estate Trust, and NI45, LLC.

50.     Defendants Motel 6 Operating L.P., Motel 6, Inc., Motel 6 L.P., G6 Hospitality

LLC, G6 Hospitality Property LLC, Neshaminy Inn, Motel Management Services, Motel Management Services, Inc., The Mary Etzrodt Real Estate Trust, and NI45, LLC, individually and/or by and through their actual or apparent agents, servants, and employees, owed a duty to Plaintiff, as motel guest, to exercise reasonable care to protect against criminal conduct.

51.     Defendants Motel 6 Operating L.P., Motel 6, Inc., Motel 6 L.P., G6 Hospitality LLC, G6 Hospitality Property LLC, Neshaminy Inn, Motel Management Services, Motel Management Services, Inc., The Mary Etzrodt Real Estate Trust, and NI45, LLC, individually and/or by and through their actual or apparent agents, servants and employees, knew or had constructive knowledge that they were renting or otherwise providing rooms and services to persons who were trafficking Plaintiff.

52.     Defendants Motel 6 Operating L.P., Motel 6, Inc., Motel 6 L.P., G6 Hospitality LLC, G6 Hospitality Property LLC, Neshaminy Inn, Motel Management Services, Motel Management Services, Inc., The Mary Etzrodt Real Estate Trust, and NI45, LLC, individually and/or by and through their actual or apparent agents, servants and employees knew or had constructive knowledge that Plaintiff was being sexually exploited.

53.     Despite knowledge, constructive knowledge and general awareness of the signs of human trafficking, Defendants Motel 6 Operating L.P., Motel 6, Inc., Motel 6 L.P., G6 Hospitality LLC, G6 Hospitality Property LLC, Neshaminy Inn, Motel Management Services, Motel Management Services, Inc., The Mary Etzrodt Real Estate Trust, and NI45, LLC, individually and/or by and through their actual or apparent agents, servants and employees failed to protect Plaintiff, as a business invitee, from criminal conduct.

54.     By renting rooms to the individual sex trafficking Plaintiff, Defendants Motel 6 Operating L.P., Motel 6, Inc., Motel 6 L.P., G6 Hospitality LLC, G6 Hospitality Property LLC,

Neshaminy Inn, Motel Management Services, Motel Management Services, Inc., The Mary Etzrodt Real Estate Trust, and NI45, LLC, individually and/or by and through their actual or apparent agents, servants and employees caused Plaintiff to suffer physical harm, mental anguish, humiliation, exploitation, degradation, mental distress, loss of the enjoyments of life, and loss of life's pleasures both in the past and in the future.

55. By renting rooms to the individual sex trafficking Plaintiff, Defendants Motel 6 Operating L.P., Motel 6, Inc., Motel 6 L.P., G6 Hospitality LLC, G6 Hospitality Property LLC, Neshaminy Inn, Motel Management Services, Motel Management Services, Inc., The Mary Etzrodt Real Estate Trust, and NI45, LLC, individually and/or by and through their actual or apparent agents, servants and employees failed to report, intervene, disrupt or otherwise stop sex trafficking occurring on the premises of the Neshaminy Inn Motel and the Motel 6 Philadelphia Airport.

56. By renting rooms to the individual sex trafficking Plaintiff for commercial sex acts, Defendants Motel 6 Operating L.P., Motel 6, Inc., Motel 6 L.P., G6 Hospitality LLC, G6 Hospitality Property LLC, Neshaminy Inn, Motel Management Services, Motel Management Services, Inc., The Mary Etzrodt Real Estate Trust, and NI45, LLC, individually and/or by and through their actual or apparent agents, servants and employees acted outrageously and in reckless disregard for the health and welfare of the Plaintiff warranting the imposition of punitive damages.

## COUNT I – CIVIL LIABILITY UNDER THE PENNSYLVANIA HUMAN TRAFFICKING LAW, 18 Pa. C.S.A. § 3051

## E.B. v. DEFENDANTS MOTEL 6 OPERATING L.P., MOTEL 6, INC., MOTEL 6 L.P., G6 HOSPITALITY LLC, G6 HOSPITALITY PROPERTY LLC

57. The averments of Paragraphs 1 through 56 are incorporated herein by reference.

Case ID: 170500048

58.     Pennsylvania's Human Trafficking Law 18 PA C.S.A. § 3051 creates civil liability for people or entities who knowingly market or provide their goods and services to sex traffickers.

59.     Defendants Motel 6 Operating L.P., Motel 6, Inc., Motel 6 L.P., G6 Hospitality LLC, G6 Hospitality Property LLC, individually and/or by and through their actual or apparent agents, servants and employees, did know they were renting rooms to the individual sex trafficking Plaintiff as minor, which resulted in her being sex trafficked and sexually exploited.

60.     By renting rooms to the individual sex trafficking Plaintiff for commercial sex acts, Defendants Motel 6 Operating L.P., Motel 6, Inc., Motel 6 L.P., G6 Hospitality LLC, G6 Hospitality Property LLC, individually and/or by and through their actual or apparent agents, servants and employees, caused Plaintiff to suffer physical harm, mental anguish, humiliation, exploitation, degradation, mental distress, loss of the enjoyments of life and loss of life's pleasures both in the past and in the future.

61.     By renting rooms to individuals sex trafficking the Plaintiff, Defendants Motel 6 Operating L.P., Motel 6, Inc., Motel 6 L.P., G6 Hospitality LLC, G6 Hospitality Property LLC, individually and/or by and through their actual or apparent agents, servants and employees, failed to report, intervene, disrupt or otherwise stop sex trafficking on the premises of the Motel 6 Philadelphia Airport.

62.     By renting rooms to the individual sex trafficking Plaintiff, Defendants Motel 6 Operating L.P., Motel 6, Inc., Motel 6 L.P., G6 Hospitality LLC, G6 Hospitality Property LLC, individually and/or by and through their actual or apparent agents, servants and employees acted outrageously and in reckless disregard for the health and welfare of the Plaintiff warranting the imposition of punitive damages.

WHEREFORE, Plaintiff E.B. demands judgment in her favor and against Defendants Motel 6 Operating L.P., Motel 6, Inc., Motel 6 L.P., G6 Hospitality LLC, G6 Hospitality Property LLC and demands compensatory and punitive damages in excess of Fifty Thousand ($50,000.00) Dollars exclusive of prejudgment interest, costs and damages for pre-judgment delay.

## COUNT II – CIVIL LIABILITY UNDER THE PENNSYLVANIA HUMAN TRAFFICKING LAW, 18 Pa. C.S.A. § 3051

### E.B. V. DEFENDANTS NESHAMINY INN, MOTEL MANAGEMENT SERVICES, MOTEL MANAGEMENT SERVICES, INC., THE MARY ETZRODT REAL ESTATE TRUST, AND NI45, LLC

63.     The averments of Paragraphs 1 through 62 are incorporated herein by reference.

64.     Pennsylvania's Human Trafficking Law 18 PA C.S.A. § 3051 creates civil liability for people or entities who knowingly market or provide their goods and services to sex traffickers.

65.     Defendants Neshaminy Inn, Motel Management Services, Motel Management Services, Inc., The Mary Etzrodt Real Estate Trust, and NI45, LLC, individually and/or by and through their actual or apparent agents, servants and employees, did know that they were renting rooms to the individual sex trafficking Plaintiff as minor, which resulted in her being sex trafficked and sexually exploited.

66.     By renting rooms to the individual sex trafficking Plaintiff for commercial sex acts, Defendants Neshaminy Inn, Motel Management Services, Motel Management Services, Inc., The Mary Etzrodt Real Estate Trust, and NI45, LLC, individually and/or by and through their actual or apparent agents, servants and employees, caused Plaintiff to suffer physical harm, mental anguish, humiliation, exploitation, degradation, mental distress, loss of the enjoyments of life and loss of life's pleasures both in the past and in the future.

67.     By renting rooms to individuals sex trafficking the Plaintiff, Defendants Neshaminy Inn, Motel Management Services, Motel Management Services, Inc., The Mary Etzrodt Real Estate Trust, and NI45, LLC, individually and/or by and through their actual or apparent agents, servants and employees, failed to report, intervene, disrupt or otherwise stop sex trafficking on the premises of the Neshaminy Inn Motel.

68.     By renting rooms to the individual sex trafficking Plaintiff, Defendants Neshaminy Inn, Motel Management Services, Motel Management Services, Inc., The Mary Etzrodt Real Estate Trust, and NI45, LLC, individually and/or by and through their actual or apparent agents, servants and employees acted outrageously and in reckless disregard for the health and welfare of the Plaintiff warranting the imposition of punitive damages.

**WHEREFORE**, Plaintiff E.B. demands judgment in her favor and against Defendants Neshaminy Inn, Motel Management Services, Motel Management Services, Inc., The Mary Etzrodt Real Estate Trust, and NI45, LLC and demands compensatory and punitive damages in excess of Fifty Thousand ($50,000.00) Dollars exclusive of prejudgment interest, costs and damages for pre-judgment delay.

## COUNT III - NEGLIGENCE

### E.B. v. DEFENDANTS MOTEL 6 OPERATING L.P., MOTEL 6, INC., MOTEL 6 L.P., G6 HOSPITALITY LLC, G6 HOSPITALITY PROPERTY LLC

69.     The averments of Paragraphs 1 through 68 are incorporated herein by reference.

70.     Defendants Motel 6 Operating L.P., Motel 6, Inc., Motel 6 L.P., G6 Hospitality LLC, G6 Hospitality Property LLC, individually and/or by and through their actual or apparent agents, servants and employees, were under a duty to provide reasonable, adequate, and sufficient security personnel and/or to otherwise take appropriate steps to ensure the safety and protection of persons on the premises of the Motel 6 Philadelphia Airport.

Case ID: 170500048

71.     Defendants Motel 6 Operating L.P., Motel 6, Inc., Motel 6 L.P., G6 Hospitality LLC, G6 Hospitality Property LLC, individually and/or by and through their actual or apparent agents, servants and employees should have reasonably anticipated criminal conduct by third parties, including other guests, invitees or persons on the premises of the Motel 6 Philadelphia Airport.

72.     Defendants Motel 6 Operating L.P., Motel 6, Inc., Motel 6 L.P., G6 Hospitality LLC, G6 Hospitality Property LLC, individually and/or by and through their actual or apparent agents, servants and employees, had a duty to take precautions against reasonably anticipated criminal conduct by third parties and to operate the Motel 6 Philadelphia Airport in a manner that did not endanger children or other persons, including Plaintiff.  Moreover, the Defendants had a duty of care to take reasonable steps to protect foreseeable victims of the dangers created by their acts and omissions, including the danger of human trafficking and sexual exploitation on the premises of the Motel 6 Philadelphia Airport.

73.     Defendants Motel 6 Operating L.P., Motel 6, Inc., Motel 6 L.P., G6 Hospitality LLC, G6 Hospitality Property LLC, individually and/or by and through their actual or apparent agents, servants and employees, breached the foregoing duties because they knew or should have known that persons on the premises of the Motel 6 Philadelphia Airport, including Plaintiff, could be victimized by, or subjected to, criminal activities on the premises that would likely endanger their health, safety, and/or well-being.  Moreover, Defendants breached their duty of care because they knew, or should have known, that adults working as sex traffickers were causing, by any means, minors, including Plaintiff, to be sexually exploited and trafficked at the Motel 6 Philadelphia Airport on a repeated basis.

74.     Defendants Motel 6 Operating L.P., Motel 6, Inc., Motel 6 L.P., G6 Hospitality

LLC, G6 Hospitality Property LLC, individually and/or by and through their actual or apparent

agents, servants and employees, should have reasonably anticipated that it was reasonably

foreseeable from their knowledge and/or past experiences that persons on the premises of the

Motel 6 Philadelphia Airport, including Plaintiff, would suffer serious bodily harm as a result of

being victimized by violent crimes perpetrated by third parties on the premises of the Motel 6

Philadelphia Airport.

75.    Defendants Motel 6 Operating L.P., Motel 6, Inc., Motel 6 L.P., G6 Hospitality

LLC, G6 Hospitality Property LLC, individually and/or by and through their actual or apparent

agents, servants and employees, failed or refused to take adequate precautions to protect persons

on the premises of the Motel 6 Philadelphia Airport, including Plaintiff, from criminal and

violent activities of others, despite a reasonable likelihood that person on the premises of the

Motel 6 Philadelphia Airport, including Plaintiff, would be victimized by, or subjected to, such

criminal and/or violent acts, which could cause such persons serious bodily injury.  The

negligence of Defendants Motel 6 Operating L.P., Motel 6, Inc., Motel 6 L.P., G6 Hospitality

LLC, G6 Hospitality Property LLC, individually and/or by and through their actual or apparent

agents, servants and employees consisted of the following:

      a. Failing to execute and/or implement the established security plan and/or execute
         and/or implement any established security plan;

      b. Failure to publish and/or post orders at the security posts providing protocols for
         employees to follow in circumstances involving commercial sexual activity
         and/or human sex trafficking;

      c. Failing to adopt, establish, implement, and/or enforce required policies,
         procedures, rules, regulations and/or guidelines concerning protection of
         individuals lawfully on the premises;

      d. Failing to adopt, establish, implement, and/or enforce required policies,
         procedures, rules, regulations and/or guidelines concerning removal from the
         premises of individuals posing security threats;

e. Failing to adequately control access to the premises;

f. Failing to prevent entry of unauthorized individuals onto the premises;

g. Failing to properly and adequately hire, train and provide ongoing training to employees including but not limited to ongoing training involving recognizing, preventing and responding to criminal activity, prostitution and sex trafficking;

h. Failing to select and/or retain only personnel competent to provide proper and adequate professional services;

i. Failing to assign experienced security personnel to provide competent guard services at the Motel 6 Philadelphia Airport;

j. Failing to adopt, establish, implement, execute and/or enforce required policies, procedures, rules, regulations and/or guidelines concerning protection of business invitees on the premises of the Motel 6 Philadelphia Airport;

k. Failing to adopt, establish, implement, execute and/or enforce required policies, procedures, rules, regulations, and/or guidelines concerning proper security measures in a motel setting;

l. Failing to adopt, establish, implement, execute and/or enforce required policies, procedures, rules, regulations, and/or guidelines concerning proper monitoring, surveillance, and patrolling of the premises;

m. Failing to adopt, establish, implement, execute and/or enforce required policies, procedures, rules, regulations, and/or guidelines concerning prevention of violent and/or criminal acts on the premises;

n. Failing to detect and respond to commercial sex activity and human sex trafficking at the Motel 6 Philadelphia Airport;

o. Failing to conduct adequate surveillance of the premises of the Motel 6 Philadelphia Airport;

p. Failing to utilize surveillance equipment to monitor suspicious activity and promptly react thereto for the safety of Plaintiff;

q. Failing to respond and react to suspicious activity;

r. Failing to maintain surveillance equipment in proper working order;

s. Failing to test or properly test surveillance equipment to ensure it was in working order;

    t.   Failing to utilize appropriate and/or required surveillance equipment;

    u.   Failing to adequately monitor activity on video surveillance and promptly react thereto for the safety of Plaintiff;

    v.   Allowing individuals to come on to the premises for the express purpose of trafficking Plaintiff;

    w.   Failing to prevent Plaintiff from being trafficked on the premises;

    x.   Breaching its duties under the Restatement of the Law of Torts (Second), including but not limited to §§ 302, 318, 321, 323, 324A, and 344; and

    y.   Failing to exercise care, caution and diligence required under the circumstances.

76.    By renting rooms to the individual sex trafficking Plaintiff, Defendants Motel 6 Operating L.P., Motel 6, Inc., Motel 6 L.P., G6 Hospitality LLC, G6 Hospitality Property LLC, individually and/or by and through their actual or apparent agents, servants and employees, breached the standard of good and prudent care by not reporting, intervening, disrupting or otherwise stopping the practice of traffickers committing commercial sex acts with a minor.

77.    As a result of Defendants Motel 6 Operating L.P., Motel 6, Inc., Motel 6 L.P., G6 Hospitality LLC, G6 Hospitality Property LLC's negligence, Plaintiff was caused to suffer physical harm, mental anguish, humiliation, exploitation, degradation, mental distress, loss of the enjoyments of life and loss of life's pleasures both in the past and in the future.

