**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| NAUTILUS INSURANCE COMPANY : <br> : <br> v. : <br> : <br> MOTEL MANAGEMENT SERVICES, : <br> INC. d/b/a NESHAMINY INN, and : <br> THE MARY ETZRODT REAL : <br> ESTATE TRUST, and NI45, LLC, and : <br> E.B | NO. 2:20-cv-00289-PBT |

**O R D E R**

AND NOW, this       day of                  , 2020, upon consideration of the motion for judgment on the pleadings of defendants, Motel Management Services, Inc. d/b/a Neshaminy Inn, The Mary Etzrodt Real Estate Trust, and NI45, and Nautilus Insurance Company's response thereto, it is hereby ORDERED and DECREED that said motion is **DENIED**. The motion for judgment on the pleadings of plaintiff, Nautilus Insurance Company, is **GRANTED**.  It is ordered that plaintiff has no duty to defend or indemnify Motel Management Services, Inc. d/b/a Neshaminy Inn, The Mart Etzrodt Real Estate Trust  and NI44, LLC in the underlying action instituted against those entities by E.B. in the Philadelphia Court of Common Pleas.

**BY THE COURT:**

**Petrese B. Tucker, J.**

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| NAUTILUS INSURANCE COMPANY | : |
| | : |
| v. | : |
| | : |
| MOTEL MANAGEMENT SERVICES, INC. d/b/a NESHAMINY INN, and THE MARY ETZRODT REAL ESTATE TRUST, and NI45, LLC, and E.B | : NO. 2:20-cv-00289-PBT |

**RESPONSE IN OPPOSITION TO DEFENDANTS'
MOTION FOR JUDGMENT ON THE PLEADINGS**

Plaintiff, Nautilus Insurance Company ("Nautilus"), by and through its attorneys, Bennett, Bricklin & Saltzburg, LLC, hereby responds to defendants Motel Management Services, Inc. d/b/a Neshaminy Inn, The Mary Etzrodt Real Estate Trust, and NI45's motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c), and in opposition thereto, responds as follows:

1. Denied. It is specifically denied that this insurance coverage declaratory judgment action arises from the claims of a then 17 year old prostitute. E.B. has never alleged that she was a prostitute. She has always alleged that she was a victim of human sex trafficking and was subjected to sexual servitude. *See* Ex. D to Nautilus's Motion for Judgment on the Pleadings, E.B.'s Amended Complaint ¶¶ 4-5. This Court's analysis is constrained to the factual allegations actually contained in E.B.'s complaint, not the Motel Management defendants' interpretation of those facts. *Mutual Ben. Ins. Co. v. Haver*, 725 A.2d 743, 745 (Pa. 1999). It is further denied that E.B.'s initial complaint—or her subsequent amended complaint—only concerned claims that the motel defendants did not prevent her alleged trafficking. E.B.'s initial complaint and the amended

complaint both alleged that the Motel Management defendants violated the Pennsylvania Human Trafficking Law in addition to alleging that they failed to prevent her trafficking. *See* Ex. C to Nautilus's Motion for Judgment on the Pleadings, E.B.'s Initial Complaint ¶¶ 52-57; Ex. D to Nautilus's Motion for Judgment on the Pleadings, E.B.'s Amended Complaint ¶¶ 63-68.

2. Admitted in part and denied in part. It is admitted that the initial complaint was the subject of an earlier declaratory judgment action, *Nautilus Ins. Co. v. Motel Mgmt. Servs., Inc.*, 320 F. Supp. 3d 636 (E.D. Pa. 2018), finding that coverage was precluded by an "all assault or battery" exclusion and public policy. It is specifically denied that the court found that coverage was precluded solely based on the allegations in paragraph 37 of the initial complaint. Rather, this Court's decision was based on its evaluation of the totality of the factual allegations of the initial complaint. *See id.*

3. Admitted.

4. Denied as stated. It is admitted that E.B. eliminated the contention that she "was held at gunpoint and threatened to engage in sexual acts with multiple traffickers." Ex. C to Nautilus's Motion for Judgment on the Pleadings, E.B.'s Initial Complaint ¶ 37. To the extent this paragraph of the motion intends to imply that removal of paragraph 37 of the original complaint thereby effectuated a removal of all allegations of assault, it is denied for the reasons set forth hereafter.

