UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| NAUTILUS INSURANCE COMPANY | : | |
| Plaintiff, | : | |
| v. | : | |
| MOTEL MANAGEMENT SERVICES, INC., d/b/a NESHAMINY INN | : | CIVIL ACTION |
| and | : | |
| THE MARY ETZRODT REAL ESTATE TRUST | : | NO. 20-CV-00289 |
| and | : | |
| NI45, LLC | : | |
| and | : | |
| E.B. c/o Kline & Specter, P.C. | : | |
| Defendants. | : | |

**DEFENDANTS MOTEL MANAGEMENT SERVICES, INC., D/B/A NESHAMINY INN ("MMS"), THE MARY ETZRODT REAL ESTATE TRUST AND N145, LLC'S <u>REPLY BRIEF ON CROSS-MOTIONS FOR JUDGMENT ON THE PLEADINGS</u>**

This brief responds to the below arguments of plaintiff insurer in its Response to the insured defendants' motion for judgment on the pleadings (hereinafter "Response") and Motion for Leave to File a Reply Brief (hereinafter "Motion for Leave").

***Plaintiff insurer's mischaracterization of the "reasonable expectations" doctrine as applicable only when "the insured specifically requested a given coverage and the policy failed to provide it" (Response at ¶20).***

Plaintiff insurer cites the <u>Tonkovic</u>[1] and <u>Frederick</u>[2] cases for this mischaracterization of Pennsylvania law. Neither of those cases, nor any other, supports the argument that the reasonable expectations doctrine is irrelevant to policy ambiguity. To the contrary, as the Third

---

[1] <u>Tonkovic v. State Farm Mut. Auto Ins. Co.</u>, 521 A.2d 920 (Pa. 1987).

[2] <u>Frederick Mut. Ins. Co. v. Hall</u>, 752 F. App'x 113 (3d Cir. 2018).

5283282v2

Circuit explained, "[T]he parties' reasonable expectations are to be the touchstone of any inquiry into the meaning of an insurance policy." Bensalem Tp. v. Int'l Surplus Lines Ins. Co., 38 F.3d 1303, 1309 (3rd Cir. 1994) (emphasis added). As the Pennsylvania Supreme Court also explained in Tonkovic, whenever, as is frequently so, an insurer drafts policy language "which is obscure to the layman," "[c]ourts must examine the dynamics of the insurance transaction to ascertain what are the reasonable expectations" of the insured. Tonkovic, supra, at 926.

*Plaintiff insurer's argument that its "assault and battery exclusion" "clearly excludes" the claims of negligence in connection with third-party sexual trafficking and could not, as the law requires (as set forth in defendant insureds' motion papers) use "more precise language" which "would have put the matter beyond reasonable question" without making the insurance policy "hundreds of pages long." (Response at ¶¶17-18.)*

To the contrary, the Nautilus policy easily could have provided a "more precise" exclusion as follows: "This insurance does not apply to claims, including claims for negligence, arising from actual or alleged illegal commercial sexual activity, including, but not limited to, acts of prostitution and/or sex trafficking by third parties."

*Plaintiff insurer's argument that "it does not matter that a hotel or motel operator would not expect the assault and battery exclusion to apply to 'negligence in connection with underage prostitution'" and that this case "is not about" "on premises illegal commercial sexual activity" or "underage prostitution" (Response at ¶19).*

For motel and hotel insureds' claims, as here, arising from the illegal sexual activity of third-parties is an ever-present risk. (Defendant insureds' initial brief ("Initial Brief") at 8.) Indeed, in recent years such sexual trafficking claims, based predominantly, as here, on "lack of awareness" of "hotel staff and guests" have exploded. (Id. at 1, 2.) As above, plaintiff insurer could easily have drafted an applicable exclusion that was clear, rather than "obscure," as directed to on premises illegal commercial sex, but, of course, doing so would have risked Nautilus' losing policyholder customers to its competitors.

Nautilus cavalierly disregards the ambiguity of the exclusion it did draft "beyond claims arising from such things as fights and shootings…to alleged negligence in connection with underage prostitution…." It does so based on the frivolous contention above that "this case is not about 'on premises illegal commercial sexual activity'" or "underage prostitution." (Response at ¶19.)  To the contrary, E.B.'s amended complaint states that "Johns" use motel rooms, so as "to purchase sex," and that E.B. "earned" "money" from them by "performing sexual acts" (at ¶¶29, 36, 37, et seq.).  Moreover, in determining whether there are "undetermined facts that might impact coverage," the Court may look to "discovery." Erie Ins. Exchange v. Moore, 228 A.3d 258, 265 (Pa. 2020).  E.B.'s deposition testimony establishes that, in fact, she engaged in commercial sex to "earn money."  (See Transcript of Deposition of E.B., Exhibit F to Nautilus' motion for judgment on the pleadings ("Transcript") at, e.g., 76, 130, 220, 301.)  The common and ordinary meaning of the term "prostitution" is "engaging in sexual activity with someone for payment."  (lexico.com/en/definition/prostitution.)

