**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 21-2590
_____

NAUTILUS INSURANCE CO

v.

MOTEL MANAGEMENT SERVICES INC, DBA Neshaminy Inn; THE MARY ETZRODT REAL ESTATE TRUST; NI45, LLC; E.B.,

MOTEL MANAGEMENT SERVICES INC, DBA Neshaminy Inn; THE MARY ETZRODT REAL ESTATE TRUST; NI45, LLC,
Appellants
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 2-20-cv-00289)
District Judge: Honorable Petrese B. Tucker
_____

No. 21-2871
_____

NAUTILUS INSURANCE CO

v.

MOTEL MANAGEMENT SERVICES INC, DBA Neshaminy Inn; NI45 LLC; MARY ETZRODT REAL ESTATE TRUST; G. D.; N. Z.

MOTEL MANAGEMENT SERVICES INC, DBA Neshaminy Inn; NI45 LLC; MARY ETZRODT REAL ESTATE TRUST,
Appellants
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 2-20-cv-01607)
District Judge: Honorable Cynthia M. Rufe
_____

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
June 30, 2022

───────────

Before: JORDAN, PORTER, and PHIPPS, *Circuit Judges*.

(Filed: October 28, 2022)

───────────

OPINION[*]

───────────

**PHIPPS**, *Circuit Judge*.

These consolidated appeals concern denials of insurance coverage based on an assault-or-battery exclusion in a hotel's general liability insurance policy. Three women sued the hotel in state court for permitting them to be trafficked for commercial sex on its premises. The hotel's insurance provider refused to defend or indemnify those claims because the hotel's policy excluded claims "arising out of any assault or battery." App. 145 (21-2590). To confirm its position, the insurance company filed declaratory judgment actions against the hotel and the women, and in each case, the District Courts issued judgments declaring that the underlying sex trafficking claims fell within the scope of the assault-or-battery exclusion. On *de novo* review, we will affirm.

### BACKGROUND

In 2014 and 2015, a hotel in Bucks County, Pennsylvania, the Neshaminy Inn, had a general commercial liability insurance policy with Nautilus Insurance Company.[1] That policy identified Motel Management Services, Inc., doing business as Neshaminy Inn,

───────────

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

[1] Nautilus was a citizen of Arizona by incorporation and principal place of business.

2

and the hotel's owners, The Mary Etzrodt Real Estate Trust and NI45, LLC, as named insureds.[2]

Under the terms of the general insurance policy, Nautilus promised to defend and indemnify the insureds, collectively referred to herein as 'Neshaminy Inn,' for any liability incurred because of bodily injury. But the policy did not cover claims arising out of assault or battery. Specifically, Nautilus had "no duty to defend or indemnify [Neshaminy Inn] in any action or proceeding alleging damages arising out of any assault or battery," meaning "[a]*ll causes of action* arising out of any assault or battery." Exclusion – All Assault or Battery, General Insurance Policy (App. 145) (21-2590) (emphasis added). And the exclusion reached "[a]ny act or omission in connection with the prevention or suppression of such acts, including the alleged failure to provide adequate security." *Id.*

Neshaminy Inn sought coverage under its policy in response to three civil lawsuits filed in the Philadelphia County Court of Common Pleas. In those cases, three women who lived in Philadelphia – two of whom were teenagers at the time – alleged that they were trafficked for sex at the Neshaminy Inn while the policy was in effect. Two of the women, G.D. and N.Z., were recruited as prostitutes by a now-convicted sex trafficker who advertised them online and arranged for them to have sex with several men a day in rooms he rented at the Neshaminy Inn, among other locations. The trafficker kept those two women dependent on him by shooting them up with heroin and forcing them to smoke crack cocaine in between their customers, causing them to show outward signs of impairment while on the premises. He also treated them in a "visibly . . . aggressive manner" that further instilled a sense of fear and anxiety in them. App. 71 ¶ 77, 123 ¶ 77

---

[2] Those insureds were citizens of states other than Arizona.

3

(21-2871). The third woman, E.B., through an amended complaint,[3] alleged a similar pattern of victimization at the hands of a sex trafficker who advertised her online and sold her for sex several times a day at the Neshaminy Inn. She described her experience as "modern day slavery," claiming that she was the victim of violent criminal acts, "suffer[ed] serious bodily harm," and "exhibited fear and anxiety." App. 62 ¶¶ 1, 5, 68 ¶ 42, 80 ¶ 85. (21-2590). Each suit sought compensatory and punitive damages for Neshaminy Inn's negligence in failing to prevent or disrupt the alleged human trafficking and for its violations of statutory duties under the Pennsylvania Human Trafficking Law, 18 Pa. Cons. Stat. § 3051.

Nautilus tentatively assumed Neshaminy Inn's defense, reserving its right to challenge its obligation to do so. By early 2020, Nautilus believed that the claims by the three women fell within the assault-or-battery exclusion. To avoid defending and indemnifying Neshaminy Inn in the lawsuits, Nautilus initiated declaratory judgment actions in the Eastern District of Pennsylvania against Neshaminy Inn and the women. Jurisdiction for those cases existed due to the complete diversity of the parties and an amount in controversy in excess of $75,000. *See* 28 U.S.C. §§ 1332, 2201(a). In each case, Nautilus moved for judgment on the pleadings. *See* Fed. R. Civ. P. 12(c). The District Courts granted those motions, entering judgments declaring that the victims' claims against Neshaminy Inn were not covered by the insurance policy due to the assault-or-battery exclusion.

Neshaminy Inn timely appealed those judgments as final orders within this Court's appellate jurisdiction. *See* 28 U.S.C. § 1291.