78.    As a result of Defendants Motel 6 Operating L.P., Motel 6, Inc., Motel 6 L.P., G6 Hospitality LLC, G6 Hospitality Property LLC's negligence, Defendants breached its duty to Plaintiff in not reporting, intervening, disrupting or otherwise stopping sex trafficking occurring at the Motel 6 Philadelphia Airport.

79.    Defendants Motel 6 Operating L.P., Motel 6, Inc., Motel 6 L.P., G6 Hospitality LLC, G6 Hospitality Property LLC acted outrageously and in reckless disregard for the health

and welfare of the Plaintiff warranting the imposition of punitive damages.

**WHEREFORE,** Plaintiff E.B. demands judgment in her favor and against Defendants Motel 6 Operating L.P., Motel 6, Inc., Motel 6 L.P., G6 Hospitality LLC, G6 Hospitality Property LLC and demands compensatory and punitive damages in excess of Fifty Thousand ($50,000.00) Dollars exclusive of prejudgment interest, costs and damages for pre-judgment delay.

## COUNT IV – NEGLIGENCE

### E.B. v. DEFENDANTS NESHAMINY INN, MOTEL MANAGEMENT SERVICES, MOTEL MANAGEMENT SERVICES, INC., THE MARY ETZRODT REAL ESTATE TRUST, AND NI45, LLC

80.    The averments of Paragraphs 1 through 79 are incorporated herein by reference.

81.    Defendants Neshaminy Inn, Motel Management Services, Motel Management Services, Inc., The Mary Etzrodt Real Estate Trust, and NI45, LLC, individually and/or by and through their actual or apparent agents, servants and employees, were under a duty to provide reasonable, adequate, and sufficient security personnel and/or to otherwise take appropriate steps to ensure the safety and protection of persons on the premises of the Neshaminy Inn Motel.

82.    Defendants Neshaminy Inn, Motel Management Services, Motel Management Services, Inc., The Mary Etzrodt Real Estate Trust, and NI45, LLC, individually and/or by and through their actual or apparent agents, servants and employees should have reasonably anticipated criminal conduct by third parties, including other guests, invitees or persons on the premises of the Neshaminy Inn Motel.

83.    Defendants Neshaminy Inn, Motel Management Services, Motel Management Services, Inc., The Mary Etzrodt Real Estate Trust, and NI45, LLC, individually and/or by and through their actual or apparent agents, servants and employees, had a duty to take precautions

against reasonably anticipated criminal conduct by third parties and to operate the Neshaminy Inn Motel in a manner that did not endanger children or other persons, including Plaintiff. Moreover, the Defendants had a duty of care to take reasonable steps to protect foreseeable victims of the dangers created by their acts and omissions, including the danger of human trafficking and sexual exploitation on the premises of the Neshaminy Inn Motel.

84.     Defendants Neshaminy Inn, Motel Management Services, Motel Management Services, Inc., The Mary Etzrodt Real Estate Trust, and NI45, LLC, individually and/or by and through their actual or apparent agents, servants and employees, breached the foregoing duties because they knew or should have known that persons on the premises of the Neshaminy Inn Motel, including Plaintiff, could be victimized by, or subjected to, criminal activities on the premises that would likely endanger their health, safety, and/or well-being. Moreover, Defendants breached their duty of care because they knew, or should have known, that adults working as sex traffickers were causing, by any means, minors, including Plaintiff, to be sexually exploited and trafficked at the Neshaminy Inn Motel on a repeated basis.

85.     Defendants Neshaminy Inn, Motel Management Services, Motel Management Services, Inc., The Mary Etzrodt Real Estate Trust, and NI45, LLC, individually and/or by and through their actual or apparent agents, servants and employees, should have reasonably anticipated that it was reasonably foreseeable from their knowledge and/or past experiences that persons on the premises of the Neshaminy Inn Motel, including Plaintiff, would suffer serious bodily harm as a result of being victimized by violent crimes perpetrated by third parties on the premises of the Neshaminy Inn Motel.

86.     Defendants Neshaminy Inn, Motel Management Services, Motel Management Services, Inc., The Mary Etzrodt Real Estate Trust, and NI45, LLC, individually and/or by and

through their actual or apparent agents, servants and employees, failed or refused to take

adequate precautions to protect persons on the premises of the Neshaminy Inn Motel, including

Plaintiff, from criminal and violent activities of others, despite a reasonable likelihood that

person on the premises of the Neshaminy Inn Motel, including Plaintiff, would be victimized by,

or subjected to, such criminal and/or violent acts, which could cause such persons serious bodily

injury. The negligence of Defendants Neshaminy Inn, Motel Management Services, Motel

Management Services, Inc., The Mary Etzrodt Real Estate Trust, and NI45, LLC, individually

and/or by and through their actual or apparent agents, servants and employees consisted of the

following:

     a. Failing to execute and/or implement the established security plan and/or execute and/or implement any established security plan;

     b. Failure to publish and/or post orders at the security posts providing protocols for employees to follow in circumstances involving commercial sexual activity and/or human sex trafficking;

     c. Failing to adopt, establish, implement, and/or enforce required policies, procedures, rules, regulations and/or guidelines concerning protection of individuals lawfully on the premises;

     d. Failing to adopt, establish, implement, and/or enforce required policies, procedures, rules, regulations and/or guidelines concerning removal from the premises of individuals posing security threats;

     e. Failing to adequately control access to the premises;

     f. Failing to prevent entry of unauthorized individuals onto the premises;

     g. Failing to properly and adequately hire, train and provide ongoing training to employees including but not limited to ongoing training involving recognizing, preventing and responding to criminal activity, prostitution and sex trafficking;

     h. Failing to select and/or retain only personnel competent to provide proper and adequate professional services;

     i. Failing to assign experienced security personnel to provide competent guard services at the Neshaminy Inn Motel;

j.  Failing to adopt, establish, implement, execute and/or enforce required policies, procedures, rules, regulations and/or guidelines concerning protection of business invitees on the premises of the Neshaminy Inn Motel;

k.  Failing to adopt, establish, implement, execute and/or enforce required policies, procedures, rules, regulations, and/or guidelines concerning proper security measures in a motel setting;

l.  Failing to adopt, establish, implement, execute and/or enforce required policies, procedures, rules, regulations, and/or guidelines concerning proper monitoring, surveillance, and patrolling of the premises;

m.  Failing to adopt, establish, implement, execute and/or enforce required policies, procedures, rules, regulations, and/or guidelines concerning prevention of violent and/or criminal acts on the premises;

n.  Failing to detect and respond to commercial sex activity and human sex trafficking at the Neshaminy Inn Motel;

o.  Failing to conduct adequate surveillance of the premises of the Neshaminy Inn Motel;

p.  Failing to utilize surveillance equipment to monitor suspicious activity and promptly react thereto for the safety of Plaintiff;

q.  Failing to respond and react to suspicious activity;

r.  Failing to maintain surveillance equipment in proper working order;

s.  Failing to test or properly test surveillance equipment to ensure it was in working order;

t.  Failing to utilize appropriate and/or required surveillance equipment;

u.  Failing to adequately monitor activity on video surveillance and promptly react thereto for the safety of Plaintiff;

v.  Allowing individuals to come on to the premises for the express purpose of trafficking Plaintiff;

w.  Failing to prevent Plaintiff from being trafficked on the premises;

x.  Breaching its duties under the Restatement of the Law of Torts (Second), including but not limited to §§ 302, 318, 321, 323, 324A, and 344; and

y. Failing to exercise care, caution and diligence required under the circumstances.

87.     By renting rooms to the individual sex trafficking Plaintiff, Defendants Neshaminy Inn, Motel Management Services, Motel Management Services, Inc., The Mary Etzrodt Real Estate Trust, and NI45, LLC, individually and/or by and through their actual or apparent agents, servants and employees, breached the standard of good and prudent care by not reporting, intervening, disrupting or otherwise stopping the practice of traffickers committing commercial sex acts with a minor.

88.     As a result of Defendants Neshaminy Inn, Motel Management Services, Motel Management Services, Inc., The Mary Etzrodt Real Estate Trust, and NI45, LLC's negligence, Plaintiff was caused to suffer physical harm, mental anguish, humiliation, exploitation, degradation, mental distress, loss of the enjoyments of life and loss of life's pleasures both in the past and in the future.

89.     As a result of Defendants Neshaminy Inn, Motel Management Services, Motel Management Services, Inc., The Mary Etzrodt Real Estate Trust, and NI45, LLC's negligence, Defendants breached its duty to Plaintiff in not reporting, intervening, disrupting or otherwise stopping sex trafficking occurring at the Neshaminy Inn Motel.

90.     Defendants Neshaminy Inn, Motel Management Services, Motel Management Services, Inc., The Mary Etzrodt Real Estate Trust, and NI45, LLC acted outrageously and in reckless disregard for the health and welfare of the Plaintiff warranting the imposition of punitive damages.

**WHEREFORE,** Plaintiff E.B. demands judgment in her favor and against Defendants Neshaminy Inn, Motel Management Services, Motel Management Services, Inc., The Mary Etzrodt Real Estate Trust, and NI45, LLC and demands compensatory and punitive damages in

Case ID: 17050048

excess of Fifty Thousand ($50,000.00) Dollars exclusive of prejudgment interest, costs and damages for pre-judgment delay.

## COUNT V – NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

### E.B. v. MOTEL 6 OPERATING L.P., MOTEL 6, INC., MOTEL 6 L.P., G6 HOSPITALITY LLC, G6 HOSPITALITY PROPERTY LLC

91.     The averments of paragraphs 1 through 90 are incorporated herein by reference.

92.     Defendants Motel 6 Operating L.P., Motel 6, Inc., Motel 6 L.P., G6 Hospitality LLC, G6 Hospitality Property LLC, individually and/or by and through their actual or apparent agents, servants and employees, negligently committed the acts averred in this Complaint against the Plaintiff and thereby caused Plaintiff to suffer fear, depression, humiliation, mental anguish and severe physical and emotional distress, directly and proximately causing harm and damages to the Plaintiff.

93.     Defendants acted outrageously and in reckless disregard for the health and welfare of the Plaintiff warranting the imposition of punitive damages.

**WHEREFORE,** Plaintiff E.B. demands judgment in her favor and against Defendants Motel 6 Operating L.P., Motel 6, Inc., Motel 6 L.P., G6 Hospitality LLC, G6 Hospitality Property LLC and demands compensatory and punitive damages in excess of Fifty Thousand ($50,000.00) Dollars exclusive of prejudgment interest, costs and damages for pre-judgment delay.

## COUNT VI – NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

### E.B. v. NESHAMINY INN, MOTEL MANAGEMENT SERVICES, MOTEL MANAGEMENT SERVICES, INC., THE MARY ETZRODT REAL ESTATE TRUST, AND NI45, LLC

94.     The averments of paragraphs 1 through 93 are incorporated herein by reference.

95.     Defendants Neshaminy Inn, Motel Management Services, Motel Management

Case ID: 170500048

Services, Inc., The Mary Etzrodt Real Estate Trust, and NI45, LLC, individually and/or by and through their actual or apparent agents, servants and employees, negligently committed the acts averred in this Complaint against the Plaintiff and thereby caused Plaintiff to suffer fear, depression, humiliation, mental anguish and severe physical and emotional distress, directly and proximately causing harm and damages to the Plaintiff.

96.     Defendants acted outrageously and in reckless disregard for the health and welfare of the Plaintiff warranting the imposition of punitive damages.

**WHEREFORE,** Plaintiff E.B. demands judgment in her favor and against Defendants Neshaminy Inn, Motel Management Services, Motel Management Services, Inc., The Mary Etzrodt Real Estate Trust, and NI45, LLC and demands compensatory and punitive damages in excess of Fifty Thousand ($50,000.00) Dollars exclusive of prejudgment interest, costs and damages for pre-judgment delay.

**KLINE & SPECTER, P.C.**

BY: _____
THOMAS R. KLINE, ESQUIRE
NADEEM A. BEZAR, ESQUIRE
EMILY B. MARKS, ESQUIRE
KYLE B. NOCHO, ESQUIRE

Case ID: 17050048

## <u>VERIFICATION</u>

I, E.B., hereby state that I am the Plaintiff in the within matter, and as such verify that the statements made in the foregoing First Amended Complaint are true and correct to the best of my knowledge and belief.

The undersigned understands that the statements herein are made subject to the penalties of 18 Pa. C.S.A. § 4904 relating to unsworn falsification to authorities.



# EXHIBIT "E"



# NAUTILUS INSURANCE COMPANY

## A Stock Company

# COMMERCIAL LINES POLICY

**THIS POLICY IS NOT OBTAINED PRIMARILY FOR PERSONAL, FAMILY OR HOUSEHOLD PURPOSES.**

THIS POLICY CONSISTS OF:

- Declarations;
- Common Policy Conditions; and
- One or more Coverage Parts. A Coverage Part consists of:
  - One or more Coverage Forms; and
  - Applicable Forms and Endorsements.

In Witness Whereof, we have caused this policy to be executed and attested, and, if required by state law, this policy shall not be valid unless countersigned by our authorized representative.

_____
Secretary

_____
President and CEO

Administrative Office:

7233 East Butherus Drive    Scottsdale, Arizona 85260    Telephone (480) 951-0905    Facsimile (480) 951-9730

*A BERKLEY COMPANY*®

E001J (11/06)

COMMERCIAL LINES POLICY - COMMON POLICY DECLARATIONS

# NAUTILUS INSURANCE COMPANY

Scottsdale, Arizona

**Transaction Type: New**

**Policy No. NN433648**

Renewal of Policy # _____
Rewrite of Policy # _____
Cross Ref. Policy # _____
NIC Quote # _____

Inspection Ordered:
[x] Yes [ ] No

The insurer which has issued this insurance is not licensed by the Pennsylvania Insurance Department and is subject to limited regulation. This insurance is NOT covered by the Pennsylvania Property and Casualty Insurance Guaranty Association.

**Named Insured and Mailing Address**
(No., Street, Town or City, County, State, Zip Code)

Motel Management Services Inc
DBA Neshaminy Inn  (See E014)
2345 Old Lincoln Highway
Trevose           PA 19053-

**Agent and Mailing Address**
(No., Street, Town or City, County, State, Zip Code)

**Agency No.** 03724-00

Blackmoor General Agency, LLC
747 Dresher Road
Horsham, PA 19044

NO FLAT CANCELLATION

**Policy Period:** From  09/01/2014  to  09/01/2015  at 12:01 A.M. Standard Time at your mailing address shown above.

**Business Description:** Motel, Beer dist, Tavern, Lot                                **Tax State** PA

**Form of Business:** [ ] Individual [ ] Partnership [ ] Joint Venture [ ] Trust [ ] Limited Liability Company (LLC)
[x] Organization, including a Corporation (but not including a Partnership, Joint Venture or LLC)

IN RETURN FOR THE PAYMENT OF THE PREMIUM, AND SUBJECT TO ALL THE TERMS OF THIS POLICY,
WE WILL PROVIDE YOU THE INSURANCE STATED IN THIS POLICY.

THIS POLICY CONSISTS OF THE FOLLOWING COVERAGE PARTS FOR WHICH A PREMIUM IS INDICATED.
THIS PREMIUM MAY BE SUBJECT TO ADJUSTMENT.

| | **PREMIUM** |
|---|---|
| Commercial General Liability Coverage Part | $ 24,898.00 |
| | $ _____ |
| | $ _____ |
| | $ _____ |
| | $ _____ |
| | $ _____ |
| | $ _____ |

| Tax & Fee Schedule | | | |
|---|---|---|---|
| Surplus Lines Tax | $ 746.94 | TOTAL ADVANCE PREMIUM | $ 24,898.00 |
| Stamping Fee | 25.00 | Minimum & Deposit | |
| Inspection Fee | 350.00 | TOTAL TAXES & FEES | $ 1,271.94 |
| Policy Fee | 150.00 | | |
| | | TOTAL | $ 26,169.94 |

**Form(s) and Endorsement(s) made a part of this policy at time of issue:**
**Refer to Schedule of Forms and Endorsements.**

Countersigned: Horsham, PA            By _____
            09/08/2014  RHANEBUR          Countersignature or Authorized Representative, whichever is applicable

THESE DECLARATIONS TOGETHER WITH THE COMMON POLICY CONDITIONS, COVERAGE PART DECLARATIONS, COVERAGE PART COVERAGE FORM(S) AND FORMS AND ENDORSEMENTS, IF ANY, ISSUED TO FORM A PART THEREOF, COMPLETE THE ABOVE NUMBERED POLICY.
Includes copyrighted material of Insurance Services Office, Inc., with its permission.