5. Denied as stated. It is admitted only that Nautilus characterized E.B.'s amended complaint as "an evident attempt to avoid the result of this court's prior judgment" for the reasons set forth in Nautilus's motion for judgment on the pleadings which is incorporated herein by reference. ECF No. 27.

6.     Denied as stated. It is admitted only that Nautilus is contending that this Court's prior determination is *res judicata* as to Nautilus's duty to defend and indemnify the Motel Management defendants in the underlying lawsuit.

7-8.     Admitted in part and denied in part. It is specifically denied that the filings of record in the earlier declaratory judgment action refute Nautilus's argument that E.B. is attempting to avoid the result of this Court's prior judgment. On the contrary, the filings of record in the earlier declaratory judgment action actually support Nautilus's contention. E.B.'s deposition testimony, raised by Motel Management Services in a motion for post-judgment relief, revealed that she was subject to numerous batteries and rape when she was trafficked. *See* Ex. F to Nautilus's Motion for Judgment on the Pleadings, E.B. Dep. 66:6-9 (". . . he kept trying to like kind of force it, and I was like no.  He kept trying to take pictures of my breast.  I said no."); 70:15-20 ("Once we got there he like, he changed into another person. He was yelling at – he was yelling at me and he was saying like you need to wash up, you need shave everything do your hair, and you're going to be having sex with men."); 92:17-19 ("He made me do the same thing, stand outside while he went in and paid for the room."); 155:9-11 ("Q. You testified today that he forced you into prostitution? A. Yes."); 166:17-18 ("I had [a knife] on me because one of the dates I had had raped me."); 238:20-23 (Referencing her trafficker, ". . . I had to like kind of like work my way around him a little bit because he was like very controlling and manipulating."); 239:18-24 ("Q. Did he force you to have sex with him? . . . A. He didn't physically force me, but verbally, yes."); 284:6-12 ("Q. Was that a true statement [that you were not being forced to have sex against your will]? . . . A. No.  Q. How was it untrue? A. Because I was being forced."). That her amended complaint did not include these allegations belies her actual motive: to avoid the Nautilus policies' all assault or

battery exclusion to obtain insurance compensation.[1] If she were not trying to obtain insurance compensation, then when she amended her complaint she would have included these allegations which were entirely consistent with her deposition testimony. Moreover, it is admitted that at her deposition in the underlying matter, E.B. denied being held at gunpoint by her trafficker. However, the Motel Management defendants' assertion that E.B. denied she was subject to physical abuse or assault by any of her "prostitution customers" is specifically denied for the reasons explained above.

9. Admitted in part and denied in part. It is admitted that E.B. alleged that the "factual record" in the underlying liability case, "based on deposition testimony and records produced during discovery" "required the removal" "of factual averments" "that E.B. is required to verify," and "Plaintiff's accusation that the Amended Complaint was drafted to find coverage is inaccurate and not based on the record of the case." It is curious, however, that E.B. did not draft her amended complaint to include the charges made by her in her own deposition as set forth in paragraph 8 if she was not deliberately attempting to create insurance coverage where none exists.

10. Denied. It is specifically denied that this Court's prior determination is not *res judicata* or that it has no applicability or relevance to the present matter. On the contrary, the controlling issue—whether Nautilus had a duty to defend and indemnify the Motel Management

---

[1] In speaking about this Court's prior decision declaring that insurance was unavailable to the Motel Management defendants, E.B.'s attorney said to a reporter:

> If people think the lack of insurance is going to be a deterrent to me, please think again. ***I'll find coverage***, or we'll move into the hotel
> . . .

Max Mitchell, *Sex Trafficking Awareness Is Growing and So Are Civil Claims*, THE LEGAL INTELLIGENCER (Jul. 23, 2019), https://advance.lexis.com/api/permalink/c862a7a7-3302-4e6c-9811-a18d94c995f0/?context=1000516/.

4

defendants in E.B.'s suit—was resolved by this Court's prior determination and constitutes *res judicata* as to this matter. E.B. merely deleted certain allegations which would make it somewhat less obvious that her alleged damages arose from an assault or battery. *See* Nautilus's Memorandum of Law in Support of its Motion for Judgment on the Pleadings, ECF No. 27, 10-14.