That a victim of sexual trafficking may well have a defense to the crime of prostitution does not change, as Nautilus appears to acknowledge, that its hotel and motel insureds "would not expect the assault or battery exclusion to apply" to claims, as here, for "negligence in connection with underage prostitution" unaccompanied by the coercion of "force or threat of force." (Response at 19.)  As a result, Nautilus' argument as to the applicability of its exclusion could not be in greater conflict with the fundamental principle of Pennsylvania law that the reasonable expectations of the insured are "the touchstone of any inquiry into the meaning of an insurance policy." Bensalem, supra, at 1309 (emphasis added).

***Nautilus' contention that it has not had the opportunity to address the supposed argument "that E.B. was the victim of psychological but not physical coercion and therefore she was not assaulted within the common and ordinary definition of assault." (Motion for Leave at ¶4.)***

Plaintiff mischaracterizes the position of its insureds. Defendants do not make the above argument that the evidence establishes that E.B. "was the victim of psychological but not physical coercion." As earlier clearly explained, their argument is that the role of such psychological manipulation in E.B.'s trafficking is just such an "undetermined fact," referenced by Pennsylvania's highest Court in Moore, supra, at 265 that might "impact on coverage," and thus requires the continuation of the defense "until the claim is narrowed to one patently outside the policy coverage." (emphasis added.) (Initial Brief at 4-5.)

As also earlier explained, E.B.'s deposition testimony confirms that it is "entirely possible on her averments" that, as is frequently so, her "sexual trafficking victimization" occurred predominantly, or even exclusively, on such purely psychological manipulation as 'promises of romantic love, a sense of family or access to a better life'" (Initial Brief at 5). To illustrate, after her arrest, E.B. wrote a letter to her trafficker expressing such sentiments as "We used to have so much fun" (Transcript at 216), "I hope u didn't forget about me" (id. at 232), "can't wait to see you again" and "Love U" (id. at 236).

***Plaintiff insurer's argument that the assault and battery exclusion is applicable based on the definition of the term "battery" as "an unconsented-to touching" because as a minor E.B. "was incapable of consenting to the conduct alleged." (Response at ¶¶14, 22.)***

In an apparent recognition of the ambiguity under her amended complaint as to whether E.B. was coerced by conduct within the ordinary meaning of the term "assault," plaintiff's Response pivots to a new argument. In its own motion, Nautilus repeatedly asserted that, even after the deletion of the initial complaint's averments, explicitly relied upon by the Trial Court and the Third Circuit as an "assault," E.B.'s amended complaint "still alleged assaults."[3]

---

[3] For example, plaintiff insurer previously argued in its motion for judgment on the pleadings and supporting brief that "[e]ven with the deletion of the above allegations, E.B. still alleges she was a victim of repeated assaults" (insurer's motion at ¶12); that "the amended complaint still alleges that E.B." was "the victim of repeated assaults"

-4-

Nowhere in its own moving papers did it argue the separate meaning of the term "battery," as to which its Response now argues (i) that "battery" is a "touching without consent," and (ii) that E.B. suffered a "battery" every time she "was touched" because "any consent she may have provided would be invalid as a matter of law, see 18 Pa.C.S.A. §3051(j)(8)."  (Response at ¶22.)

Plaintiff insurer relies upon the case of Kobrick v. Stevens, 2017 WL 3839945 (M.D. Pa. September 1, 2017), as it did when it previously relied upon the term "assault."  As previously explained, Kobrick addressed not insurance coverage, but the legal ineffectiveness of consent, for purposes of liability of one who engages in sex with a minor.  (Initial Brief at 10.)  That issue plainly has no bearing on the reasonableness of construing the term "battery," described by plaintiff as a "touching without consent," as applicable to the claims here, where liability cannot be foreclosed on the basis of commercial sex acts that were not, as the term "consent" is commonly understood, "without consent."  This is made clear by E.B.'s deposition testimony describing herself arranging for such sex by "every time a customer calls or texts, you ask them what they want, how long.  You tell them the price.  They agree to it or not and you tell them your rules."  (Transcript at 130.)

Few if any operators of hotels and motels, almost certainly mere laypersons, would expect that such commercial sex, so arranged by a plaintiff, the nature and the price of which are agreed upon by her, and the "rules" set by her, might be deemed a "battery" within the Nautilus exclusion, as "an unconsented" touching, as Plaintiff argues, by reference, without explanation within the policy terms, to the provisions of Pennsylvania statutory law.