---

[3] A panel of this Court previously determined that due to the assault-or-battery exclusion, Nautilus had no duty to defend against the claims in E.B.'s original complaint. *See Nautilus Ins. Co. v. Motel Mgmt. Servs., Inc.*, 781 F. App'x 57, 60 (3d Cir. 2019).

4

**DISCUSSION**

The parties agree that Pennsylvania law governs their dispute. Pennsylvania follows a text-based approach to insurance coverage: an insurance provider with duties to defend or indemnify must do so if the four corners of the complaint trigger coverage under the four corners of the insurance policy. *See Am. & Foreign Ins. Co. v. Jerry's Sport Ctr., Inc.*, 2 A.3d 526, 541 (Pa. 2010); *Mut. Ben. Ins. Co. v. Haver*, 725 A.2d 743, 745–46 (Pa. 1999); *see also Kvaerner Metals Div. of Kvaerner U.S., Inc. v. Com. Union Ins. Co.*, 908 A.2d 888, 896 (Pa. 2006) (explaining that information beyond the face of the complaint cannot be considered); *Scopel v. Donegal Mut. Ins. Co.*, 698 A.2d 602, 607 (Pa. Super. Ct. 1997) (same).

In this case, the decisive language of the insurance policy excludes all claims "arising out of any assault or battery." App. 145 (21-2590).[4] The policy does not define the terms 'assault' or 'battery,' but they are legal terms of art that receive their well-defined meanings under Pennsylvania law. *See Mellon Bank, N.A. v. Aetna Bus. Credit, Inc.*, 619 F.2d 1001, 1013 (3d Cir. 1980). An 'assault' involves intentionally placing another person in "imminent apprehension of a harmful or offensive bodily contact." *Sides v. Cleland*, 648 A.2d 793, 796 (Pa. Super. Ct. 1994) (citing Restatement (Second) of Torts § 21); *see also Assault*, *Black's Law Dictionary* (10th ed. 2014) (defining assault as "[t]he threat or use of force on another that causes that person to have a reasonable apprehension of imminent harmful or offensive contact"); *cf.* 18 Pa. Cons. Stat. § 2701(a) (defining the crime of simple assault). And the term 'battery' refers to "a harmful or

---

[4] Pennsylvania courts have held that an 'arising out of' requirement, as used in an insurance exclusion, may be satisfied through but-for causation, and here no one disputes causation. *See Madison Constr. Co. v. Harleysville Mut. Ins. Co.*, 735 A.2d 100, 110 (Pa. 1999) (citing *McCabe v. Old Republic Ins. Co.*, 228 A.2d 901, 903 (Pa. 1967)); *see also Gen. Refractories Co. v. First State Ins. Co*, 855 F.3d 152, 159 (3d Cir. 2017).

5

offensive contact with the person of another" absent the other's consent. *C.C.H. v. Phila. Phillies, Inc.*, 940 A.2d 336, 340 n.4 (Pa. 2008) (internal quotation marks omitted); *see also Battery*, *Black's Law Dictionary* (10th ed. 2014) (defining battery as "[a] nonconsensual, intentional, and offensive touching of another without lawful justification").

Although Pennsylvania courts strictly construe policy exclusions against the insurer,[5] under the four-corners rule, the assault-or-battery exclusion unambiguously applies to the underlying claims against Neshaminy Inn. Each victim alleged that their traffickers treated them in an aggressive or violent manner and made them feel a sense of fear and anxiety while being trafficked. Selling the women for sex under these circumstances qualified as assault because it placed them in imminent apprehension of a harmful or offensive bodily contact. Similarly, the allegations in each of the complaints suffice for battery: by using force and drugs to compel the women's participation in the sex trade, the traffickers subjected the women to harmful or offensive bodily contact without their consent.

Neshaminy Inn offers two counterarguments, but neither has merit. First, it posits that sex trafficking may occur without violence, and thus allegations of sex trafficking alone do not establish an assault or battery. But the four-corners rule does not involve an abstract elemental comparison akin to the categorical approach;[6] instead, it assesses whether the particular factual allegations in a specific case fall within the precise terms of an insurance policy. *See Haver*, 725 A.2d at 745 (stressing that "it is necessary to look at

---

[5] *See Swarner v. Mut. Ben. Grp.*, 72 A.3d 641, 645 (Pa. Super. Ct. 2013) (citing *Kropa v. Gateway Ford*, 974 A.2d 502 (Pa. Super. Ct. 2009)).

[6] Under that approach, unlike Pennsylvania's four-corners analysis, "[t]he key . . . is elements, not facts." *Descamps v. United States*, 570 U.S. 254, 261 (2013).

the factual allegations contained in the complaint"). And as explained above, in each of their pleadings, the women alleged injuries caused by an assault or battery. Second, Neshaminy Inn argues that the women could not have been battered because they consented to their role in the sex trade. But the term 'consent' in this context is best understood as consisting of more than mere *assent*, or the act of agreeing; it requires the agreement to be both voluntary and intelligent. *Cf. K.A. v. Att'y Gen. of U.S.*, 997 F.3d 99, 105–06 (3d Cir. 2021). And here the underlying allegations of modern-day slavery – facilitated by forced drug use, violent criminal aggression, physical injuries, and a climate of fear and anxiety – eliminate any possibility that the women voluntarily and intelligently agreed to the conditions of their own trafficking.

## CONCLUSION

Because the assault-or-battery exclusion unambiguously covers the underlying sex trafficking claims, the District Court in each case correctly held that Nautilus has no duty to defend, and therefore no duty to indemnify, Neshaminy Inn. *See Kvaerner*, 908 A.2d at 896 n.7 (explaining that if an insurer has no duty to defend, it cannot have a duty to indemnify). Accordingly, those judgments will be affirmed.