E001 (04/09)                    **HOME OFFICE**

POLICY NUMBER: **NN433648**

Named Insured: Motel Management Services Inc
DBA  Neshaminy Inn  (See E014)

## SCHEDULE OF FORMS AND ENDORSEMENTS

| | | |
|---|---|---|
| IL0017 | (11/98) | Common Policy Conditions |
| E001J | (11/06) | Nautilus Policy Jacket |
| E014 | (09/11) | Schedule Of Named Insureds |
| E915 | (07/13) | OFAC Adv Notice to Policyholder |
| S013 | (07/09) | Minimum Earned Premium Endt |
| S150 | (07/09) | CGL Coverage Part Declarations |
| S170 | (07/09) | CGL Coverage Part Dec Extension |
| CG0001 | (12/04) | Comml General Liability Cvg Form |
| CG0067 | (03/05) | Excl - Violation of Statutes |
| CG2147 | (07/98) | Excl-Employmt-Related Practices |
| CG2173 | (01/08) | Excl of Certified Acts of Terror |
| CG2196 | (03/05) | Silica/Silica-Related Dust Excl |
| CG2245 | (07/98) | Excl-Spec Theraptc Cosmetic Serv |
| CG2407 | (01/96) | Prod/Comp Ops Hazard Redefined |
| IL0021 | (09/08) | Nuclear Energy Liab Excl Endt |
| L204 | (06/06) | Excl- Aircraft, Auto, Watercraft |
| L210 | (02/08) | Excl - All Assault or Battery |
| L216 | (07/09) | Amend of Deftns-Insd Contract |
| L217 | (06/07) | Excl-Punitive Exemplary Dmgs |
| L223 | (06/07) | Exclusion - Total Pollution |
| L241 | (07/09) | Excl-Micro/Bio Organisms/Contam |
| L282 | (07/10) | Excl-Contractor & Subcontractor |
| L293 | (07/10) | Excl - All Construction Ops |
| L408 | (03/12) | Changes-Civ Union/Domestic Prtnr |
| L601 | (12/09) | Amend of Conditions - Prem Audit |
| L850 | (05/09) | Deductible Liab Insurance |
| S009 | (02/95) | Exclusion-Total Liquor Liability |
| S261 | (07/09) | Exclusion - Asbestos |
| E906PA | (06/07) | Service of Suit - Pennsylvania |
| IL0246 | (07/02) | PA Changes - Cancel/Nonrenew |
| IL0910 | (12/03) | Pennsylvania Notice |

The forms and endorsements shown on this Schedule constitute the entire policy at the time of issuance.

**SCHEDULE OF FORMS AND ENDORSEMENTS** (Continued)

**ADDITIONAL FORMS APPLICABLE:**

The forms and endorsements shown on this Schedule constitute the entire policy at the time of issuance.

IL 00 17 11 98

# COMMON POLICY CONDITIONS

All Coverage Parts included in this policy are subject to the following conditions.

## A. Cancellation

1. The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

2. We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

   a. 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

   b. 30 days before the effective date of cancellation if we cancel for any other reason.

3. We will mail or deliver our notice to the first Named Insured's last mailing address known to us.

4. Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

5. If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

6. If notice is mailed, proof of mailing will be sufficient proof of notice.

## B. Changes

This policy contains all the agreements between you and us concerning the insurance afforded. The first Named Insured shown in the Declarations is authorized to make changes in the terms of this policy with our consent. This policy's terms can be amended or waived only by endorsement issued by us and made a part of this policy.

## C. Examination Of Your Books And Records

We may examine and audit your books and records as they relate to this policy at any time during the policy period and up to three years afterward.

## D. Inspections And Surveys

1. We have the right to:

   a. Make inspections and surveys at any time;

   b. Give you reports on the conditions we find; and

   c. Recommend changes.

2. We are not obligated to make any inspections, surveys, reports or recommendations and any such actions we do undertake relate only to insurability and the premiums to be charged. We do not make safety inspections. We do not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public. And we do not warrant that conditions:

   a. Are safe or healthful; or

   b. Comply with laws, regulations, codes or standards.

3. Paragraphs 1. and 2. of this condition apply not only to us, but also to any rating, advisory, rate service or similar organization which makes insurance inspections, surveys, reports or recommendations.

4. Paragraph 2. of this condition does not apply to any inspections, surveys, reports or recommendations we may make relative to certification, under state or municipal statutes, ordinances or regulations, of boilers, pressure vessels or elevators.

## E. Premiums

The first Named Insured shown in the Declarations:

1. Is responsible for the payment of all premiums; and

2. Will be the payee for any return premiums we pay.

## F. Transfer Of Your Rights And Duties Under This Policy

Your rights and duties under this policy may not be transferred without our written consent except in the case of death of an individual named insured.

If you die, your rights and duties will be transferred to your legal representative but only while acting within the scope of duties as your legal representative. Until your legal representative is appointed, anyone having proper temporary custody of your property will have your rights and duties but only with respect to that property.

Copyright, Insurance Services Office, Inc., 1998 □

POLICY NUMBER: **NN433648**

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## SCHEDULE OF NAMED INSUREDS

### SCHEDULE

**Name Of Person(s) Or Organization(s):**

Motel Management Services Inc, DBA: Neshaminy Inn, Suds Beer Store, Bottle Caps Bar
Mary Etzrodt Trust, NI45 LLC, DD2451 LLC, SD01 LLC, TP2401 LLC

The Named Insured and Mailing Address section of the Common Policy Declarations is amended to include as a Named Insured all person(s) or organization(s) shown in the Schedule of this endorsement.

All other terms and conditions remain unchanged.

          Includes copyrighted material of Insurance Services Office, Inc., with its permission.

# U.S. TREASURY DEPARTMENT'S
# OFFICE OF FOREIGN ASSETS CONTROL (OFAC)
# ADVISORY NOTICE TO POLICYHOLDERS

## PLEASE READ THIS NOTICE CAREFULLY.

No coverage is provided by this Policyholder Notice nor can it be construed to replace any provisions of your policy. You should read your policy and review your Declarations page for complete information on the coverages you are provided.

This Notice provides information concerning possible impact on your insurance coverage due to directives issued by OFAC.

The Office of Foreign Assets Control (OFAC) administers and enforces sanctions policy, based on Presidential declarations of national emergency. OFAC has identified and listed numerous foreign agents, front organizations, terrorists, terrorist organizations and narcotics traffickers as Specially Designated Nationals. This list can be located on the United States Treasury's web site: http://www.treasury.gov/ofac.

In accordance with OFAC regulations, if it is determined that you or any other insured, or any person or entity claiming the benefits of this insurance has violated U.S. sanctions law or is a Specially Designated National, as identified by OFAC, this insurance will be considered a blocked or frozen contract and all provisions of this insurance are immediately subject to OFAC. When an insurance policy is considered to be such a blocked or frozen contract, no payments or premium refunds may be made without authorization from OFAC. Other limitations on the premiums and payments also apply.

POLICY NUMBER: **NN433648**

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## MINIMUM EARNED PREMIUM ENDORSEMENT

If this policy is cancelled at your request, there will be a minimum earned premium retained by us of

$ _____ or _____ 25 % of the premium for this insurance, whichever is greater.

Non-payment of premium is considered a request by the first Named Insured for cancellation of this policy.

If a policy fee, inspection fee or expense constant is applicable to this policy, they will be fully earned and no refund will be made.

All other terms and conditions of this policy remain unchanged.

 Includes copyrighted material of Insurance Services Office, Inc., with its permission.

# COMMERCIAL GENERAL LIABILITY COVERAGE PART DECLARATIONS

POLICY NUMBER: NN433648
☒ Extension of Declarations is attached.

Effective Date: 09/01/2014  12:01 A.M. Standard Time

| LIMITS OF INSURANCE | ☐ If box is checked, refer to form S132 Amendment of Limits of Insurance. |
|---|---|
| General Aggregate Limit (Other Than Products/Completed Operations) | $ 2,000,000 |
| Products/Completed Operations Aggregate Limit | $ 2,000,000 |
| Personal and Advertising Injury Limit | $ 1,000,000   Any One Person Or Organization |
| Each Occurrence Limit | $ 1,000,000 |
| Damage To Premises Rented To You Limit | $ 100,000   Any One Premises |
| Medical Expense Limit | $ 5,000   Any One Person |

**RETROACTIVE DATE (CG 00 02 ONLY)**

This insurance does not apply to "bodily injury", "property damage" or "personal and advertising injury" which occurs before the Retroactive Date, if any, shown here: _____ (Enter Date or "NONE" if no Retroactive Date applies)

**BUSINESS DESCRIPTION AND LOCATION OF PREMISES**

BUSINESS DESCRIPTION: Motel, Beer dist, Tavern, Lot
LOCATION OF ALL PREMISES YOU OWN, RENT, OR OCCUPY:   ☒ Location address is same as mailing address.
1. 2345 Old Lincoln Highway
   Trevose          PA 19053-
2. 2401 Lincoln Hwy
   Trevose          PA 19053-
Additional locations (if any) will be shown on form S170, Commercial General Liability Coverage Part Declarations Extension.
LOCATION OF JOB SITE  (If Designated Projects are to be Scheduled):
                                                                                      -
                                                                                      -

| CODE # - | CLASSIFICATION | ★ | PREMIUM BASIS | RATE Prem/Ops | RATE Prod/Comp Ops | ADVANCE PREMIUM |
|---|---|---|---|---|---|---|
| 45192 - | Hotels Motel Rural < 250,000 population Without Pool less than 4 stories | s+ | 1,600,000 | 13.074 | INCLUDED | 20,918 INCLUDED |
| 16916 - | Restaurants - with sale of alcoholic beverages that are 30% or more of but less 75% of the total annual receipts of the restaurants - without dance floor | s | 40,388 | 14.255 | .564 | 576 23 |
| 61217 - | Buildings or Premises - bank or office - mercantile or mfg (lessor's risk only) - maintained by the insured - OTNFP | a+ | 5,000 | 180.386 | INCLUDED | 902 INCLUDED |
| 10145 - | Beverage Stores - liquor and wine | s | 973,445 | 2.311 | .098 | 2,250 95 |

**\* PREMIUM BASIS SYMBOLS**      **+ = Products/Completed Operations are subject to the General Aggregate Limit**
**a** = Area  (per 1,000 sq. ft. of area)          **o** = Total Operating Expenditures          **s** = Gross Sales  (per $1,000 of Gross Sales)
**c** = Total Cost  (per $1,000 of Total Cost)          (per $1,000 Total Operating Expenditures)          **t** = See Classification
**m**= Admissions  (per 1,000 Admissions)          **p** = Payroll  (per $1,000 of Payroll)          **u** = Units  (per unit)

PREMIUM FOR THIS PAGE  $    24,764

**FORMS AND ENDORSEMENTS** (other than applicable Forms and Endorsements shown elsewhere in the policy)

Forms and Endorsements applying to this Coverage Part and made part of this policy at time of issue:
**Refer to Schedule of Forms and Endorsements**

THESE DECLARATIONS ARE PART OF THE POLICY DECLARATIONS CONTAINING THE NAME OF THE INSURED AND THE POLICY PERIOD.
Includes copyrighted material of Insurance Services Office, Inc. with its permission.

S150 (07/09)

## COMMERCIAL GENERAL LIABILITY
## COVERAGE PART DECLARATIONS EXTENSION

POLICY NUMBER: **NN433648**     Effective Date: 09/01/2014     12:01 A.M. Standard Time

| LOCATION OF PREMISES |
|---|

Location of All Premises You Own, Rent or Occupy:
  3. 2451 Lincoln Hwy
     Trevose              PA 19053 –
  4. 2401 Lincoln Hwy
     Trevose              PA 19053 –
                                –
                                –
                                –
                                –
                                –
                                –
                                –
                                –

| PREMIUM |
|---|

| CODE # - | CLASSIFICATION | * | PREMIUM BASIS | RATE | | ADVANCE PREMIUM |
|---|---|---|---|---|---|---|
| | | | | Prem/Ops | Prod/Comp Ops | |
| 61217 - Buildings or Premises - bank or office - mercantile or mfg (lessor's risk only) - maintained by the insured - OTNFP | | a+ | 500 | 180.386 | INCLUDED | 90 INCLUDED |
| 49451 - Vacant Land - Rural Rate is Per Acre - First 500 acres | | t+ | 10 | 4.399 | INCLUDED | 44 INCLUDED |
| ▪ | | | | | | |
| ▪ | | | | | | |
| ▪ | | | | | | |

| ☐ Additional page needed. | PREMIUM FOR THIS COVERAGE PART | $ | 24,898 |
|---|---|---|---|

THESE DECLARATIONS ARE PART OF THE POLICY DECLARATIONS CONTAINING THE NAME OF THE INSURED AND THE POLICY PERIOD.

S170 (07/09)          Includes copyrighted material of Insurance Services Office, Inc., with its permission.          Page 1 of 1

# COMMERCIAL GENERAL LIABILITY COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy. The words "we", "us" and "our" refer to the company providing this insurance.

The word "insured" means any person or organization qualifying as such under Section II – Who Is An Insured.

Other words and phrases that appear in quotation marks have special meaning. Refer to Section V – Definitions.

## SECTION I – COVERAGES

## COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY

**1. Insuring Agreement**

**a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

**(1)** The amount we will pay for damages is limited as described in Section III – Limits Of Insurance; and

**(2)** Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage **C**.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages **A** and **B**.

**b.** This insurance applies to "bodily injury" and "property damage" only if:

**(1)** The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

**(2)** The "bodily injury" or "property damage" occurs during the policy period; and

**(3)** Prior to the policy period, no insured listed under Paragraph **1.** of Section II – Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

**c.** "Bodily injury" or "property damage" which occurs during the policy period and was not, prior to the policy period, known to have occurred by any insured listed under Paragraph **1.** of Section II – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim, includes any continuation, change or resumption of that "bodily injury" or "property damage" after the end of the policy period.

**d.** "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph **1.** of Section II – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim:

**(1)** Reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;

**(2)** Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage"; or

**(3)** Becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur.

© ISO Properties, Inc., 2003

e. Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury".

2. **Exclusions**

This insurance does not apply to:

a. **Expected Or Intended Injury**

"Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

b. **Contractual Liability**

"Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

(1) That the insured would have in the absence of the contract or agreement; or

(2) Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement. Solely for the purposes of liability assumed in an "insured contract", reasonable attorney fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of "bodily injury" or "property damage", provided:

(a) Liability to such party for, or for the cost of, that party's defense has also been assumed in the same "insured contract"; and

(b) Such attorney fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

c. **Liquor Liability**

"Bodily injury" or "property damage" for which any insured may be held liable by reason of:

(1) Causing or contributing to the intoxication of any person;

(2) The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

(3) Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

This exclusion applies only if you are in the business of manufacturing, distributing, selling, serving or furnishing alcoholic beverages.

d. **Workers' Compensation And Similar Laws**

Any obligation of the insured under a workers' compensation, disability benefits or unemployment compensation law or any similar law.

e. **Employer's Liability**

"Bodily injury" to:

(1) An "employee" of the insured arising out of and in the course of:

(a) Employment by the insured; or

(b) Performing duties related to the conduct of the insured's business; or

(2) The spouse, child, parent, brother or sister of that "employee" as a consequence of Paragraph (1) above.

This exclusion applies:

(1) Whether the insured may be liable as an employer or in any other capacity; and

(2) To any obligation to share damages with or repay someone else who must pay damages because of the injury.

This exclusion does not apply to liability assumed by the insured under an "insured contract".