11.     Admitted in part and denied in part. It is admitted that the duty to defend is determined on the basis of the allegations set forth in the "four corners" of E.B.'s amended complaint, *unless* this Court's prior determination constitutes *res judicata* as to that determination. It is also admitted that this Court has not previously considered E.B.'s amended complaint. However, it is specifically denied that E.B. no longer alleges that she was subject to any assault *or battery* within the plain and ordinary meaning of those terms. On the contrary, the doctrine of *res judicata* is applicable here for the same reason that the all assault or battery exclusion still precludes coverage in this case: E.B.'s complaint still alleges that she was the subject of numerous batteries under the plain and ordinary meaning of that term. The plain and ordinary meaning of "battery" is a touching without consent. *See, e.g.*, *Kobrick v. Stevens, et al.*, Civil Action No. 3:13-CV-2865, 2017 WL 3839945 (M.D. Pa., September 1, 2017); ("Pennsylvania law defines battery as an intentional 'harmful or offensive contact with the person of another.' . . . Touching without consent is always offensive, and, in such circumstances, no intent to harm or actual injury need be established.") (internal citations removed); *Conway v. A.I. duPont Hosp. for Children*, No. 04-4862, 2009 U.S. Dist. LEXIS 896, at *44 n.19 (E.D. Pa. Jan. 6, 2009) ("The focus of an inquiry into the tort of battery is whether an unconsented-to touching occurred.). E.B. alleges that she was touched when she was subjected to sexual servitude at the hands of her trafficker and the Pennsylvania Legislature has determined that was a touching to which E.B. could not consent. *See*

18 Pa. C.S.A. §3051(j)(8). This is not just Nautilus's reading of the statute; E.B. admits that she could not consent to sex trafficking or commercial sex. E.B.'s Answer to Nautilus's Complaint, ECF No. 20 ¶ 17. Therefore, the "all assault or battery" exclusion applies and bars coverage for the underlying matter.

12. Denied as a conclusion of law to which no response is required. By way of further answer the plain and ordinary meaning of the exclusion's terms bars coverage for E.B.'s allegations in the amended complaint.

13. Admitted. It is admitted that the term "assault" is not defined by the policy. However, Judge Savage was correct in referring to the fact that the language of the all assault or battery exclusion encompasses "an insured's failure to prevent or suppress an assault or battery as an assault or battery." 320 F.Supp.3d 636, 643.

14. Denied as stated. It is admitted that this Court described assault as an "intentional attempt by force to do an injury" or an attempt "by physical menace to put another in fear of imminent serious bodily injury." *Id.* Further, the plain and ordinary meaning of "battery" is a touching without consent. *See, e.g.*, *Kobrick v. Stevens, et al.*, Civil Action No. 3:13-CV-2865, 2017 WL 3839945 (M.D. Pa., September 1, 2017); ("Pennsylvania law defines battery as an intentional 'harmful or offensive contact with the person of another.' . . . Touching without consent is always offensive, and, in such circumstances, no intent to harm or actual injury need be established.") (internal citations removed); *Conway v. A.I. duPont Hosp. for Children*, No. 04-4862, 2009 U.S. Dist. LEXIS 896, at *44 n.19 (E.D. Pa. Jan. 6, 2009) ("The focus of an inquiry into the tort of battery is whether an unconsented-to touching occurred.). As noted in response to paragraph 11, E.B. agrees that she was incapable of consenting to the conduct alleged.

15. Admitted. By way of further answer and for the reasons set forth herein, the natural plain and ordinary usage of the words contained in the exclusion preclude coverage for E.B.'s claims.

16. Denied as stated. This case does not involve "the use of hotel or motel rooms for acts of prostitution." Rather, this case involves the legally involuntary sexual servitude of a minor who alleges that she was harmed physically and emotionally when she was trafficked at the Neshaminy Inn which the defendants collectively own, manage or operate. *See* Ex. D to Nautilus's Motion for Judgment on the Pleadings. The Legislature has determined that E.B. could not consent to her own sexual servitude. *See* 18 Pa. C.S.A. §3051(j)(8). E.B. admits that she could not consent to sex trafficking or commercial sex. E.B.'s Answer to Nautilus's Complaint, ECF No. 20 ¶ 17. Therefore, E.B.'s amended complaint alleges that she was subjected to numerous batteries, acts which insurance policies such as this one are not intended to cover.