---

(insurer's motion at ¶27); that E.B. still alleges that she was a victim of repeated assaults (insurer's supporting brief at 5); and that her amended complaint "continues to allege that she was assaulted" (insurer's supporting brief at 18).

As liability cannot be foreclosed at this juncture on the basis of E.B. having so "consented," in the common and ordinary meaning of that term, which is "to give assent or approval" (merriam-webster.com/dictionary/consent), the only reasonable construction of the term "battery" in the Nautilus exclusion is that it is, at this juncture, inapplicable to E.B.'s underlying claims. But even if the contrary interpretation were also reasonable, i.e., that the term "battery" should be construed not in its common and ordinary sense as "assent or approval," but by incorporating into the policy what is "invalid as a matter of law" under the terms of 18 Pa.C.S.A. §3051(j)(8) (and it is not), the policy would be "ambiguous," as applied to the particular set of facts, and must be construed in favor of coverage at this juncture. Moore supra, at 265, 267.

### *Summary replies to further Nautilus arguments.*

Because of space limitations, various plaintiff arguments must be addressed cursorily. For example, in its Motion for Leave, at ¶6, Nautilus states that it will respond to the argument that because it "sells insurance" "for claims of abuse from molestation" that "therefore it is not against public policy to provide insurance coverage for claims of human sex trafficking." Plaintiff insurer's mischaracterization of its insureds' argument should not go unaddressed. As also earlier clearly explained, the compelling public interest in favor of insurance coverage for victims of childhood sexual abuse is in no sense dependent upon what policies for molestation and abuse Nautilus itself issues. Defendants' argument has never been that the issuance of such coverage by Nautilus is the reason that it is "not against public policy to provide insurance coverage for claims of human sex trafficking." To the contrary, that argument is, and has been, that Nautilus' contentions as to public policy are not only made frivolous, but also hypocritical,

-6-

5283282v2

by insurers having "rushed into the marketplace in droves" offering such molestation and abuse coverage.  (Defendant insureds' brief in opposition to insurer's motion, at 17.)

As to the argument in Nautilus' Motion for Leave (at ¶5) that the deletion by E.B.'s amended complaint of the contention that defendant insureds "profited from E.B.'s sexual servitude" followed underlying discovery showing rentals at standard rates, that is exactly what discovery established.  (See e.g., ¶¶ 25, 32, 68, 101 attached hereto as Exhibit 1, from defendant MMS' motion for summary judgment in the underlying action.)

Finally, as to insurer's stated intent to respond to defendants' argument that "*res judicata* is inapplicable here," (Motion for Leave at ¶7) its insureds can only reiterate the clearly wrongful nature of Nautilus' contention that, under Pennsylvania law, all that is required for *res judicata* is "an essential similarity of underlying events." (Insurer's supporting brief at 11.)  To the contrary, as the Third Circuit has explained, res judicata is only appropriate when a case is "essentially identical" to the earlier decided case.  (Insureds' brief in opposition at 18.)

### *Conclusion*

It is respectfully submitted that plaintiff insurer's motion for judgment on the pleadings must be denied, and defendant insureds' motion for judgment on the pleadings in their favor granted as to the continuation of the defense at this juncture.

Date:  July 27, 2020                    /s/ *Jeffrey R. Lerman*
                                        Jeffrey R. Lerman, Esquire
                                        Glenn F. Rosenblum, Esquire
                                        Montgomery, McCracken, Walker & Rhoads, LLP
                                        1735 Market Street, 19th Floor
                                        Philadelphia, PA  19103
                                        (215) 772-1500 (telephone)
                                        (215) 772-7620 (facsimile)

                                        *Attorneys for Defendants*
                                        *Motel Management Services, Inc. d/b/a Neshaminy Inn,*
                                        *The Mary Etzrodt Real Estate Trust and NI45, LLC*

## CERTIFICATE OF SERVICE

I hereby certify that on July 27, 2020, one true and correct copy of the foregoing **Reply Brief Of Defendants Motel Management Services, Inc., D/B/A Neshaminy Inn, Mary Etzrodt Trust and NI45, LLC On Cross-Motions For Judgment On The Pleadings** will be served via the court's electronic filing system upon:

>Louis E. Bricklin, Esquire
>Bennett, Bricklin & Saltzburg LLC
>Centre Square, West Tower
>1500 Market Street, 32nd Floor
>Philadelphia, PA 19102
>
>Nadeem Bezar, Esquire
>Emily Marks, Esquire
>Kline & Specter, P.C.
>1525 Locust Street
>Philadelphia, PA 19102

Date: July 27, 2020           */s/ Glenn F. Rosenblum*
                              Glenn F. Rosenblum

5283282v2