© ISO Properties, Inc., 2003         **CG 00 01 12 04**    ☐

**f. Pollution**

(1) "Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants":

(a) At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any insured. However, this subparagraph does not apply to:

(i) "Bodily injury" if sustained within a building and caused by smoke, fumes, vapor or soot produced by or originating from equipment that is used to heat, cool or dehumidify the building, or equipment that is used to heat water for personal use, by the building's occupants or their guests;

(ii) "Bodily injury" or "property damage" for which you may be held liable, if you are a contractor and the owner or lessee of such premises, site or location has been added to your policy as an additional insured with respect to your ongoing operations performed for that additional insured at that premises, site or location and such premises, site or location is not and never was owned or occupied by, or rented or loaned to, any insured, other than that additional insured; or

(iii) "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire";

(b) At or from any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste;

(c) Which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for:

(i) Any insured; or

(ii) Any person or organization for whom you may be legally responsible; or

(d) At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the "pollutants" are brought on to or to the premises, site or location in connection with such operations by such insured, contractor or subcontractor. However, this subparagraph does not apply to:

(i) "Bodily injury" or "property damage" arising out of the escape of fuels, lubricants or other operating fluids which are needed to perform the normal electrical, hydraulic or mechanical functions necessary for the operation of "mobile equipment" or its parts, if such fuels, lubricants or other operating fluids escape from a vehicle part designed to hold, store or receive them. This exception does not apply if the "bodily injury" or "property damage" arises out of the intentional discharge, dispersal or release of the fuels, lubricants or other operating fluids, or if such fuels, lubricants or other operating fluids are brought on or to the premises, site or location with the intent that they be discharged, dispersed or released as part of the operations being performed by such insured, contractor or subcontractor;

(ii) "Bodily injury" or "property damage" sustained within a building and caused by the release of gases, fumes or vapors from materials brought into that building in connection with operations being performed by you or on your behalf by a contractor or subcontractor; or

(iii) "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire".

(e) At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants".

 © ISO Properties, Inc., 2003

**(2)** Any loss, cost or expense arising out of any:

**(a)** Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

**(b)** Claim or "suit" by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

However, this paragraph does not apply to liability for damages because of "property damage" that the insured would have in the absence of such request, demand, order or statutory or regulatory requirement, or such claim or "suit" by or on behalf of a governmental authority.

**g. Aircraft, Auto Or Watercraft**

"Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft owned or operated by or rented or loaned to any insured. Use includes operation and "loading or unloading".

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage" involved the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft that is owned or operated by or rented or loaned to any insured.

This exclusion does not apply to:

**(1)** A watercraft while ashore on premises you own or rent;

**(2)** A watercraft you do not own that is:

**(a)** Less than 26 feet long; and

**(b)** Not being used to carry persons or property for a charge;

**(3)** Parking an "auto" on, or on the ways next to, premises you own or rent, provided the "auto" is not owned by or rented or loaned to you or the insured;

**(4)** Liability assumed under any "insured contract" for the ownership, maintenance or use of aircraft or watercraft; or

**(5)** "Bodily injury" or "property damage" arising out of:

**(a)** The operation of machinery or equipment that is attached to, or part of, a land vehicle that would qualify under the definition of "mobile equipment" if it were not subject to a compulsory or financial responsibility law or other motor vehicle insurance law in the state where it is licensed or principally garaged; or

**(b)** the operation of any of the machinery or equipment listed in Paragraph **f.(2)** or **f.(3)** of the definition of "mobile equipment".

**h. Mobile Equipment**

"Bodily injury" or "property damage" arising out of:

**(1)** The transportation of "mobile equipment" by an "auto" owned or operated by or rented or loaned to any insured; or

**(2)** The use of "mobile equipment" in, or while in practice for, or while being prepared for, any prearranged racing, speed, demolition, or stunting activity.

**i. War**

"Bodily injury" or "property damage", however caused, arising, directly or indirectly, out of:

**(1)** War, including undeclared or civil war;

**(2)** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

**(3)** Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

**j. Damage To Property**

"Property damage" to:

**(1)** Property you own, rent, or occupy, including any costs or expenses incurred by you, or any other person, organization or entity, for repair, replacement, enhancement, restoration or maintenance of such property for any reason, including prevention of injury to a person or damage to another's property;

**(2)** Premises you sell, give away or abandon, if the "property damage" arises out of any part of those premises;

**(3)** Property loaned to you;

**(4)** Personal property in the care, custody or control of the insured;

© ISO Properties, Inc., 2003

**(5)** That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

**(6)** That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

Paragraphs **(1)**, **(3)** and **(4)** of this exclusion do not apply to "property damage" (other than damage by fire) to premises, including the contents of such premises, rented to you for a period of 7 or fewer consecutive days. A separate limit of insurance applies to Damage To Premises Rented To You as described in Section III – Limits Of Insurance.

Paragraph **(2)** of this exclusion does not apply if the premises are "your work" and were never occupied, rented or held for rental by you.

Paragraphs **(3)**, **(4)**, **(5)** and **(6)** of this exclusion do not apply to liability assumed under a sidetrack agreement.

Paragraph **(6)** of this exclusion does not apply to "property damage" included in the "products-completed operations hazard".

**k. Damage To Your Product**

"Property damage" to "your product" arising out of it or any part of it.

**l. Damage To Your Work**

"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

**m. Damage To Impaired Property Or Property Not Physically Injured**

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

**(1)** A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

**(2)** A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

**n. Recall Of Products, Work Or Impaired Property**

Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

**(1)** "Your product";

**(2)** "Your work"; or

**(3)** "Impaired property";

if such product, work, or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

**o. Personal And Advertising Injury**

"Bodily injury" arising out of "personal and advertising injury".

**p. Electronic Data**

Damages arising out of the loss of, loss of use of, damage to, corruption of, inability to access, or inability to manipulate electronic data.

As used in this exclusion, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMS, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

Exclusions **c.** through **n.** do not apply to damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner. A separate limit of insurance applies to this coverage as described in Section III – Limits Of Insurance.

**COVERAGE B PERSONAL AND ADVERTISING INJURY LIABILITY**

**1. Insuring Agreement**

**a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply. We may, at our discretion, investigate any offense and settle any claim or "suit" that may result. But:

**(1)** The amount we will pay for damages is limited as described in Section III – Limits Of Insurance; and

**(2)** Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage **C.**

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages **A** and **B.**

**b.** This insurance applies to "personal and advertising injury" caused by an offense arising out of your business but only if the offense was committed in the "coverage territory" during the policy period.

**2. Exclusions**

This insurance does not apply to:

**a. Knowing Violation Of Rights Of Another**

"Personal and advertising injury" caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury".

**b. Material Published With Knowledge Of Falsity**

"Personal and advertising injury" arising out of oral or written publication of material, if done by or at the direction of the insured with knowledge of its falsity.

**c. Material Published Prior To Policy Period**

"Personal and advertising injury" arising out of oral or written publication of material whose first publication took place before the beginning of the policy period.

**d. Criminal Acts**

"Personal and advertising injury" arising out of a criminal act committed by or at the direction of the insured.

**e. Contractual Liability**

"Personal and advertising injury" for which the insured has assumed liability in a contract or agreement. This exclusion does not apply to liability for damages that the insured would have in the absence of the contract or agreement.

**f. Breach Of Contract**

"Personal and advertising injury" arising out of a breach of contract, except an implied contract to use another's advertising idea in your "advertisement".

**g. Quality Or Performance Of Goods – Failure To Conform To Statements**

"Personal and advertising injury" arising out of the failure of goods, products or services to conform with any statement of quality or performance made in your "advertisement".

**h. Wrong Description Of Prices**

"Personal and advertising injury" arising out of the wrong description of the price of goods, products or services stated in your "advertisement".

**i. Infringement Of Copyright, Patent, Trademark Or Trade Secret**

"Personal and advertising injury" arising out of the infringement of copyright, patent, trademark, trade secret or other intellectual property rights.

However, this exclusion does not apply to infringement, in your "advertisement", of copyright, trade dress or slogan.

**j. Insureds In Media And Internet Type Businesses**

"Personal and advertising injury" committed by an insured whose business is:

**(1)** Advertising, broadcasting, publishing or telecasting;

**(2)** Designing or determining content of websites for others; or

**(3)** An Internet search, access, content or service provider.

However, this exclusion does not apply to Paragraphs **14.a., b.** and **c.** of "personal and advertising injury" under the Definitions Section.

For the purposes of this exclusion, the placing of frames, borders or links, or advertising, for you or others anywhere on the Internet, is not by itself, considered the business of advertising, broadcasting, publishing or telecasting.

**k. Electronic Chatrooms Or Bulletin Boards**

"Personal and advertising injury" arising out of an electronic chatroom or bulletin board the insured hosts, owns, or over which the insured exercises control.

**l. Unauthorized Use Of Another's Name Or Product**

"Personal and advertising injury" arising out of the unauthorized use of another's name or product in your e-mail address, domain name or metatag, or any other similar tactics to mislead another's potential customers.

© ISO Properties, Inc., 2003

CG 00 01 12 04     □

**m. Pollution**

"Personal and advertising injury" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time.

**n. Pollution-Related**

Any loss, cost or expense arising out of any:

(1) Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

(2) Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

**o. War**

"Personal and advertising injury", however caused, arising, directly or indirectly, out of:

(1) War, including undeclared or civil war;

(2) Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

(3) Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

## COVERAGE C MEDICAL PAYMENTS

**1. Insuring Agreement**

a. We will pay medical expenses as described below for "bodily injury" caused by an accident:

(1) On premises you own or rent;

(2) On ways next to premises you own or rent; or

(3) Because of your operations;

provided that:

(1) The accident takes place in the "coverage territory" and during the policy period;

(2) The expenses are incurred and reported to us within one year of the date of the accident; and

(3) The injured person submits to examination, at our expense, by physicians of our choice as often as we reasonably require.

b. We will make these payments regardless of fault. These payments will not exceed the applicable limit of insurance. We will pay reasonable expenses for:

(1) First aid administered at the time of an accident;

(2) Necessary medical, surgical, x-ray and dental services, including prosthetic devices; and

(3) Necessary ambulance, hospital, professional nursing and funeral services.

**2. Exclusions**

We will not pay expenses for "bodily injury":

**a. Any Insured**

To any insured, except "volunteer workers".

**b. Hired Person**

To a person hired to do work for or on behalf of any insured or a tenant of any insured.

**c. Injury On Normally Occupied Premises**

To a person injured on that part of premises you own or rent that the person normally occupies.

**d. Workers Compensation And Similar Laws**

To a person, whether or not an "employee" of any insured, if benefits for the "bodily injury" are payable or must be provided under a workers' compensation or disability benefits law or a similar law.

**e. Athletics Activities**

To a person injured while practicing, instructing or participating in any physical exercises or games, sports, or athletic contests.

**f. Products-Completed Operations Hazard**

Included within the "products-completed operations hazard".

**g. Coverage A Exclusions**

Excluded under Coverage **A.**

## SUPPLEMENTARY PAYMENTS – COVERAGES A AND B

**1.** We will pay, with respect to any claim we investigate or settle, or any "suit" against an insured we defend:

**a.** All expenses we incur.

**b.** Up to $250 for cost of bail bonds required because of accidents or traffic law violations arising out of the use of any vehicle to which the Bodily Injury Liability Coverage applies. We do not have to furnish these bonds.

**c.** The cost of bonds to release attachments, but only for bond amounts within the applicable limit of insurance. We do not have to furnish these bonds.

**d.** All reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of the claim or "suit", including actual loss of earnings up to $250 a day because of time off from work.

**e.** All costs taxed against the insured in the "suit".

**f.** Prejudgment interest awarded against the insured on that part of the judgment we pay. If we make an offer to pay the applicable limit of insurance, we will not pay any prejudgment interest based on that period of time after the offer.

**g.** All interest on the full amount of any judgment that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that is within the applicable limit of insurance.

These payments will not reduce the limits of insurance.

**2.** If we defend an insured against a "suit" and an indemnitee of the insured is also named as a party to the "suit", we will defend that indemnitee if all of the following conditions are met:

**a.** The "suit" against the indemnitee seeks damages for which the insured has assumed the liability of the indemnitee in a contract or agreement that is an "insured contract";

**b.** This insurance applies to such liability assumed by the insured;

**c.** The obligation to defend, or the cost of the defense of, that indemnitee, has also been assumed by the insured in the same "insured contract";

**d.** The allegations in the "suit" and the information we know about the "occurrence" are such that no conflict appears to exist between the interests of the insured and the interests of the indemnitee;

**e.** The indemnitee and the insured ask us to conduct and control the defense of that indemnitee against such "suit" and agree that we can assign the same counsel to defend the insured and the indemnitee; and

**f.** The indemnitee:

**(1)** Agrees in writing to:

**(a)** Cooperate with us in the investigation, settlement or defense of the "suit";

**(b)** Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the "suit";

**(c)** Notify any other insurer whose coverage is available to the indemnitee; and

**(d)** Cooperate with us with respect to coordinating other applicable insurance available to the indemnitee; and

**(2)** Provides us with written authorization to:

**(a)** Obtain records and other information related to the "suit"; and

**(b)** Conduct and control the defense of the indemnitee in such "suit".

So long as the above conditions are met, attorneys' fees incurred by us in the defense of that indemnitee, necessary litigation expenses incurred by us and necessary litigation expenses incurred by the indemnitee at our request will be paid as Supplementary Payments. Notwithstanding the provisions of Paragraph 2.b.(2) of Section I – Coverage A – Bodily Injury And Property Damage Liability, such payments will not be deemed to be damages for "bodily injury" and "property damage" and will not reduce the limits of insurance.

Our obligation to defend an insured's indemnitee and to pay for attorneys' fees and necessary litigation expenses as Supplementary Payments ends when:

**a.** We have used up the applicable limit of insurance in the payment of judgments or settlements; or

**b.** The conditions set forth above, or the terms of the agreement described in Paragraph f. above, are no longer met.

## SECTION II – WHO IS AN INSURED

**1.** If you are designated in the Declarations as:

**a.** An individual, you and your spouse are insureds, but only with respect to the conduct of a business of which you are the sole owner.

**b.** A partnership or joint venture, you are an insured. Your members, your partners, and their spouses are also insureds, but only with respect to the conduct of your business.

**c.** A limited liability company, you are an insured. Your members are also insureds, but only with respect to the conduct of your business. Your managers are insureds, but only with respect to their duties as your managers.

© ISO Properties, Inc., 2003     CG 00 01 12 04     □

**d.** An organization other than a partnership, joint venture or limited liability company, you are an insured. Your "executive officers" and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.

**e.** A trust, you are an insured. Your trustees are also insureds, but only with respect to their duties as trustees.

**2.** Each of the following is also an insured:

**a.** Your "volunteer workers" only while performing duties related to the conduct of your business, or your "employees", other than either your "executive officers" (if you are an organization other than a partnership, joint venture or limited liability company) or your managers (if you are a limited liability company), but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business. However, none of these "employees" or "volunteer workers" are insureds for:

**(1)** "Bodily injury" or "personal and advertising injury":

**(a)** To you, to your partners or members (if you are a partnership or joint venture), to your members (if you are a limited liability company), to a co-"employee" while in the course of his or her employment or performing duties related to the conduct of your business, or to your other "volunteer workers" while performing duties related to the conduct of your business;

**(b)** To the spouse, child, parent, brother or sister of that co-"employee" or "volunteer worker" as a consequence of Paragraph **(1)(a)** above;

**(c)** For which there is any obligation to share damages with or repay someone else who must pay damages because of the injury described in Paragraphs **(1)(a)** or **(b)** above; or

**(d)** Arising out of his or her providing or failing to provide professional health care services.

**(2)** "Property damage" to property:

**(a)** Owned, occupied or used by,

**(b)** Rented to, in the care, custody or control of, or over which physical control is being exercised for any purpose by

you, any of your "employees", "volunteer workers", any partner or member (if you are a partnership or joint venture), or any member (if you are a limited liability company).

**b.** Any person (other than your "employee" or "volunteer worker"), or any organization while acting as your real estate manager.

**c.** Any person or organization having proper temporary custody of your property if you die, but only:

**(1)** With respect to liability arising out of the maintenance or use of that property; and

**(2)** Until your legal representative has been appointed.

**d.** Your legal representative if you die, but only with respect to duties as such. That representative will have all your rights and duties under this Coverage Part.

**3.** Any organization you newly acquire or form, other than a partnership, joint venture or limited liability company, and over which you maintain ownership or majority interest, will qualify as a Named Insured if there is no other similar insurance available to that organization. However:

**a.** Coverage under this provision is afforded only until the 90th day after you acquire or form the organization or the end of the policy period, whichever is earlier;

**b.** Coverage **A** does not apply to "bodily injury" or "property damage" that occurred before you acquired or formed the organization; and

**c.** Coverage **B** does not apply to "personal and advertising injury" arising out of an offense committed before you acquired or formed the organization.

No person or organization is an insured with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a Named Insured in the Declarations.