17-18. Denied as stated. This argument is the ultimate red herring. The language of the exclusion clearly excludes "all" "assaults" and "batteries." E.B.'s amended complaint alleges both assaults and batteries. A provision which excludes "all" assaults and batteries excludes, for instance, assaults with a firearm and it is no answer to argue that the exclusion does not specifically say "assaults with firearms." Removed from the legal context, saying "the paper is orange" is not ambiguous because a speaker could also have said "the paper is the color that results from combining the primary colors red and yellow." Though the latter contains more detail, both sentences convey the same meaning. Nautilus's exclusion precludes coverage for "all" assaults and "all" batteries, precisely what E.B. alleges. Insurance companies cannot write exclusions that describe every possible circumstance that may arise. If they did, insurance policies would be hundreds of pages long inevitably defeating the purpose which the Motel Management defendants

7

seek to champion: that policies be written in a form understandable by insureds. Thus, insurers are permitted to draft exclusions based on language which is commonly understood—such as the terms "all," "assault" and "battery"—to exclude a broad subset of circumstances from coverage, such as the situation here, where E.B. alleges she was subjected to legally involuntary sexual servitude and was injured as a result.

19. Admitted in part and denied in part. It is specifically denied that "operators of hotels and motels could not reasonably be expected to anticipate that the Nautilus exclusion for 'assault and battery' would be expanded beyond claims arising from such things as fights and shooting . . . to alleged negligence in connection with underage prostitution . . not alleged to be accompanied by use of force or threat of force." As explained above, this case is not about "on premises illegal commercial sexual activity" or "underage prostitution," it is about the involuntary sexual servitude of a minor and the physical and emotional injuries she sustained as a result. In fact, contrary to the characterizations of the Motel Management defendants, E.B.'s amended complaint does include allegations of force.  E.B. alleges that she was sexually exploited, accompanied by older men wherever she went in the motel, and experienced and exhibited fear and anxiety. Ex. D to Nautilus's Motion for Judgment on the Pleadings ¶¶ 33, 41-42, 52, 65, 84.  E.B. also alleges that she sustained "physical harm" and emotional distress because of the illegal contact. *Id.* ¶¶ 54, 66, 88. She even wrote that she was the victim of a "violent" crime. *Id.* ¶¶ 85-86. E.B. admits that she could not consent to sex trafficking or commercial sex. E.B.'s Answer to Nautilus's Complaint, ECF No. 20 ¶ 17.  No reasonable person could think that a minor who is victim of sex trafficking and who by law could not consent to such conduct was not subjected to assault or battery by the men who engaged in commercial sex acts with her. In any event, it does not matter that a hotel or motel operator would not expect the assault or battery exclusion to apply to "negligence in

connection with underage prostitution" since here, it is clear that E.B. alleges she was touched, the law provides that she was unable to legally consent to such a touching, and therefore she suffered a battery which is commonly understood to mean a touching without consent.

20. Denied as stated. Though the quotation attributed to the Third Circuit is accurately stated, the law in Pennsylvania imposes the "reasonable expectations of the insured" as a device for disregarding the language of the policy only when it is shown that the insured specifically requested a given coverage and the policy failed to provide it. There is no such allegation here. *See, e.g., Tonkovic v State Farm Mut. Auto. Ins. Co.*, 513 Pa 445 (1987); *see also, Frederick Mut. Ins.Co. v. Hall*, 752 F. App'x 115 (3d Cir. 2018). Accordingly, the policy must be applied in accordance with its clear and unambiguous terms.

21. Denied. It is specifically denied that E.B.'s amended complaint involves "prostitution not alleged to have been made involuntary by the compulsion of such force or threat of force." Nowhere in E.B.'s amended complaint does she allege that she was a prostitute. E.B.'s amended complaint does, however, allege numerous instances of battery since the common and ordinary definition of a battery is a touching without consent, *see* response to paragraph 14, *supra*, and the Legislature determined E.B. could not consent to her sexual servitude. *See* 18 Pa. C.S.A. §3051(j)(8). This is not just Nautilus's reading of the statute; E.B. admits that she could not consent to sex trafficking or commercial sex. E.B.'s Answer to Nautilus's Complaint, ECF No. 20 ¶ 17. Therefore, every single time E.B. had sex with a "John" at the premises of the Neshaminy Inn "numerous" times per day it constituted a battery. *See* Ex. D to Nautilus's Motion for Judgment on the Pleadings, ¶ 40. Moreover, as outlined in paragraph 19, *supra*, E.B.'s amended complaint continues to allege that she was the victim of assaults as well.