**SECTION III – LIMITS OF INSURANCE**

**1.** The Limits of Insurance shown in the Declarations and the rules below fix the most we will pay regardless of the number of:

**a.** Insureds;

**b.** Claims made or "suits" brought; or

**c.** Persons or organizations making claims or bringing "suits".

2. The General Aggregate Limit is the most we will pay for the sum of:

   a. Medical expenses under Coverage **C**;

   b. Damages under Coverage **A**, except damages because of "bodily injury" or "property damage" included in the "products-completed operations hazard"; and

   c. Damages under Coverage **B**.

3. The Products-Completed Operations Aggregate Limit is the most we will pay under Coverage **A** for damages because of "bodily injury" and "property damage" included in the "products-completed operations hazard".

4. Subject to **2.** above, the Personal and Advertising Injury Limit is the most we will pay under Coverage **B** for the sum of all damages because of all "personal and advertising injury" sustained by any one person or organization.

5. Subject to **2.** or **3.** above, whichever applies, the Each Occurrence Limit is the most we will pay for the sum of:

   a. Damages under Coverage **A**; and

   b. Medical expenses under Coverage **C**

   because of all "bodily injury" and "property damage" arising out of any one "occurrence".

6. Subject to **5.** above, the Damage To Premises Rented To You Limit is the most we will pay under Coverage **A** for damages because of "property damage" to any one premises, while rented to you, or in the case of damage by fire, while rented to you or temporarily occupied by you with permission of the owner.

7. Subject to **5.** above, the Medical Expense Limit is the most we will pay under Coverage **C** for all medical expenses because of "bodily injury" sustained by any one person.

The Limits of Insurance of this Coverage Part apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

**SECTION IV – COMMERCIAL GENERAL LIABILITY CONDITIONS**

**1. Bankruptcy**

Bankruptcy or insolvency of the insured or of the insured's estate will not relieve us of our obligations under this Coverage Part.

**2. Duties In The Event Of Occurrence, Offense, Claim Or Suit**

   a. You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim. To the extent possible, notice should include:

     **(1)** How, when and where the "occurrence" or offense took place;

     **(2)** The names and addresses of any injured persons and witnesses; and

     **(3)** The nature and location of any injury or damage arising out of the "occurrence" or offense.

   b. If a claim is made or "suit" is brought against any insured, you must:

     **(1)** Immediately record the specifics of the claim or "suit" and the date received; and

     **(2)** Notify us as soon as practicable.

     You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

   c. You and any other involved insured must:

     **(1)** Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

     **(2)** Authorize us to obtain records and other information;

     **(3)** Cooperate with us in the investigation or settlement of the claim or defense against the "suit"; and

     **(4)** Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.

   d. No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

**3. Legal Action Against Us**

No person or organization has a right under this Coverage Part:

   a. To join us as a party or otherwise bring us into a "suit" asking for damages from an insured; or

Case 2:20-cv-00289-PBT Document 1 Filed 01/16/20 Page 111 of 152

**b.** To sue us on this Coverage Part unless all of its terms have been fully complied with.

A person or organization may sue us to recover on an agreed settlement or on a final judgment against an insured; but we will not be liable for damages that are not payable under the terms of this Coverage Part or that are in excess of the applicable limit of insurance. An agreed settlement means a settlement and release of liability signed by us, the insured and the claimant or the claimant's legal representative.

**4. Other Insurance**

If other valid and collectible insurance is available to the insured for a loss we cover under Coverages **A** or **B** of this Coverage Part, our obligations are limited as follows:

**a. Primary Insurance**

This insurance is primary except when **b.** below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in **c.** below.

**b. Excess Insurance**

This insurance is excess over:

**(1)** Any of the other insurance, whether primary, excess, contingent or on any other basis:

**(a)** That is Fire, Extended Coverage, Builder's Risk, Installation Risk or similar coverage for "your work";

**(b)** That is Fire insurance for premises rented to you or temporarily occupied by you with permission of the owner;

**(c)** That is insurance purchased by you to cover your liability as a tenant for "property damage" to premises rented to you or temporarily occupied by you with permission of the owner; or

**(d)** If the loss arises out of the maintenance or use of aircraft, "autos" or watercraft to the extent not subject to Exclusion **g.** of Section **I** – Coverage **A** – Bodily Injury And Property Damage Liability.

**(2)** Any other primary insurance available to you covering liability for damages arising out of the premises or operations, or the products and completed operations, for which you have been added as an additional insured by attachment of an endorsement.

When this insurance is excess, we will have no duty under Coverages **A** or **B** to defend the insured against any "suit" if any other insurer has a duty to defend the insured against that "suit". If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

When this insurance is excess over other insurance, we will pay only our share of the amount of the loss, if any, that exceeds the sum of:

**(1)** The total amount that all such other insurance would pay for the loss in the absence of this insurance; and

**(2)** The total of all deductible and self-insured amounts under all that other insurance.

We will share the remaining loss, if any, with any other insurance that is not described in this Excess Insurance provision and was not bought specifically to apply in excess of the Limits of Insurance shown in the Declarations of this Coverage Part.

**c. Method Of Sharing**

If all of the other insurance permits contribution by equal shares, we will follow this method also. Under this approach each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first.

If any of the other insurance does not permit contribution by equal shares, we will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable limit of insurance to the total applicable limits of insurance of all insurers.

**5. Premium Audit**

**a.** We will compute all premiums for this Coverage Part in accordance with our rules and rates.

**b.** Premium shown in this Coverage Part as advance premium is a deposit premium only. At the close of each audit period we will compute the earned premium for that period and send notice to the first Named Insured. The due date for audit and retrospective premiums is the date shown as the due date on the bill. If the sum of the advance and audit premiums paid for the policy period is greater than the earned premium, we will return the excess to the first Named Insured.

**c.** The first Named Insured must keep records of the information we need for premium computation, and send us copies at such times as we may request.

 © ISO Properties, Inc., 2003

## 6. Representations

By accepting this policy, you agree:

**a.** The statements in the Declarations are accurate and complete;

**b.** Those statements are based upon representations you made to us; and

**c.** We have issued this policy in reliance upon your representations.

## 7. Separation Of Insureds

Except with respect to the Limits of Insurance, and any rights or duties specifically assigned in this Coverage Part to the first Named Insured, this insurance applies:

**a.** As if each Named Insured were the only Named Insured; and

**b.** Separately to each insured against whom claim is made or "suit" is brought.

## 8. Transfer Of Rights Of Recovery Against Others To Us

If the insured has rights to recover all or part of any payment we have made under this Coverage Part, those rights are transferred to us. The insured must do nothing after loss to impair them. At our request, the insured will bring "suit" or transfer those rights to us and help us enforce them.

## 9. When We Do Not Renew

If we decide not to renew this Coverage Part, we will mail or deliver to the first Named Insured shown in the Declarations written notice of the nonrenewal not less than 30 days before the expiration date.

If notice is mailed, proof of mailing will be sufficient proof of notice.

## SECTION V – DEFINITIONS

**1.** "Advertisement" means a notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters. For the purposes of this definition:

**a.** Notices that are published include material placed on the Internet or on similar electronic means of communication; and

**b.** Regarding web-sites, only that part of a web-site that is about your goods, products or services for the purposes of attracting customers or supporters is considered an advertisement.

**2.** "Auto" means:

**a.** A land motor vehicle, trailer or semitrailer designed for travel on public roads, including any attached machinery or equipment; or

**b.** Any other land vehicle that is subject to a compulsory or financial responsibility law or other motor vehicle insurance law in the state where it is licensed or principally garaged.

However, "auto" does not include "mobile equipment".

**3.** "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

**4.** "Coverage territory" means:

**a.** The United States of America (including its territories and possessions), Puerto Rico and Canada;

**b.** International waters or airspace, but only if the injury or damage occurs in the course of travel or transportation between any places included in **a.** above; or

**c.** All other parts of the world if the injury or damage arises out of:

**(1)** Goods or products made or sold by you in the territory described in **a.** above;

**(2)** The activities of a person whose home is in the territory described in **a.** above, but is away for a short time on your business; or

**(3)** "Personal and advertising injury" offenses that take place through the Internet or similar electronic means of communication

provided the insured's responsibility to pay damages is determined in a "suit" on the merits, in the territory described in **a.** above or in a settlement we agree to.

**5.** "Employee" includes a "leased worker". "Employee" does not include a "temporary worker".

**6.** "Executive officer" means a person holding any of the officer positions created by your charter, constitution, by-laws or any other similar governing document.

**7.** "Hostile fire" means one which becomes uncontrollable or breaks out from where it was intended to be.

**8.** "Impaired property" means tangible property, other than "your product" or "your work", that cannot be used or is less useful because:

**a.** It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

**b.** You have failed to fulfill the terms of a contract or agreement;

if such property can be restored to use by:

**a.** The repair, replacement, adjustment or removal of "your product" or "your work"; or

© ISO Properties, Inc., 2003

CG 00 01 12 04

**b.** Your fulfilling the terms of the contract or agreement.

**9.** "Insured contract" means:

**a.** A contract for a lease of premises. However, that portion of the contract for a lease of premises that indemnifies any person or organization for damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner is not an "insured contract";

**b.** A sidetrack agreement;

**c.** Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

**d.** An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

**e.** An elevator maintenance agreement;

**f.** That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

Paragraph **f.** does not include that part of any contract or agreement:

**(1)** That indemnifies a railroad for "bodily injury" or "property damage" arising out of construction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, road-beds, tunnel, underpass or crossing;

**(2)** That indemnifies an architect, engineer or surveyor for injury or damage arising out of:

**(a)** Preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; or

**(b)** Giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage; or

**(3)** Under which the insured, if an architect, engineer or surveyor, assumes liability for an injury or damage arising out of the insured's rendering or failure to render professional services, including those listed in **(2)** above and supervisory, inspection, architectural or engineering activities.

**10.** "Leased worker" means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business. "Leased worker" does not include a "temporary worker".

**11.** "Loading or unloading" means the handling of property:

**a.** After it is moved from the place where it is accepted for movement into or onto an aircraft, watercraft or "auto";

**b.** While it is in or on an aircraft, watercraft or "auto"; or

**c.** While it is being moved from an aircraft, watercraft or "auto" to the place where it is finally delivered;

but "loading or unloading" does not include the movement of property by means of a mechanical device, other than a hand truck, that is not attached to the aircraft, watercraft or "auto".

**12.** "Mobile equipment" means any of the following types of land vehicles, including any attached machinery or equipment:

**a.** Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

**b.** Vehicles maintained for use solely on or next to premises you own or rent;

**c.** Vehicles that travel on crawler treads;

**d.** Vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:

**(1)** Power cranes, shovels, loaders, diggers or drills; or

**(2)** Road construction or resurfacing equipment such as graders, scrapers or rollers;

**e.** Vehicles not described in **a., b., c.** or **d.** above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

**(1)** Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; or

**(2)** Cherry pickers and similar devices used to raise or lower workers;

**f.** Vehicles not described in **a., b., c.** or **d.** above maintained primarily for purposes other than the transportation of persons or cargo.

However, self-propelled vehicles with the following types of permanently attached equipment are not "mobile equipment" but will be considered "autos":

**(1)** Equipment designed primarily for:

   **(a)** Snow removal;

   **(b)** Road maintenance, but not construction or resurfacing; or

   **(c)** Street cleaning;

**(2)** Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

**(3)** Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment.

However, "mobile equipment" does not include any land vehicles that are subject to a compulsory or financial responsibility law or other motor vehicle insurance law in the state where it is licensed or principally garaged. Land vehicles subject to a compulsory or financial responsibility law or other motor vehicle insurance law are considered "autos".

**13.** "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

**14.** "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:

  **a.** False arrest, detention or imprisonment;

  **b.** Malicious prosecution;

  **c.** The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

  **d.** Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

  **e.** Oral or written publication, in any manner, of material that violates a person's right of privacy;

  **f.** The use of another's advertising idea in your "advertisement"; or

  **g.** Infringing upon another's copyright, trade dress or slogan in your "advertisement".

**15.** "Pollutants" mean any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

**16.** "Products-completed operations hazard":

  **a.** Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

   **(1)** Products that are still in your physical possession; or

   **(2)** Work that has not yet been completed or abandoned. However, "your work" will be deemed completed at the earliest of the following times:

    **(a)** When all of the work called for in your contract has been completed.

    **(b)** When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.

    **(c)** When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

   Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

  **b.** Does not include "bodily injury" or "property damage" arising out of:

   **(1)** The transportation of property, unless the injury or damage arises out of a condition in or on a vehicle not owned or operated by you, and that condition was created by the "loading or unloading" of that vehicle by any insured;

   **(2)** The existence of tools, uninstalled equipment or abandoned or unused materials; or

   **(3)** Products or operations for which the classification, listed in the Declarations or in a policy schedule, states that products-completed operations are subject to the General Aggregate Limit.

**17.** "Property damage" means:

  **a.** Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

For the purposes of this insurance, electronic data is not tangible property.

As used in this definition, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMS, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

18. "Suit" means a civil proceeding in which damages because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies are alleged. "Suit" includes:

a. An arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with our consent; or

b. Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent.

19. "Temporary worker" means a person who is furnished to you to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions.

20. "Volunteer worker" means a person who is not your "employee", and who donates his or her work and acts at the direction of and within the scope of duties determined by you, and is not paid a fee, salary or other compensation by you or anyone else for their work performed for you.

21. "Your product":

a. Means:

(1) Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

(a) You;

(b) Others trading under your name; or

(c) A person or organization whose business or assets you have acquired; and

(2) Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

b. Includes

(1) Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and

(2) The providing of or failure to provide warnings or instructions.

c. Does not include vending machines or other property rented to or located for the use of others but not sold.

22. "Your work":

a. Means:

(1) Work or operations performed by you or on your behalf; and

(2) Materials, parts or equipment furnished in connection with such work or operations.

b. Includes

(1) Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work", and

(2) The providing of or failure to provide warnings or instructions.

COMMERCIAL GENERAL LIABILITY
CG 00 67 03 05

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EXCLUSION – VIOLATION OF STATUTES THAT GOVERN E-MAILS, FAX, PHONE CALLS OR OTHER METHODS OF SENDING MATERIAL OR INFORMATION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** The following exclusion is added to Paragraph **2., Exclusions** of **Section I – Coverage A – Bodily Injury And Property Damage Liability:**

**2. Exclusions**

This insurance does not apply to:

**DISTRIBUTION OF MATERIAL IN VIOLATION OF STATUTES**

"Bodily injury" or "property damage" arising directly or indirectly out of any action or omission that violates or is alleged to violate:

**a.** The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law; or

**b.** The CAN-SPAM Act of 2003, including any amendment of or addition to such law; or

**c.** Any statute, ordinance or regulation, other than the TCPA or CAN-SPAM Act of 2003, that prohibits or limits the sending, transmitting, communicating or distribution of material or information.

**B.** The following exclusion is added to Paragraph **2., Exclusions** of **Section I – Coverage B – Personal And Advertising Injury Liability:**

**2. Exclusions**

This insurance does not apply to:

**DISTRIBUTION OF MATERIAL IN VIOLATION OF STATUTES**

"Personal and advertising injury" arising directly or indirectly out of any action or omission that violates or is alleged to violate:

**a.** The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law; or

**b.** The CAN-SPAM Act of 2003, including any amendment of or addition to such law; or

**c.** Any statute, ordinance or regulation, other than the TCPA or CAN-SPAM Act of 2003, that prohibits or limits the sending, transmitting, communicating or distribution of material or information.

COMMERCIAL GENERAL LIABILITY
CG 21 47 07 98

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EMPLOYMENT-RELATED PRACTICES EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** The following exclusion is added to Paragraph **2., Exclusions** of **Section I – Coverage A – Bodily Injury And Property Damage Liability:**

This insurance does not apply to:

"Bodily injury" to:

   **(1)** A person arising out of any:

   **(a)** Refusal to employ that person;

   **(b)** Termination of that person's employment; or

   **(c)** Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation or discrimination directed at that person; or

   **(2)** The spouse, child, parent, brother or sister of that person as a consequence of "bodily injury" to that person at whom any of the employment-related practices described in Paragraphs **(a)**, **(b)**, or **(c)** above is directed.