22. Denied. It is specifically denied that the "all assault or battery" exclusion is "ambiguous" under these facts. The plain and ordinary meaning of "battery" is a touching without consent. *See, e.g.*, *Kobrick v. Stevens, et al.*, Civil Action No. 3:13-CV-2865, 2017 WL 3839945 (M.D. Pa., September 1, 2017); ("Pennsylvania law defines battery as an intentional 'harmful or offensive contact with the person of another.' . . . Touching without consent is always offensive, and, in such circumstances, no intent to harm or actual injury need be established.") (internal citations removed); *Conway v. A.I. duPont Hosp. for Children*, No. 04-4862, 2009 U.S. Dist. LEXIS 896, at *44 n.19 (E.D. Pa. Jan. 6, 2009) ("The focus of an inquiry into the tort of battery is whether an unconsented-to touching occurred.). Contrary to the Motel Management defendants' assertion otherwise, *Kobrick* is directly on point in this case even though it does not involve insurance coverage. *Kobrick* stands for the proposition that a touching without consent is a battery, even when the lack of consent arises because the consent given was invalid as a matter of law. No reasonable person could think that a minor who is victim of sex trafficking was not subjected to assault or battery by the men who engaged in commercial sex acts with her. It is unambiguously clear that E.B. alleges she was touched, any consent she may have provided would be invalid as a matter of law, *see* 18 Pa. C.S.A. §3051(j)(8), and therefore she suffered a battery. *See Kobrick*, 2017 WL 3839945 and E.B.'s answer at paragraph 17.

23. Denied. The Motel Management defendants' characterization of Nautilus's public policy argument is denied. On the contrary, see Nautilus's Memorandum of Law in Support of its Motion for Judgment on the Pleadings, 20-25 which arguments cannot be summarized in two words.

24-26. . Denied. It is specifically denied that Nautilus "egregiously misdescribe[d] the allegations of E.B.'s amended complaint" by "describing those claims as if they only sought to

10

impose liability on the basis of . . . the human trafficking statute." Nautilus acknowledges that E.B.'s amended complaint includes claims of negligence and negligent infliction of emotional distress. It is specifically denied that those claims "are entirely separate and independent from any claim under the Pennsylvania Human Trafficking Law." On the contrary, those negligence counts against the Motel Management defendants incorporate all of the preceding averments by reference. *See* Ex. D to Nautilus's Motion for Judgment on the Pleadings, ¶¶ 80, 94. Therefore, the negligence counts incorporate the allegations that the Motel Management defendants, by and through their employees, were "uniquely positioned to observe the manifestations, indications and evincement of human sex trafficking within the Neshaminy Inn Motel . . . where they worked." *Id.* ¶ 24. The negligence counts also incorporate the averment that the Motel Management defendants "rented rooms to sex traffickers benefiting from the commercial sex acts occurring on the premises of the Neshaminy Inn Motel," knew they were doing it, and knew that she was being sexually exploited. *Id.* ¶¶ 31-33, 65. These accusations constitute crimes under the Pennsylvania Human Trafficking Law. *See* 18 Pa.C.S. § 3011. There are other allegations in the complaint that while not necessarily criminal, are still reprehensible. The negligence counts incorporate the averment that the Motel Management defendants allegedly "failed to prevent human sex trafficking at the Neshaminy Inn Motel . . . and instead permitted heinous and unspeakable acts to occur." Ex. D to Nautilus's Motion for Judgment on the Pleadings, ¶ 25. The negligence counts incorporate the averment that the Motel Management defendants "failed to report to authorities, intervene, disrupt, or otherwise stop the human sex trafficking" of E.B. *Id.* ¶ 47. Instead, the Motel Management defendants are alleged to have knowingly rented rooms to E.B.'s sex traffickers even though they knew she was being sexually exploited by them which is a crime. *See* 18 Pa.C.S. § 3011. Accordingly, all the counts against the Motel Management defendants in the underlying complaint are based on