This exclusion applies:

   **(1)** Whether the insured may be liable as an employer or in any other capacity; and

   **(2)** To any obligation to share damages with or repay someone else who must pay damages because of the injury.

**B.** The following exclusion is added to Paragraph **2., Exclusions** of **Section I – Coverage B – Personal And Advertising Injury Liability:**

This insurance does not apply to:

"Personal and advertising injury" to:

   **(1)** A person arising out of any:

   **(a)** Refusal to employ that person;

   **(b)** Termination of that person's employment; or

   **(c)** Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation or discrimination directed at that person; or

   **(2)** The spouse, child, parent, brother or sister of that person as a consequence of "personal and advertising injury" to that person at whom any of the employment-related practices described in Paragraphs **(a)**, **(b)**, or **(c)** above is directed.

This exclusion applies:

   **(1)** Whether the insured may be liable as an employer or in any other capacity; and

   **(2)** To any obligation to share damages with or repay someone else who must pay damages because of the injury.

 Copyright, Insurance Services Office, Inc., 1997

COMMERCIAL GENERAL LIABILITY
CG 21 73 01 08

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EXCLUSION OF CERTIFIED ACTS OF TERRORISM

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART
UNDERGROUND STORAGE TANK POLICY

**A.** The following exclusion is added:

This insurance does not apply to:

**TERRORISM**

"Any injury or damage" arising, directly or indirectly, out of a "certified act of terrorism".

**B.** The following definitions are added:

**1.** For the purposes of this endorsement, "any injury or damage" means any injury or damage covered under any Coverage Part to which this endorsement is applicable, and includes but is not limited to "bodily injury", "property damage", "personal and advertising injury", "injury" or "environmental damage" as may be defined in any applicable Coverage Part.

**2.** "Certified act of terrorism" means an act that is certified by the Secretary of the Treasury, in concurrence with the Secretary of State and the Attorney General of the United States, to be an act of terrorism pursuant to the federal Terrorism Risk Insurance Act. The criteria contained in the Terrorism Risk Insurance Act for a "certified act of terrorism" include the following:

**a.** The act resulted in insured losses in excess of $5 million in the aggregate, attributable to all types of insurance subject to the Terrorism Risk Insurance Act; and

**b.** The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

CG 21 73 01 08 © ISO Properties, Inc., 2007 Page 1 of 1

COMMERCIAL GENERAL LIABILITY
CG 21 96 03 05

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# SILICA OR SILICA-RELATED DUST EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** The following exclusion is added to Paragraph **2., Exclusions** of **Section I – Coverage A – Bodily Injury And Property Damage Liability:**

**2. Exclusions**

This insurance does not apply to:

**Silica Or Silica-Related Dust**

**a.** "Bodily injury" arising, in whole or in part, out of the actual, alleged, threatened or suspected inhalation of, or ingestion of, "silica" or "silica-related dust".

**b.** "Property damage" arising, in whole or in part, out of the actual, alleged, threatened or suspected contact with, exposure to, existence of, or presence of, "silica" or "silica-related dust".

**c.** Any loss, cost or expense arising, in whole or in part, out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to or assessing the effects of, "silica" or "silica-related dust", by any insured or by any other person or entity.

**B.** The following exclusion is added to Paragraph **2., Exclusions** of **Section I – Coverage B – Personal And Advertising Injury Liability:**

**2. Exclusions**

This insurance does not apply to:

**Silica Or Silica-Related Dust**

**a.** "Personal and advertising injury" arising, in whole or in part, out of the actual, alleged, threatened or suspected inhalation of, ingestion of, contact with, exposure to, existence of, or presence of, "silica" or "silica-related dust".

**b.** Any loss, cost or expense arising, in whole or in part, out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to or assessing the effects of, "silica" or "silica-related dust", by any insured or by any other person or entity.

**C.** The following definitions are added to the **Definitions** Section:

**1.** "Silica" means silicon dioxide (occurring in crystalline, amorphous and impure forms), silica particles, silica dust or silica compounds.

**2.** "Silica-related dust" means a mixture or combination of silica and other dust or particles.

CG 21 96 03 05                    © ISO Properties, Inc., 2004                    Page 1 of 1    ☐

POLICY NUMBER: **NN433648**

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

CG 22 45 07 98

# EXCLUSION - SPECIFIED THERAPEUTIC OR COSMETIC SERVICES

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

### SCHEDULE

**Description of Operations:**

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

The following exclusion is added to Paragraph **2., Exclusions** of **Section I - Coverage A - Bodily Injury And Property Damage Liability** and Paragraph **2., Exclusions** of **Section I - Coverage B - Personal And Advertising Injury Liability:**
With respect to any operation shown in the Schedule, this insurance does not apply to "bodily injury," "property damage" or "personal and advertising injury" arising out of the rendering of or failure to render any service, treatment, advice or instruction for the purpose of appearance or skin enhancement, hair removal or replacement, or personal grooming or therapy.

CL963 (07/98)
CG 22 45 07 98

"Includes copyrighted material of Insurance Services Office, Inc. with its permission."
Copyright, Insurance Services Office, Inc., 1997

POLICY NUMBER: **NN433648**

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

CG 24 07 01 96

## PRODUCTS/COMPLETED OPERATIONS HAZARD REDEFINED

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

### SCHEDULE

**Description of Premises and Operations:**

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

With respect to "bodily injury" or "property damage" arising out of "your products" manufactured, sold, handled or distributed:

1. On, from or in connection with the use of any premises described in the Schedule, or

2. In connection with the conduct of any operation described in the Schedule, when conducted by you or on your behalf,

Paragraph **a.** of the definition of "Products-completed operations hazard" in the DEFINTIONS Section is replaced by the following:

"Products-completed operations hazard":

**a.** Includes all "bodily injury" and "property damage" that arises out of "your products" if the "bodily injury" or "property damage" occurs after you have relinquished possession of those products.

CL826 (01/96)
CG 24 07 01 96

"Includes copyrighted material of Insurance Services Office, Inc., with its permission."
Copyright, Insurance Services Office, Inc., 1994

IL 00 21 09 08

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# NUCLEAR ENERGY LIABILITY EXCLUSION ENDORSEMENT
### (Broad Form)

This endorsement modifies insurance provided under the following:

    COMMERCIAL AUTOMOBILE COVERAGE PART
    COMMERCIAL GENERAL LIABILITY COVERAGE PART
    FARM COVERAGE PART
    LIQUOR LIABILITY COVERAGE PART
    MEDICAL PROFESSIONAL LIABILITY COVERAGE PART
    OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
    POLLUTION LIABILITY COVERAGE PART
    PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
    RAILROAD PROTECTIVE LIABILITY COVERAGE PART
    UNDERGROUND STORAGE TANK POLICY

**1.** The insurance does not apply:

  **A.** Under any Liability Coverage, to "bodily injury" or "property damage":

    **(1)** With respect to which an "insured" under the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters, Nuclear Insurance Association of Canada or any of their successors, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or

    **(2)** Resulting from the "hazardous properties" of "nuclear material" and with respect to which **(a)** any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or **(b)** the "insured" is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

  **B.** Under any Medical Payments coverage, to expenses incurred with respect to "bodily injury" resulting from the "hazardous properties" of "nuclear material" and arising out of the operation of a "nuclear facility" by any person or organization.

  **C.** Under any Liability Coverage, to "bodily injury" or "property damage" resulting from "hazardous properties" of "nuclear material", if:

    **(1)** The "nuclear material" **(a)** is at any "nuclear facility" owned by, or operated by or on behalf of, an "insured" or **(b)** has been discharged or dispersed therefrom;

    **(2)** The "nuclear material" is contained in "spent fuel" or "waste" at any time possessed, handled, used, processed, stored, transported or disposed of, by or on behalf of an "insured"; or

    **(3)** The "bodily injury" or "property damage" arises out of the furnishing by an "insured" of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any "nuclear facility", but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion **(3)** applies only to "property damage" to such "nuclear facility" and any property thereat.

**2.** As used in this endorsement:

  "Hazardous properties" includes radioactive, toxic or explosive properties.

  "Nuclear material" means "source material", "special nuclear material" or "by-product material".

"Source material", "special nuclear material", and "by-product material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof.

"Spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a "nuclear reactor".

"Waste" means any waste material **(a)** containing "by-product material" other than the tailings or wastes produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its "source material" content, and **(b)** resulting from the operation by any person or organization of any "nuclear facility" included under the first two paragraphs of the definition of "nuclear facility".

"Nuclear facility" means:

    **(a)** Any "nuclear reactor";

    **(b)** Any equipment or device designed or used for **(1)** separating the isotopes of uranium or plutonium, **(2)** processing or utilizing "spent fuel", or **(3)** handling, processing or packaging "waste";

    **(c)** Any equipment or device used for the processing, fabricating or alloying of "special nuclear material" if at any time the total amount of such material in the custody of the "insured" at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235;

    **(d)** Any structure, basin, excavation, premises or place prepared or used for the storage or disposal of "waste";

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations.

"Nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material.

"Property damage" includes all forms of radioactive contamination of property.

© ISO Properties, Inc., 2007

COMMERCIAL GENERAL LIABILITY

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## EXCLUSION - AIRCRAFT, AUTO OR WATERCRAFT

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

Exclusion **g. Aircraft, Auto Or Watercraft** under Paragraph **2., Exclusions** of **Section I - Coverage A - Bodily Injury and Property Damage Liability** is **replaced** by the following:

**2. Exclusions**

This insurance does not apply to:

**g. Aircraft, Auto Or Watercraft**

"Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft. Use includes operation and "loading or unloading".

This exclusion applies even if the claims allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others, if the "occurrence" which caused the "bodily injury" or "property damage" involved the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft.

This exclusion does not apply to:

**(1)** A watercraft while ashore on premises you own or rent; or

**(2)** "Bodily injury" or "property damage" arising out of:

**(a)** The operation of machinery or equipment that is attached to, or part of, a land vehicle that would qualify under the definition of "mobile equipment" if it were not subject to a compulsory or financial responsibility law or other motor vehicle insurance law in the state where it is licensed or principally garaged; or

**(b)** The operation of any of the machinery or equipment listed in Paragraph **f.(2)** or **f.(3)**, of the definition of "mobile equipment" as follows:

**(i)** Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

**(ii)** Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment.

All other terms and conditions of this policy remain unchanged.

L204 (06/06)     Includes copyrighted material of Insurance Services Office, Inc., with its permission

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# EXCLUSION - ALL ASSAULT OR BATTERY

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** The following exclusion **is** added to **2. Exclusions** of **Section I - Coverage A - Bodily Injury And Property Damage Liability, Coverage B - Personal And Advertising Injury Liability,** and **Coverage C - Medical Payments:**

Regardless of culpability or intent of any person, this insurance does not apply to "bodily injury", "property damage", "personal and advertising injury" or medical payments arising out of any:

1. Actual or alleged assault or battery;
2. Physical altercation; or
3. Any act or omission in connection with the prevention or suppression of such acts, including the alleged failure to provide adequate security.

This exclusion applies regardless of whether such actual or alleged damages are caused by any:

1. Insured;
2. "Employee";
3. Patron; or
4. Any other person; and

whether or not such damages occurred at any premises owned or occupied by any insured.

This exclusion applies to:

1. All causes of action arising out of any assault or battery, or out of a physical altercation including, but not limited to, allegations of negligent hiring, placement, training, or supervision, or to any act, error, or omission relating to such an assault or battery, or physical altercation.
2. Any claims or "suits" brought by any other person, firm or organization asserting rights derived from, contingent upon, or arising out of an assault or battery, or a physical altercation; and specifically excludes from coverage claims or "suits" for:
   a. Emotional distress for loss of society, services, consortium or income; or
   b. Reimbursement for expenses including, but not limited to, medical expenses, hospital expenses, or wages, paid or incurred, by such other person, firm or organization; or
3. Any obligation to share damages with or repay someone who must pay damages because of the injury.

**B.** We will have no duty to defend or indemnify any insured in any action or proceeding alleging damages arising out of any assault or battery, or physical altercation.

All other terms and conditions of this policy remain unchanged.

L210 (02/08)          Includes copyrighted material of Insurance Services Office, Inc., with its permission.

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## AMENDMENT OF DEFINITIONS - INSURED CONTRACT
### (Limited Form)

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

Definition **9.** "insured contract" of the **Definitions** section is **replaced** by the following:

**9.** "Insured contract" means any written:

- **a.** Contract for a lease of premises. However, that portion of the contract for a lease of premises that indemnifies any person or organization for "property damage" to premises while rented or loaned to you, or temporarily occupied by you with permission of the owner, is not an "insured contract";

- **b.** Sidetrack agreement;

- **c.** Easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

- **d.** Obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

- **e.** Elevator maintenance agreement; or

- **f.** Part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization, provided the "bodily injury" or "property damage" is caused, in whole or in part, by you or those acting on your behalf. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

An "insured contract" does not include that part of any contract or agreement:

- **a.** That indemnifies any person or organization for "bodily injury" or "property damage" arising out of construction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, road-beds, tunnel, underpass or crossing;

- **b.** That indemnifies an architect, engineer or surveyor for injury or damage arising out of:

  - **(1)** Preparing, approving or failing to prepare or approve maps, shop drawings, opinions, reports, surveys, field orders, change orders, designs, drawings, or specifications; or

  - **(2)** Giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage;

- **c.** Under which the insured, if an architect, engineer or surveyor, assumes liability for an injury or damage arising out of the insured's rendering or failure to render professional services, including those listed in **b.(1)** or **b.(2)** above and supervisory, inspection, architectural or engineering activities; or

- **d.** That indemnifies any person or organization for "bodily injury" or "property damage" arising from the ownership, maintenance, or use of any aircraft.

All other terms and conditions of this policy remain unchanged.

L216 (07/09)          Includes copyrighted material of Insurance Services Office, Inc., with its permission

COMMERCIAL GENERAL LIABILITY

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

## EXCLUSION - PUNITIVE OR EXEMPLARY DAMAGES

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

The following exclusion is **added** to **2. Exclusions** of **Section I:**

This insurance does not apply to punitive or exemplary damages.

All other terms and conditions of this policy remain unchanged.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

Case 2:20-cv-00288-FBS Document 27-1 Filed 06/05/20 Page 113 of 133

COMMERCIAL GENERAL LIABILITY

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# EXCLUSION - TOTAL POLLUTION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** Exclusion **f. Pollution** of **2. Exclusions** of **Section I - Coverage A - Bodily Injury And Property Damage Liability** is **replaced** by the following:

This insurance does not apply to:

**f.   Pollution**

   **(1)** "Bodily injury" or "property damage" which would not have occurred in whole or in part but for the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time.

   **(2)** Any loss, cost or expense arising out of any:

   **(a)** Request, demand, order, or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

   **(b)** Claim or "suit" by or on behalf of any authority, governmental or otherwise, for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants"; or

   **(c)** Requirements by Environmental Protection Agency (EPA) 40 CFR Parts 280 and 281 for underground storage tanks, Comprehensive Environmental Response Compensation and Liability Act (CERCLA) or any similar State or Federal environmental act(s).

**B.** The definition of "Pollutants" in the **Definitions** section is **replaced** by the following:

"Pollutants" mean any solid, liquid, gaseous or thermal irritant or contaminant including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste.  Waste includes, but is not limited to, materials to be recycled, reconditioned or reclaimed.

All other terms and conditions of this policy remain unchanged.

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# EXCLUSION - MICROORGANISMS, BIOLOGICAL ORGANISMS, BIOAEROSOLS OR ORGANIC CONTAMINANTS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

The following exclusions are **added** to **2. Exclusions** of **Section I - Coverage A - Bodily Injury And Property Damage Liability**, **Coverage B - Personal And Advertising Injury Liability** and **Coverage C - Medical Payments**:

This insurance does not apply to:

**1.** "Bodily injury", "property damage", "personal and advertising injury", or medical payments arising out of, related to, caused by or in any way connected with the exposure to, presence of, formation of, existence of or actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of any microorganisms, biological organisms, bioaerosols or organic contaminants including, but not limited to, mold, mildew, fungus, spores, yeast or other toxins, mycotoxins, allergens, infectious agents, wet or dry rot or rust, or any materials containing them at any time, regardless of the cause of growth, proliferation or secretion.