allegations which constitute criminal violations of the Pennsylvania Human Trafficking Law. The Motel Management defendants cannot escape the fact that E.B. elected to incorporate all of the preceding averments of reprehensible criminal conduct into the later counts of negligence and negligent infliction of emotional distress, particularly since E.B. did so knowing what Nautilus's arguments were in the previous declaratory judgment action. Even though common law negligence is pled, it is clear that what the Motel Management defendants were alleged to have done is both criminal and reprehensible. The Motel Management defendants cannot select the portions of the complaint which are favorable to them and ignore the rest. It is also irrelevant that the claims of negligence and negligent infliction of emotional distress are based on alleged "constructive knowledge." Constructive knowledge is "knowledge that one using reasonable care or diligence should have, and therefore that is attributed by law to a given person." *Gleeson v. State Bd. of Medicine*, 900 A.2d 430 (Pa. Cmwlth. 2005). If reasonable care or diligence on the part of Motel Management would have discovered what was occurring on its premises, it is not likely that public policy should reward the company with insurance for turning a blind eye if the purpose of the statute is to end human sex trafficking.

27. Denied. It is specifically denied that E.B.'s amended complaint pleads "lack of awareness." Rather, it pleads that the Motel Management defendants had knowledge or constructive knowledge of the human trafficking ongoing on their premises. *See* Ex. D to Nautilus's Motion for Judgment on the Pleadings, ¶¶ 32-33, 47, 51-53. Constructive knowledge is "knowledge that one using reasonable care or diligence should have, and therefore that is attributed by law to a given person." *Gleeson v. State Bd. of Medicine*, 900 A.2d 430 (Pa. Cmwlth. 2005). If reasonable care or diligence on the part of Motel Management would have discovered what was occurring on its premises, it is not likely that public policy should reward the company with

12

insurance for turning a blind eye, particularly since the purpose of the statute is to end human sex trafficking. The decision in *Bd. of Pub. Educ. of the Sch. Dist. v. Nat'l Union Fire Ins. Co.*, 709 A.2d 910, 917 (Pa. Super. Ct. 1998) is not to the contrary. While it is true that the court in that case found insurance coverage for the Board of Public Education where the claims involved a third party's sexual abuse of a minor, the insurance policy in that case did not contain any "express exclusions for negligent supervision, control, or hiring. . ." whereas the Nautilus policy *does*. 709 A.2d at 915. Furthermore, that decision had absolutely nothing to do with "public policy;" the words "public policy" do not even appear in the text of that decision. Most important, no allegations were made that the Board of Public Education was complicit in the illicit conduct. Here, as outlined above, the Motel Management defendants are alleged to have engaged in conduct which, if proven, is both criminal and reprehensible. Moreover, if the court had not permitted coverage in *Bd. of Public Ed.*, taxpayers would pay the claim. It is another thing entirely to allow private business entities which knew or had constructive knowledge of a minor's victimhood and failed to do anything about it to profit from it by having its insurer pay the damages caused.

28-30. Denied. It is specifically denied that there is an important public interest against depriving the Motel Management defendants of insurance coverage since it would "unnecessarily withhold compensation" to E.B. This is hardly an overriding public policy concern as it is an argument that is available in every case where public policy concerns are raised, and yet there are instances, such as this one, where providing insurance coverage would be against the public policy of Pennsylvania. *See, e.g.*, *Minnesota Fire & Cas. Co. v. Greenfield*, 855 A.2d 854, 868 (Pa. 2004). There is ample public evidence that hotels have long known about the issue of human trafficking and the signs thereof, and yet they have done nothing to stop it until victims began filing lawsuits and the hotels were therefore faced with the prospect of settlements that "could run into the billions

13

of dollars." Andrew Welsh-Huggins, *Human Trafficking Lawsuits Allege Hotels Ignored Problems*, ABC NEWS (Dec. 19, 2019), https://abcnews.go.com/Business/wireStory/lawsuits-allege-hotel-chains-human-trafficking-67820401. The hotel and motel industry is now, finally, taking steps to prevent and end human sex trafficking, but much of the incentive for doing so disappears if insurers are called upon to pay for the damage caused.