**2.** Any loss, cost or expense arising out of any:

   **a.** Request, demand, order, or requirement by or on behalf of any authority, governmental or otherwise, that any insured or others abate, test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, remediate or dispose of, or in any way respond to, or assess the effects of microorganisms, biological organisms, bioaerosols or organic contaminants including, but not limited to, mold, mildew, fungus, spores, yeast, or other toxins, mycotoxins, allergens, infectious agents, wet or dry rot or rust, or any materials containing them at any time, regardless of the cause of growth, proliferation or secretion; or

   **b.** Claim or "suit" by or on behalf of any authority, governmental or otherwise, for damages because of abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, remediating or disposing of, or in any way responding to, or assessing the effects of microorganisms, biological organisms, bioaerosols or organic contaminants including, but not limited to, mold, mildew, fungus, spores, yeast, or other toxins, mycotoxins, allergens, infectious agents, wet or dry rot or rust, or any materials containing them at any time, regardless of the cause of growth, proliferation or secretion.

We shall have no duty to investigate, defend, or indemnify any insured in any action or proceeding alleging damages arising out of direct or indirect contact with, any exposure to, or the ingestion, inhalation or absorption of any microorganisms, biological organisms, bioaerosols, or organic contaminants including, but not limited to, mold, mildew, fungus, spores, yeast or other toxins, mycotoxins, allergens, infectious agents, wet or dry rot or rust, or any materials containing them at any time, regardless of the cause of growth, proliferation or secretion.

This exclusion does not apply to any fungi, bacteria, microorganisms or biological organisms that are, are on, or are contained in, a good or product intended for bodily consumption.

All other terms and conditions of this policy remain unchanged.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

Case 2:20-cv-00289-PBTS Document 27-1 Filed 06/05/20 Page 30 of 53

COMMERCIAL GENERAL LIABILITY

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# EXCLUSION - CONTRACTORS AND SUBCONTRACTORS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

The following exclusion is **added** to **2. Exclusions** of **Section I - Coverage A - Bodily Injury And Property Damage Liability, Coverage B - Personal And Advertising Injury Liability** and **Coverage C - Medical Payments:**

This insurance does not apply to "bodily injury", "property damage", "personal and advertising injury" or medical payments arising out of work performed by any contractor or subcontractor whether hired by or on behalf of any insured, or any acts or omissions in connection with the general supervision of such work.

All other terms and conditions of this policy remain unchanged.

L282 (07/10)          Includes copyrighted material of Insurance Services Office, Inc., with its permission.

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## EXCLUSION - ALL CONSTRUCTION OPERATIONS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** The following exclusion is **added** to **2. Exclusions** of **Section I - Coverage A - Bodily Injury And Property Damage Liability, Coverage B - Personal And Advertising Injury Liability** and **Coverage C - Medical Payments:**

This insurance does not apply to:

1. "Bodily injury", "property damage", "personal and advertising injury" or medical payments arising out of any "construction operations" performed by you or on your behalf.

2. Costs and expenses to investigate or defend any claim, "suit" or payment of any fine or penalty for paragraph **A.1.** above.

**B.** This exclusion applies to:

1. "Bodily injury", "property damage", "personal and advertising Injury" and medical payments for which any insured may be obligated to pay damages by reason of the assumption of liability in any contract or agreement, regardless of whether such contract or agreement is an "insured contract"; or

2. Any obligation to share damages with or repay someone else who must pay damages.

**C.** The following definitions are **added** to the **Definitions** section:

1. "Construction" means the act of building by putting together materials and parts to create a structure including, but not limited to, building the foundations, framework, floors, walls, ceilings, trusses or roof, or debris removal.

2. "Construction operations" means, with respect to real property, surveying, site preparation, grading of land, excavation, debris removal, soil compaction, tree clearing, demolition, reconstruction, renovation, alteration, remodeling, repair, service, improvement and any other "pre-construction" and any other "construction" and any other "post-construction".

3. "Post-construction" means those activities that occur after the issuance of the notice of completion or certificate of occupancy, whichever comes first.

4. "Pre-construction" means those activities that must occur prior to the actual start of the "construction" process including, but not limited to, grading of land, inspection, land surveying, site preparation, soil compaction, tree clearing or installation of driveways, parking areas, roads, sidewalks, and utilities.

All other terms and conditions of this policy remain unchanged.

L293 (07/10)          Includes copyrighted material of Insurance Services Office, Inc., with its permission.

Case 2:20-cv-00289-PPTS Document 27-1 Filed 06/05/20 Page 117 of 133

**COMMERCIAL GENERAL LIABILITY**

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# CHANGES – CIVIL UNION OR DOMESTIC PARTNERSHIP

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

All references to spouse shall include an individual who is a party to a civil union or is in a domestic partnership recognized under state law, where applicable.

All other terms and conditions remain unchanged.

            Includes copyrighted material of Insurance Services Office, Inc., with its permission.

POLICY NUMBER: **NN433648**                                          **COMMERCIAL GENERAL LIABILITY**

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## AMENDMENT OF CONDITIONS - PREMIUM AUDIT

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
PROFESSIONAL LIABILITY COVERAGE PART

**A.** The Premium Audit Condition under **Section IV - Conditions** is **replaced** by the following:

**Premium Audit**

1. We will compute all premiums for this Coverage Part in accordance with our rules and rates. Premium shown in this Coverage Part as advance premium is a minimum and deposit premium.

   The rates for each classification shown in the Declarations are multiplied by the estimated premium bases of that classification for the term to determine the advance premium.

   We may conduct an audit of your books to determine the actual premium bases developed during the policy period. To calculate the actual premium developed during the policy period we will use one, or a combination, of the following premium bases: payroll, admissions, gross sales, total cost, area, each exposure unit, units or total operating expenditures.

2. If we determine, whether by audit of your books and records or otherwise, that you are conducting operations not scheduled on this policy, we may add the appropriate classifications and compute the rates and premiums in accordance with our rules and rates in effect on the inception date of this policy, unless coverage has been restricted to "designated operations".

3. **Premium Bases.**

   The premium bases are defined in accordance with our rules and the following additional definitions:

   **a.** **Payroll** (premium basis symbol **p**): Remuneration paid to "employees", "casual laborers", "temporary workers", day laborers, statutory workers, seasonal workers or "leased workers", including but not limited to:

   **(1)** Money or substitutes for money; commissions; bonuses; overtime; payments to statutory insurance or pension plans; profit sharing or incentive plans; pay for holidays, vacation or sickness; and fees paid to employment agencies for temporary personnel provided to you.

   **(2)** If your operations consist of a number of separate operations classified individually in the Declarations, the payroll will be allocated to each classification where you have maintained records for each separate operation. Any such operation for which separate records are **not** maintained by you will be assigned to the highest rated classification.

   **(3)** For premium computation purposes, the payroll of executive officers, individual insureds and co-partners is subject to a minimum annual payroll per person of:

   $$\boxed{\$ \ \ 5,200}$$

   (If no entry is made, the minimum payroll as established by our rating rules will apply.)

   The rates apply per $1,000 of Payroll.

   **b.** **Admissions** (premium basis symbol **m**): The total number of persons, other than your "employees", admitted to the insured event or to events conducted on the premises whether on paid admissions, tickets, complimentary tickets or passes.

   The rates apply per 1,000 Admissions.

c. **Gross Sales** (premium basis symbol **s**):  The gross amount charged by you, your concessionaires or by others trading under your name for:

    **(1)** All goods or products, sold or distributed;

    **(2)** Operations performed during the policy period; and

    **(3)** Rentals; or

    **(4)** Dues or fees.

    The rates apply per $1,000 of Gross Sales.

d. **"Total Cost"** (premium basis symbol **c**) means the total cost of all work let or sublet in connection with each specific project including:

    **(1)** The cost of all labor, materials and equipment furnished, used or delivered for use in the execution of the work including the cost of finished equipment installed whether or not furnished by the contractor, or subcontractor, or by you; and

    **(2)** All fees, bonuses or commissions made, paid or due.

    The rates apply per $1,000 of Total Cost.

e. **Area** (premium basis symbol **a**):  The total number of square feet of floor space at the insured premises.

    The rates apply per 1,000 square feet of Area.

f. **Each** (premium basis symbol **t**):  This basis of premium involves units of exposure, and the quantity comprising each unit of exposure is indicated in the Declarations, such as "per person".

    The rates apply per each unit of exposure.

g. **Units** (premium basis symbol **u**):  A single room or group of rooms intended for occupancy as separate living quarters by a family, by a group of unrelated persons living together, or by a person living alone.

    The rates apply per Unit.

h. **Total Operating Expenditures** (premium basis symbol **o**):  Total expenditures (including grants, entitlements and shared revenue) without regard to source of revenue during the policy period including accounts payable.

    The rates apply per $1,000 of Total Operating Expenditures.

4. The first Named Insured must keep records of the information we need for premium computation and send us copies at such times as we may request.  Failure to supply such records upon request will be deemed a breach of condition and subject this policy, and may subject any in force policy of yours, to cancellation for breach of conditions.

5. We reserve the right to examine and audit your books and records as they relate to this policy at any time during the policy period and up to three years afterward.

6. Premium shown in this Coverage Part as advance premium is a minimum and deposit premium.  Advance premium includes any payments identified as premium paid prior to policy expiration.  At the close of each audit period, we will compute the earned premium for that period.  Audit premium is due and payable upon notice to the first Named Insured.  Failure to pay the audit premium due will be deemed a breach of contract and subject this policy, and may subject any in force policy of yours, to cancellation for non-payment of premium.

    a. If the actual earned premium generated as a result of an audit for the policy period is less than the advance premium, such advance premium is the minimum premium for the policy period indicated and is not subject to adjustment.

    b. If the actual earned premium generated as a result of an audit for the policy period is greater than the advance premium, then a final premium adjustment endorsement will be issued.  The additional premium amount shown on the final premium adjustment endorsement is due and payable to us upon notice to the first Named Insured.

7. **Estimated Annual Audit Procedure:**

If, after three documented attempts, we are unable to examine your books and records to obtain the information necessary to complete the audit, we may implement our estimated audit procedure as outlined below:

    a. An Estimated Audit Endorsement will be issued reflecting a fifty percent (50%) increase in your reported premium basis.  This increase is an estimate based on information we have on file, or your business operations.

    **b.** The Estimated Audit Endorsement will include a copy of the Unproductive Audit Report that outlines the documented attempts made to collect the required information.

    **c.** If you agree with the Estimated Audit Endorsement, you must remit payment for the full amount of the estimated audit; or

    **d.** If you dispute the Estimated Audit Endorsement, you must provide the requested audit information so we can calculate the proper earned premium developed for the policy period.

**8. Cancellation Audit Procedure.**

    **a.** If the policy is canceled prior to the expiration date the first Named Insured retains the unearned premium; we will retain the earned premium developed by:

        **(1)** Multiplying the advance premium by the applicable pro-rata factor, short-rate factor, or minimum earned premium percentage; or

        **(2)** An audit of your books and records for the period the policy was in force,

        whichever is greater.

    **b.** If the actual earned premium generated as a result of an audit is greater than the advance premium paid at issuance, then a final premium adjustment endorsement will be issued. The additional premium amount shown on the final premium adjustment endorsement is due and payable to us upon notice to the first Named Insured.

**B.** The following definitions are **added** to the **Definitions** section:

    **1.** "Casual laborers" are persons who provide services that are performed in the course of the employing unit's trade or business regardless of the amount of remuneration received or the length of time the services are provided.

    **2.** "Designated operations" means only those operations performed by any insured that are described on the Common Policy Declarations, the General Liability Coverage Part Declarations, or the endorsements or supplements of this insurance.

All other terms and conditions of this policy remain unchanged.

POLICY NUMBER: **NN433648**

**COMMERCIAL GENERAL LIABILITY**

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

## DEDUCTIBLE LIABILITY INSURANCE
## (Including Allocated Loss Adjustment Expense)

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

### SCHEDULE

| Coverage | Amount And Basis Of Deductible | | | | |
|---|---|---|---|---|---|
| | PER CLAIM | | PER OCCURRENCE | | PER ITEM |
| Bodily Injury Liability | $ | - OR - | $ | | Not Applicable |
| - OR - | | | | | |
| Property Damage Liability | $ | - OR - | $ | - OR - $ | |
| - OR - | | | | | |
| Bodily Injury Liability and Property Damage Liability Combined | $  1,000 | - OR - | $ | | Not Applicable |

**A.** Our obligation under the Bodily Injury Liability and Property Damage Liability Coverages to pay damages on your behalf applies only to the amount of damages in excess of any deductible amounts stated in the Schedule as applicable to such coverages.

**B.** You may select a deductible amount on either a per claim, a per "occurrence" or per item basis. Your selected deductible applies to the coverage option and to the basis of the deductible indicated by the placement of the deductible amount in the Schedule. The deductible amount stated in the Schedule applies as follows:

   **1.** **PER CLAIM BASIS.** If the deductible amount indicated in the Schedule is on a per claim basis, that deductible applies as follows:

      **a.** Under Bodily Injury Liability Coverage, to all damages sustained by any one person because of "bodily injury";

      **b.** Under Property Damage Liability Coverage, to all damages sustained by any one person because of "property damage"; or

      **c.** Under Bodily Injury and Property Damage Liability Coverage Combined, to all damages sustained by any one person because of:

         **(1)** "Bodily injury";

         **(2)** "Property damage"; or

         **(3)** "Bodily injury" and "property damage" combined

   as the result of any one "occurrence".

   If damages are claimed for care, loss of services, loss of support or death resulting at any time from "bodily injury", a separate deductible amount will be applied to each person making a claim for such damages.

   With respect to "property damage", person includes an organization.

2. **PER OCCURRENCE BASIS.** If the deductible amount indicated in the Schedule is on a per "occurrence" basis, that deductible amount applies as follows:

    a.  Under Bodily Injury Liability Coverage, to all damages because of "bodily injury";

    b.  Under Property Damage Liability Coverage, to all damages because of "property damage"; or

    c.  Under Bodily Injury and Property Damage Liability Coverage Combined, to all damages because of:

        (1)  "Bodily injury";

        (2)  "Property damage"; or

        (3)  "Bodily injury" and "property damage" combined

    as the result of any one "occurrence", regardless of the number of persons or organizations who sustain damages because of that "occurrence".

3. **PER ITEM BASIS.** If the deductible amount indicated in the Schedule is on a per item basis, that deductible amount applies under Property Damage Liability Coverage, to each item damaged because of "property damage" sustained by one person or organization as the result of any one "occurrence".

C. The deductible amount stated in the Schedule applies to loss, legal expense, and our "Allocated Loss Adjustment Expense" incurred, whether or not payment is made to the claimant, compromise settlement is reached or the claim is denied.

D. The terms of this insurance, including those with respect to:

    1.  Our right and duty to defend the insured against any "suits" seeking those damages; and

    2.  Your duties in the event of an "occurrence", claim or "suit"

apply irrespective of the application of the deductible amount.

E. We may, at our sole election and option, either:

    1.  Pay any part or all of the deductible amount to effect settlement of any claim or "suit" and upon notification of the action taken, you will promptly reimburse us for such part of the deductible amount as has been paid by us; or

    2.  Upon our receipt of notice of any claim or at any time thereafter, request you to pay and deposit with us all or any part of the deductible amount, to be held and applied according to the terms of this policy.

F. The following is **added** to the **Definitions** section:

"Allocated Loss Adjustment Expense" will include all costs and expenses incurred by us in investigating and adjusting any loss, with the exception of salary and overhead.

All other terms and conditions of this policy remain unchanged.

## NAUTILUS INSURANCE COMPANY

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# EXCLUSION - TOTAL LIQUOR LIABILITY

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

Exclusion c. under Paragraph 2., Exclusions of COVERAGE A. Bodily Injury and Property Damage (Section I - Coverages) is **replaced** by the following:

c.  Liquor Liability

"Bodily injury" or "property damage" for which any insured or his indemnitee may be held liable by reason of:

(1)  Causing or contributing to the intoxication of any person;

(2)  The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

(3)  Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

All other Terms and Conditions of this Policy remain unchanged.

S009 (02/95)

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# EXCLUSION - ASBESTOS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

A. The following is **added** to Paragraph **2. Exclusions** of Section I - Coverage A - **Bodily Injury And Property Damage Liability, Coverage B - Personal And Advertising Injury Liability** and **Coverage C - Medical Payments**:

This insurance does not apply to:

1. "Bodily injury", "property damage", "personal and advertising injury", medical payments or "reduction in value" related to the actual, alleged, or threatened presence of, or exposure to "asbestos" in any form, or to harmful substances emanating from "asbestos". This includes ingestion, inhalation, absorption, contact with, existence or presence of, or exposure to "asbestos". Such injury from or exposure to "asbestos" also includes, but is not limited to:

   a. The existence, installation, storage, handling or transportation of "asbestos";

   b. The removal, abatement or containment of "asbestos" from any structures, materials, goods, products, or manufacturing process;

   c. The disposal of "asbestos";

   d. Any structures, manufacturing processes, or products containing "asbestos";

   e. Any obligation to share damages with or repay someone else who must pay damages because of such injury or damage; or

   f. Any supervision, instructions, recommendations, warnings or advice given or which should have been given in connection with the above.