Nautilus must also address the contention in the Motel Management defendants' brief that there may be "undetermined facts that might impact on coverage" as there were in *Erie Ins. Exchange v. Moore*, 2020 WL 1932642, *5 (Pa. 2020). That case involved a factual scenario which, at least as plead in the operative complaint, was unclear: whether a gunshot wound was inflicted deliberately or accidentally. The complaint alleged that the gun was fired "negligently, carelessly and recklessly" during the course of a physical struggle. Clearly, the factual allegations in that case did not foreclose the possibility that the gun was truly fired negligently and the court therefore found a duty to defend on the part of the insurer. Here, the facts as pled by E.B. are unambiguous. Simply put, E.B. was trafficked and subjected to sexual servitude when she was a minor and "Johns" had sex with her on multiple occasions. As explained above, each of those sex acts constituted a battery because any purported consent E.B. may have provided was invalid as a matter of law, *see* 18 Pa. C.S.A. §3051(j)(8), and the common and ordinary definition of a battery is a touching without consent. . *See, e.g.*, *Kobrick v. Stevens, et al.*, Civil Action No. 3:13-CV-2865, 2017 WL 3839945 (M.D. Pa., September 1, 2017); ("Pennsylvania law defines battery as an intentional 'harmful or offensive contact with the person of another.' . . . Touching without consent is always offensive, and, in such circumstances, no intent to harm or actual injury need be established.") (internal citations removed); *Conway v. A.I. duPont Hosp. for Children*, No. 04-

14

4862, 2009 U.S. Dist. LEXIS 896, at *44 n.19 (E.D. Pa. Jan. 6, 2009) ("The focus of an inquiry into the tort of battery is whether an unconsented-to touching occurred.).

31-32.  Denied for the reasons set forth in Nautilus's motion for judgment on the pleadings which is incorporated here by reference. ECF No. 27, 20-25 and for the reasons set forth above.

WHEREFORE, Nautilus Insurance Company respectfully requests that this Honorable Court deny the Motel Management defendants' motion for judgment on the pleadings.

                      **BENNETT, BRICKLIN & SALTZBURG LLC**

**BY:** _____
      **LOUIS E. BRICKLIN**
      Attorney I.D. No.  20281
      **SARAH E. CROSLEY**
      Attorney I.D.  No. 325916
      Centre Square, West Tower
      1500 Market Street, 32nd Floor
      Philadelphia, PA 19102
      215-665-3400
      bricklin@bbs-law.com
      crosley@bbs-law.com

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| NAUTILUS INSURANCE COMPANY <br><br> v. <br><br> MOTEL MANAGEMENT SERVICES, INC. d/b/a NESHAMINY INN, and THE MARY ETZRODT REAL ESTATE TRUST, and NI45, LLC, and E.B | : <br> : <br> : <br> : <br> : <br> : NO. 2:20-cv-00289-PBT <br> : <br> : <br> : |

**MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS'**
**MOTION FOR JUDGMENT ON THE PLEADINGS**

Plaintiff incorporates the facts and argument set forth in its Motion for Judgment on the Pleadings, the Memorandum of Law attached thereto, and its Response to Defendants' Motion for Judgment on the Pleadings.

**Respectfully Submitted,**

**BENNETT, BRICKLIN & SALTZBURG LLC**

BY: _____
**LOUIS E. BRICKLIN**
Attorney I.D. No. 20281
**SARAH E. CROSLEY**
Attorney I.D. No. 325916
Centre Square, West Tower
1500 Market Street, 32nd Floor
Philadelphia, PA 19102
215-665-3400
bricklin@bbs-law.com
crosley@bbs-law.com

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| NAUTILUS INSURANCE COMPANY : <br> : <br> v. : <br> : <br> MOTEL MANAGEMENT SERVICES, : <br> INC. d/b/a NESHAMINY INN, and : <br> THE MARY ETZRODT REAL : <br> ESTATE TRUST, and NI45, LLC, and : <br> E.B | NO. 2:20-cv-00289-PBT |

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that this document has been filed electronically and is available for viewing and downloading from the ECF System by all interested counsel.

                                  **BENNETT, BRICKLIN & SALTZBURG LLC**

**BY:** _____
       **LOUIS E. BRICKLIN**
       Attorney I.D. No.  20281
       **SARAH E. CROSLEY**
       Attorney I.D.  No. 325916
       Centre Square, West Tower
       1500 Market Street, 32nd Floor
       Philadelphia, PA 19102
       215-665-3400
       bricklin@bbs-law.com
       crosley@bbs-law.com