2. Any loss, cost or expense, including, but not limited to payment for investigation or defense, fines, penalties and other costs or expenses, arising out of any:

   a. Claim, "suit", demand, judgment, obligation, order, request, settlement, or requirement by or on behalf of any authority, governmental or otherwise, that any insured or any other person or entity test for, monitor, clean up, remove, contain, mitigate, treat, neutralize, remediate, or dispose of, or in any way respond to, or assess the actual or alleged effects of "asbestos"; or

   b. Claim, "suit", demand, judgment, obligation, request, or settlement due to any actual, alleged, or threatened injury or damage from "asbestos" or testing for, monitoring, cleaning up, removing, containing, mitigating, treating, neutralizing, remediating, or disposing of, or in any way responding to or assessing the actual or alleged effects of, "asbestos" by any insured or by any other person or entity; or

   c. Claim, "suit", demand, judgment, obligation, or request to investigate which would not have occurred, in whole or in part, but for the actual or alleged presence of or exposure to "asbestos".

This exclusion applies regardless of who manufactured, produced, installed, used, owned, sold, distributed, handled, stored or controlled the "asbestos".

B. The following definitions are added to the **Definitions** section:

1. "Asbestos" means any type or form of asbestos, asbestos fibers, asbestos products, or asbestos materials, including any products, goods, or materials containing asbestos or asbestos fibers, products or materials and any gases, vapors, scents or by-products produced or released by asbestos.

2. "Reduction in value" means any claim, demand or "suit" that alleges diminution, impairment or devaluation of tangible property.

All other terms and conditions of this policy remain unchanged.

S261 (07/09)                Includes copyrighted material of Insurance Services Office, Inc., with its permission.

## SERVICE OF SUIT - PENNSYLVANIA

It is agreed that in the event of the failure of the Insurer(s) or Underwriter(s) herein to pay any amount claimed to be due hereunder, the Insurer(s) or Underwriter(s) herein, at the request of the Insured (or reinsured), will submit to the jurisdiction of any court of competent jurisdiction within the United States of America and will comply with all requirements necessary to give such court jurisdiction, and all matters arising hereunder shall be determined in accordance with the law and practice of such court.  It is further agreed that in any such action instituted against any one of them upon this contract, Insurer(s) or Underwriter(s) will abide by the final decision of such court or of any appellate court in the event of an appeal.

Service of process shall be made pursuant to the procedures provided by 42 Pa.C.S. Ch. 53 Subch. B (relating to interstate and international procedure).  When making service of process by mail, such process shall be mailed to Michael Kilgas, or his nominee, at Nautilus Insurance Company, 7233 East Butherus Drive, Scottsdale, Arizona 85260. The above-named is authorized and directed to accept service of process on behalf of the Insured(s) or Underwriter(s) in any such action or upon the request of the insured (or reinsured) to give a written undertaking to the insured (or reinsured) that it or they will enter a general appearance for the Insurer(s) or Underwriter(s) in the event such an action shall be instituted.

Further, pursuant to any statute of any state, territory or district of the United States of America, which makes provisions therefor, the Insured(s) or Underwriter(s) hereby designates the Superintendent, Commissioner or Director of Insurance or other officer specified for that purpose in the statute or his successor or successors in office, as the true and lawful attorney upon whom any lawful process may be served in any action, suit or proceeding instituted by or on behalf of the Insured (or reinsured) or any beneficiary hereunder arising out of his contract of insurance (or reinsurance), and hereby designates the above-named as the person on whom such process or a true copy thereof shall be served.

E906PA (06/07)

IL 02 46 07 02

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# PENNSYLVANIA CHANGES – CANCELLATION AND NONRENEWAL

This endorsement modifies insurance provided under the following:

BOILER AND MACHINERY COVERAGE PART
CAPITAL ASSETS PROGRAM (OUTPUT POLICY) COVERAGE PART
COMMERCIAL AUTOMOBILE COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
COMMERCIAL INLAND MARINE COVERAGE PART
COMMERCIAL LIABILITY UMBRELLA COVERAGE PART
COMMERCIAL PROPERTY COVERAGE PART
CRIME AND FIDELITY COVERAGE PART
EMPLOYMENT-RELATED PRACTICES LIABILITY COVERAGE PART
FARM COVERAGE PART
FARM UMBRELLA LIABILITY POLICY
LIQUOR LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

**A.** The **Cancellation** Common Policy Condition is replaced by the following:

**CANCELLATION**

1. The first Named Insured shown in the Declarations may cancel this policy by writing or giving notice of cancellation.

2. **Cancellation Of Policies In Effect For Less Than 60 Days**

   We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least 30 days before the effective date of cancellation.

3. **Cancellation Of Policies In Effect For 60 Days Or More**

   If this policy has been in effect for 60 days or more or if this policy is a renewal of a policy we issued, we may cancel this policy only for one or more of the following reasons:

   **a.** You have made a material misrepresentation which affects the insurability of the risk. Notice of cancellation will be mailed or delivered at least 15 days before the effective date of cancellation.

   **b.** You have failed to pay a premium when due, whether the premium is payable directly to us or our agents or indirectly under a premium finance plan or extension of credit. Notice of cancellation will be mailed at least 15 days before the effective date of cancellation.

   **c.** A condition, factor or loss experience material to insurability has changed substantially or a substantial condition, factor or loss experience material to insurability has become known during the policy period. Notice of cancellation will be mailed or delivered at least 60 days before the effective date of cancellation.

   **d.** Loss of reinsurance or a substantial decrease in reinsurance has occurred, which loss or decrease, at the time of cancellation, shall be certified to the Insurance Commissioner as directly affecting in-force policies. Notice of cancellation will be mailed or delivered at least 60 days before the effective date of cancellation.

   **e.** Material failure to comply with policy terms, conditions or contractual duties. Notice of cancellation will be mailed or delivered at least 60 days before the effective date of cancellation.

IL 02 46 07 02        © ISO Properties, Inc., 2001        Page 1 of 2    ☐

**f.** Other reasons that the Insurance Commissioner may approve. Notice of cancellation will be mailed or delivered at least 60 days before the effective date of cancellation.

This policy may also be cancelled from inception upon discovery that the policy was obtained through fraudulent statements, omissions or concealment of facts material to the acceptance of the risk or to the hazard assumed by us.

**4.** We will mail or deliver our notice to the first Named Insured's last mailing address known to us. Notice of cancellation will state the specific reasons for cancellation.

**5.** Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

**6.** If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata and will be returned within 10 business days after the effective date of cancellation. If the first Named Insured cancels, the refund may be less than pro rata and will be returned within 30 days after the effective date of cancellation. The cancellation will be effective even if we have not made or offered a refund.

**7.** If notice is mailed, it will be by registered or first class mail. Proof of mailing will be sufficient proof of notice.

**B.** The following are added and supersede any provisions to the contrary:

**1. Nonrenewal**

If we decide not to renew this policy, we will mail or deliver written notice of nonrenewal, stating the specific reasons for nonrenewal, to the first Named Insured at least 60 days before the expiration date of the policy.

**2. Increase Of Premium**

If we increase your renewal premium, we will mail or deliver to the first Named Insured written notice of our intent to increase the premium at least 30 days before the effective date of the premium increase.

Any notice of nonrenewal or renewal premium increase will be mailed or delivered to the first Named Insured's last known address. If notice is mailed, it will be by registered or first class mail. Proof of mailing will be sufficient proof of notice.

 © ISO Properties, Inc., 2001 **IL 02 46 07 02** ☐

IL 09 10 12 03

# PENNSYLVANIA NOTICE

An Insurance Company, its agents, employees, or service contractors acting on its behalf, may provide services to reduce the likelihood of injury, death or loss. These services may include any of the following or related services incident to the application for, issuance, renewal or continuation of, a policy of insurance:

1. Surveys;

2. Consultation or advice; or

3. Inspections.

The "Insurance Consultation Services Exemption Act" of Pennsylvania provides that the Insurance Company, its agents, employees or service contractors acting on its behalf, is not liable for damages from injury, death or loss occurring as a result of any act or omission by any person in the furnishing of or the failure to furnish these services.

The Act does not apply:

1. If the injury, death or loss occurred during the actual performance of the services and was caused by the negligence of the Insurance Company, its agents, employees or service contractors;

2. To consultation services required to be performed under a written service contract not related to a policy of insurance; or

3. If any acts or omissions of the Insurance Company, its agents, employees or service contractors are judicially determined to constitute a crime, actual malice, or gross negligence.

---

**Instruction to Policy Writers**

Attach the Pennsylvania Notice to all new and renewal certificates insuring risks located in Pennsylvania.

---

© ISO Properties, Inc., 2003

## NAUTILUS INSURANCE COMPANY

POLICY NUMBER: **NN433648**

ENDORSEMENT #  A01

Named Insured: MOTEL MANAGEMENT SERVICES, INC.
MATTHEW ETZRODT DBA NESHAMINY INN

Agency # 03724-00

### FINAL PREMIUM ADJUSTMENT ENDORSEMENT

In accordance with the premium and audit provisions stated in this policy, the premium is adjusted for the period of:

09/01/2014          to          09/01/2015

| CODE #~ | CLASSIFICATION | * | AUDIT EXPOSURE | RATE Prem/Ops | RATE Prod/Comp Ops | AUDIT PREMIUM |
|---|---|---|---|---|---|---|
| 45192 ~ | Hotels Motel Rural < 250,000 population Without Pool less than 4 stories | S | 1,636,321 | 13.074 | INCLUDED | 21,393 |
| 16916 ~ | Restaurants - with sale of alcoholic beverages that are 30% or more of but less 75% of the total annual receipts of the restaurants - without dance floor | S | 194,804 | 14.255 | .564 | 2,777 110 |
| 10145 ~ | Beverage Stores - liquor and wine | S | 1,194,283 | 2.311 | .098 | 2,760 117 |
| ~ | | | | | | |
| ~ | | | | | | |

| ☐ Additional page needed. | Total Audit Premium | $ | 27,157 |
|---|---|---|---|

* AUDIT EXPOSURE CODE
+ = Products/Completed Operations are subject to the General Aggregate Limit

| | |
|---|---|
| a = Area | s = Gross Sales |
| c = Total Cost | t = See Classification |
| m = Admissions | u = Units |
| p = Payroll | o = Total Operating Expenditures |

| Less Deposit/Credit | $ | 23,862 |
|---|---|---|
| Additional Premium | $ | 3,295 |
| Total Taxes & Fees | $ | 98.85 |
| TOTAL | $ | 3,393.85 |

| Tax & Fee Schedule | Tax Rate | | |
|---|---|---|---|
| State Tax | 0.0300 | $ | 98.85 |

All other terms and conditions remain unchanged.

10/26/2015     TLN

Authorized Representative

S046 (12/10)     Includes copyrighted material of Insurance Services Office, Inc., with its permission.     Page 1 of 1

## NAUTILUS INSURANCE COMPANY

POLICY NUMBER: **NN433648**

ENDORSEMENT # __1__

Named Insured: Motel Management

Agency # 3724    00

Blackmoor General Agency, LLC
747 Dresher Road
Horsham, PA 19044

Endorsement Effective Date: 09/01/2014

### GENERAL CHANGE ENDORSEMENT

At is agreed L282 Exclusion- Contractor & Subcontractor is deleted
from the policy.

It is agreed the attached L288 Additonal Conditions and Exclusions-Contractor
subcontractor work is added

Tax & Fee Schedule

$

PREMIUM: ☐ None  ☐ AP  ☐ RP  $

Total Taxes & Fees  $

TOTAL PREMIUM DUE  $

All other terms and conditions remain unchanged.

Horsham, PA
01/02/15    RHANEBU    Date Issued:

Authorized Representative

S901 (07/13)    Includes copyrighted material of Insurance Services Office, Inc., with its permission.

Case 2:20-cv-00288-FtS Document 27-1 Filed 06/05/20 Page 131 of 133

POLICY NUMBER: **NN433648**

<div align="right"><b>COMMERCIAL GENERAL LIABILITY</b></div>

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# ADDITIONAL CONDITIONS AND EXCLUSIONS - CONTRACTORS SUBCONTRACTED WORK

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE FORM

**A.** The Contractors - Subcontracted Work classification(s) shown in the Declarations applies to that portion of the operations performed for you by your "adequately insured" contractors or "adequately insured" subcontractors.

**B.** The following is added to Section IV - **Commercial General Liability Conditions:**

    **1.** You will obtain and maintain Certificates of Insurance from all "adequately insured" contractors or "adequately insured" subcontractors you hire providing evidence of Commercial General Liability insurance, including products/completed operations insurance.

    Your failure to obtain the certificates of insurance from "adequately insured" contractors or "adequately insured" subcontractors will not invalidate the insurance provided by this policy or relieve us of our obligation to you under the terms of this policy except as stated in **5. Premium Audit of Section IV - Commercial General Liability Conditions.**

    **2.** If, at any time, it is verified that operations were performed during the policy term by contractors or subcontractors that were not "adequately insured", such contractors or subcontractors will be classified and rated under the specific classification assignable to contracting risks performing such operations in accordance with paragraph **C.** below.

**C.** The following is added to 5. **Premium Audit** of Section IV - **Commercial General Liability Conditions:**

    If we verify operations were performed by contractors or subcontractors you hired were not "adequately insured" as defined in paragraph **E.1.** of this endorsement whether by audit of your books and records or otherwise, we will use the "total cost" of work performed for you by such contractors or subcontractors as if it were payroll to calculate the appropriate premium for the specific classification based on our rates and rules in effect as of the inception date of the policy. It is your responsibility to pay any additional premium due.

**D.** The following exclusion is **added to 2. Exclusions of Section I - Coverage A - Bodily Injury And Property Damage Liability and Coverage B - Personal And Advertising Injury Liability:**

    This insurance does not apply to "bodily injury", "property damage" or "personal and advertising injury" arising out of work performed by any contractors or subcontractors unless such work is being performed specifically and solely for you.

**E.** The following definitions are added to the **Definitions** section:

    **1.** "Adequately insured" means that the contractors and subcontractors that perform operations for you maintain Commercial General Liability insurance in force with the following minimum limits of insurance for their operations, including operations performed for them by others:

| | |
|---|---|
| General Aggregate Limit (Other than Products/Completed Operations) | $ 2,000,000 |
| Products/Completed Operations Aggregate Limit | $ 2,000,000 |
| Each Occurrence Limit | $ 1,000,000 |
| Personal and Advertising Injury Limit | $ 1,000,000 |

    (If no entry appears above, the minimum limits of insurance will be equal to the limits of insurance shown in the Declarations).

2. "Total cost" means the total cost of all work let or sublet in connection with each specific project including:

   a. The cost of all labor, materials and equipment furnished, used or delivered for use in the execution of the work including the cost of finished equipment installed whether or not furnished by the contractor, subcontractor, or by you; and

   b. All fees, bonuses or commissions made, paid or due.

All other terms and conditions of this policy remain unchanged.

## NAUTILUS INSURANCE COMPANY

POLICY NUMBER: **NN433648**　　　　　　　　　　　　　　　ENDORSEMENT # 2

Named Insured: Motel Management Services, Inc　　　　　　Agency # 03724　00

Blackmoor General Agency, LLC
747 Dresher Road
Horsham, PA 19044

Endorsement Effective Date: 09/01/2014

## GENERAL CHANGE ENDORSEMENT

In consideration of the premium charged, Matthew Etzrodt is included as a named insured.

Tax & Fee Schedule

$　　　　　　　　PREMIUM: ☒ None ☐ AP ☐ RP　$

Total Taxes & Fees　$

TOTAL PREMIUM DUE　$

All other terms and conditions remain unchanged.

Horsham, PA
03/31/15　　RHANEBU　Date Issued:　　　　　　Authorized Representative
S901 (07/13)　　　Includes copyrighted material of Insurance Services Office, Inc., with its permission.